1  JONES HELSLEY PC
   8365 North Fresno Street, Suite 310
2  PO Box 28340
   Fresno, CA  93729
3  Telephone: (559) 233-4800
   Facsimile:  (559) 233-9330
4
   Timothy Jones #119841
5  John P. Kinsey #215916

6  Attorneys for all plaintiffs

7  [Additional counsel for plaintiffs listed on signature page]

8

9

10                         **UNITED STATES DISTRICT COURT**

11                         **EASTERN DISTRICT OF CALIFORNIA**

12

13  ROCKY MOUNTAIN FARMERS UNION;         )   **LEAD CASE NO.**
    REDWOOD COUNTY MINNESOTA CORN         )      **1:09-CV-02234-LJO-DLB**
14  AND SOYBEANS GROWERS; PENNY           )
    NEWMAN GRAIN, INC.; FRESNO COUNTY     )   **CONSOLIDATED WITH CASE NO.:**
15  FARM BUREAU; NISEI FARMERS LEAGUE;    )      **1:10-CV-00163-LJO-DLB**
    CALIFORNIA DAIRY CAMPAIGN; REX        )
16  NEDEREND; GROWTH ENERGY and the       )   **MEMORANDUM IN SUPPORT OF**
    RENEWABLE FUELS ASSOCIATION,          )   **MOTION FOR PRELIMINARY**
17                                        )   **INJUNCTION**
                Plaintiffs,               )
18                                        )
        vs.                               )
19                                        )
    JAMES N. GOLDSTENE, in his official capacity )  **Hearing Date:** February 23, 2011
20  as Executive Director of the CALIFORNIA AIR )
    RESOURCES BOARD,                      )   **Hearing Time:** 8:30 a.m.
21                                        )
                Defendant.                )   **Courtroom:**    Four
22  _____)
                                          )   **Judge:**        Hon. Lawrence J. O'Neill
23    and Related Consolidated Action     )
                                          )
24  _____)

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................1

GROUNDS FOR PRELIMINARY INJUNCTION ..........................................................3

I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS...................................................................................................................4

II.   MIDWEST ETHANOL PRODUCERS HAVE SUFFERED IRREPARABLE INJURY THAT WILL INCREASE IN 2011. ...................................................................5

    A.  Violations Of Constitutional Rights Are Presumptively Irreparable Injuries..........5

    B.  The LCFS Regulation Causes Irreparable Business And Monetary Harm..............6

III.  THE BALANCE OF HARDSHIPS SUPPORTS ENTRY OF A PRELIMINARY INJUNCTION....................................................................................8

IV.  THE PUBLIC INTEREST STRONGLY SUPPORTS ENFORCING THE CONSTITUTION AND PROVIDING THE REQUESTED INJUNCTIVE RELIEF. ...................................................................................................................9

CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson*,
  194 F.3d 1149 (10th Cir. 1999) ........................................................................................... 6

*Alliance for Wild Rockies v. Cottrell*,
  — F.3d —, No. 09-35756, 2010 WL 3665149 (9th Cir. Sept. 22, 2010) .............................. 3, 9

*American Booksellers Found. for Free Expression v. Deat*,
  202 F. Supp. 2d 300 (D. Vt. 2002) ...................................................................................... 6

*American Library Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997) ...................................................................................... 6

*American Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ............................................................................................. 6

*Associated Gen. Contractors of America v. Metropolitan Water Dist. of S. Cal.*,
  159 F.3d 1178 (9th Cir. 1998) ............................................................................................. 2

*Bioganic Safety Brands, Inc. v. Ament*,
  174 F. Supp. 2d 1168 (Colo. 2001) .................................................................................... 6

*C & A Carbone, Inc. v. Town of Clarkstown*,
  770 F. Supp. 848 (S.D.N.Y. 1991) ...................................................................................... 6

*California Pharm. Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ............................................................................................... 6

*Citicorp. Servs. Inc. v. Gillespie*,
  712 F. Supp. 749 (N.D. Cal. 1989) ...................................................................................... 6

*Doren v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ............................................................................................................ 8

*Entergy, Arkansas, Inc. v. Nebraska*,
  210 F.3d 887 (8th Cir. 2000) ............................................................................................... 6

*Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley LLC*,
  2010 WL 1005169 (S.D.N.Y. Mar. 18, 2010) .................................................................... 8

*Gov't Suppliers Consolidating Servs., Inc. v. Bayh*,
  734 F. Supp. 853 (S.D. Ind. 1990) ...................................................................................... 6

*Hunt v. Washington State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................ 2

*In re Chrysler, LLC*,
  2009 WL 1360862 (Bankr. S.D.N.Y. May 13, 2009) ......................................................... 8

*In re Estate of Ferdinand Marcos*,
  25 F.3d 1467 (9th Cir. 1994) .................................................................................................. 6

*In re Federated Dep't Stores, Inc.*,
  1990 WL 120751 (Bankr. S.D. Ohio July 26, 1990) ................................................................ 8

*Indus. v. Thornburgh*,
  762 F. Supp. 1394 (N.D. Cal. 1991) ........................................................................................ 6

*Kendall-Jackson Winery v. Branson*,
  82 F. Supp. 2d 844 (N.D. Ill. 2000) ......................................................................................... 6

*Midwest Title Loans, Inc. v. Ripley*,
  616 F. Supp. 2d 897 (S.D. Ind. 2009) ...................................................................................... 6

*Monterey Mech. Co. v. Wilson*,
  125 F.3d 702 (9th Cir. 1997) ................................................................................................... 5

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
  992 F.2d 430 (2d Cir. 1993) .................................................................................................... 8

*Newsom v. Albemarle County Sch. Bd.*,
  354 F.3d 249 (4th Cir. 2003) ................................................................................................... 9

*Preminger v. Principi*,
  422 F.3d 815 (9th Cir. 2005) ................................................................................................... 9

*Preston v. Thompson*,
  589 F.2d 300 (7th Cir. 1978) ................................................................................................... 9

*Starlight Sugar Inc. v. Soto*,
  909 F. Supp. 853 (P.R. 1995) .................................................................................................. 6

*The Lands Council v. McNair*,
  537 F.3d 981 (9th Cir. 2008) ................................................................................................... 9

*Trans World Airlines, Inc. v. Mattox*,
  897 F.2d 773 (5th Cir. 1990) ................................................................................................... 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................................. 2

*West Lynn Creamery Inc. v. Healy*,
  512 U.S. 186 (1994) ............................................................................................................... 10

*Winter v. NRDC*,
  129 S. Ct. 365 (2008) .............................................................................................................. 3

**Statutes**

42 U.S.C. § 17285 ....................................................................................................................... 10

**Other Authorities**

11A Wright, et al., *Federal Practice & Procedure*,
   § 2948.1 (1995) .................................................................................................................... 5

Plaintiffs Growth Energy and the Renewable Fuels Association ("RFA") respectfully submit this memorandum of points and authorities in support of their motion for a preliminary injunction to enjoin enforcement of the California low-carbon fuel standard ("LCFS") regulation during the pendency of this litigation.[1]

**INTRODUCTION**

This case presents important questions under federal law about California's LCFS regulation, which threatens the Midwest corn ethanol industry. Growth Energy and RFA represent nearly every ethanol producer in the United States. In 2009, their members provided more than 400,000 Americans with good-paying jobs.[2] Those jobs are in jeopardy. By design, and by the California Air Resources Board's ("CARB's") own admission, the regulation will close the California energy market—the largest in the nation—to all but a handful of domestic ethanol producers by the end of the decade.

Conservatively estimated, the LCFS regulation will cost the domestic corn ethanol industry over $100 million in irreparable losses next year alone, and will make it impossible for some firms to get critical credit facilities they need to survive and compete.[3] Indeed, the regulation already has reduced the value of investments in many ethanol plants across the Midwest.[4] The regulation could cripple the U.S. ethanol industry and frustrate national energy policy, embodied in the federal Energy Independence and Security Act of 2007 ("the 2007 Energy Act").

---

[1] Growth Energy and RFA join in the motion for summary judgment filed by all plaintiffs in Case No. 1:09-CV-02234-LJO-DLB. At the October 13, 2010 status conference, defendant indicated that he might seek discovery in response to a summary judgment motion. While plaintiffs continue to believe discovery is unwarranted, discovery (if allowed) could delay the Court's resolution of the summary judgment motion. To avoid irreparable injury to the members they represent, Growth Energy and RFA therefore file this motion for a preliminary injunction.

[2] *See* Urbanchuk, "Contribution of the Ethanol Industry to the Economy of the United States," (Feb. 12, 2010), available at http://www.ethanolrfa.org/page/-/rfa-association-site/2009_ethanol_economic_contribution.pdf?nocdn=1.

[3] *See* Declaration of Jesse David in Support of Motion for Preliminary Injunction ('David Decl.") ¶¶ 31-32; Declaration of Gerald A. Brian in Support of Motion for Preliminary Injunction ("Brian Decl.") ¶¶ 4, 13.

[4] *See* Declaration of Stuart Harden in Support of Motion for Preliminary Injunction ("Harden Decl." ¶ 10.

For all the harm it will cause, the LCFS regulation will generate no concrete environmental benefits because, as CARB has admitted, the regulation will have no significant impact on global climate change, the ostensible environmental concern motivating the regulation.[5] When a regulation like the LCFS places burdens on interstate commerce that are clearly excessive in relation to its benefits (an imbalance that plaintiffs can prove largely from remarkable admissions by CARB and its staff during the LCFS rulemaking), the regulation violates the dormant Commerce Clause under the rule of *Pike v. Bruce Church, Inc***Error! Bookmark not defined.**.[6] The only clear and immediate beneficiaries of the LCFS regulation are the few businesses located within California who produce corn ethanol, who would be sheltered from interstate competition by the regulation. That naked discrimination is also forbidden by the dormant Commerce Clause and conflicts with federal legislation—the 2007 Energy Act—which protects and fosters nationwide investment in America's renewable fuels industry.[7] Moreover, in attempting to regulate conduct occurring completely outside California—namely, the growing of corn and the production of ethanol—the LCFS regulation violates the dormant Commerce Clause's prohibition of extraterritorial state laws.[8]

Growth Energy and RFA, on behalf of their members, therefore meet the first requirement for obtaining preliminary relief: for the reasons set forth in the accompanying motion for summary judgment, they are likely to succeed on the merits of their federal preemption claim and their dormant Commerce Clause claim.[9] Mindful of the Court's

---

[5] *See, e.g.*, CARB, *Final Statement of Reasons—Low-Carbon Fuel Standards* ("FSOR") at 342, included as PRJN Exh. 4; Declaration of James M. Lyons ("Lyons Decl.") ¶¶ 28-31.

[6] 397 U.S. 137, 142 (1970); *see* Plaintiffs' Memorandum in Support of Motion for Summary Judgment in Case No. 1:09-CV-02234-LJO-DLB ("Summary Judgment Mem.") at 18-22.

[7] *See* Summary Judgment Mem. at 5-10 (discrimination), 22-28 (preemption).

[8] *See* Summary Judgment Mem. at 10-18.

[9] It is well-settled that trade associations such as Growth Energy and RFA have standing to litigate on the basis of the interests of their members. *See, e.g.*, *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977) (emphasizing that a trade association's "standing to bring [an] action as the representative of its constituents [is] clear under prior decisions of [the] Court") (collecting cases). And such associations are entitled to pursue relief that "will inure to the benefit of [the] members of the association actually injured," such as a "declaration, injunction, or some other form of prospective relief." *Id.* at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). This relief includes preliminary injunctions. *See, e.g.*, *Associated Gen. Contractors of America v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1179, 1181 (9th Cir. 1998) (association has standing to request preliminary injunction as representative of its injured members); *See generally* Declaration of Robert M. Dinneen

instructions to the parties to avoid "unnecessary duplication" and to provide the Court with succinct opening briefs, Growth Energy and RFA focus this memorandum on demonstrating that they meet the other three requirements for obtaining a preliminary injunction.

## GROUNDS FOR PRELIMINARY INJUNCTION

Preliminary injunctive is appropriate when (1) plaintiffs are "likely to succeed on the merits"; (2) plaintiffs and those whom they represent are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities tips in [plaintiffs'] favor"; and (4) "an injunction is in the public interest." *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008). Moreover, where there is a likelihood of irreparable harm and the injunction is in the public interest, a preliminary injunction is also appropriate "when a plaintiff demonstrates … that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, — F.3d —, No. 09-35756, 2010 WL 3665149, *8 (9th Cir. Sept. 22, 2010) (internal quotations omitted). A district court thus may "preserve the *status quo* with provisional relief until the merits [can] be sorted out in cases where clear irreparable injury would otherwise result and at least 'serious questions' going to the merits are raised." *Id*.

From plaintiffs' perspective, the need to preserve the *status quo* (insofar as it is still possible) is clear. Plaintiffs have diligently strived to reach an agreement with defendants on the critical facts about the LCFS regulation and its environmental and economic impacts, in order to permit a streamlined and speedy disposition of all claims and defenses. Those efforts have gone nowhere.[10] Nor has CARB exercised its options to suspend implementation of the LCFS regulation based on new evidence, even though defendant appears to recognize that such evidence *requires* reconsideration of the regulation.[11] The upshot is that defendant expects regulated parties to start complying with the regulation on January 1, 2011, under a schedule adopted in April 2009.

---

("Dinneen Decl.") (explaining RFA's standing); Declaration of Wesley K. Clark ("Clark Decl.") ¶¶ 6, 20, 26 (explaining Growth Energy's standing).
[10] *See* Clark Decl. ¶¶ 22-23.
[11] *See* Clark Decl. ¶¶ 24-25.

3

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION   (1:09-CV-02234-LJO-DLB)**

The proof offered to support this motion is simple. For irreparable injury, Growth Energy and RFA rely on experts in three disciplines (economics, business valuation, and credit underwriting). For likelihood of success on the merits, Growth Energy and RFA rely on statements and findings made by CARB in the LCFS rulemaking and other indisputable facts.[12] As explained in the Memorandum of Points and Authorities submitted in support of the motion for summary judgment, the facts and the law establish success on the merits, not just likely success. For the balance of hardships and the public interest, Growth Energy and RFA again rely on CARB's own statements and findings, a declaration reviewing those materials and making mathematical calculations,[13] as well as Congress's determination to support investment in the domestic ethanol industry. CARB has admitted that the LCFS regulation will never have a significant impact on global warming ever, much less during this litigation. *See* FSOR at 342; Lyons Decl. ¶¶ 28-31. In fact it is likely that the LCFS regulation will have negative environmental consequences, as demonstrated by simple mathematical calculations. *See id.* ¶¶ 32-36.

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

Plaintiffs incorporate by reference the arguments in their Motion for Summary Judgment, as well as the facts set forth in the Statement of Material Facts.[14] For the reasons stated in the memorandum of points and authorities, plaintiffs are at a minimum likely to succeed on the merits of their preemption and dormant Commerce Clause challenges. Thus, regardless of whether the Court grants summary judgment, it should certainly find that plaintiffs have established likelihood of success on the merits.

---

[12] Relevant regulatory information, found in CARB's own documents as well as a recent rulemaking concerning ethanol conducted by the U.S. Environmental Protection Agency ("EPA") and other official publications, is set forth in the Statement of Material Facts accompanying the Motion for Summary Judgment. That regulatory information is also summarized in paragraphs 5 through 28 of the attached Declaration of James M. Lyons, filed in support of this Motion for Preliminary Injunction.

[13] *See* Lyons Decl. ¶¶ 29-36.

[14] For each Statement of Material Fact, plaintiffs have provided specific evidence from the LCFS rulemaking record and elsewhere to support the fact.

## II. MIDWEST ETHANOL PRODUCERS HAVE SUFFERED IRREPARABLE INJURY THAT WILL INCREASE IN 2011.

The LCFS regulation will cause the members of Growth Energy and RFA to suffer immediate and irreparable injury in two distinct ways. First, their constitutional rights under the Supremacy and Commerce Clauses will be violated by implementation of the LCFS regulation, for the reasons explained in the separate motion for summary judgment. That is a quintessential irreparable injury.

Second, the members of Growth Energy and RFA are suffering, and will continue to suffer, business and economic harms for which they cannot be compensated after prevailing on the merits. Those injuries are both irreparable and substantial. One group of Midwest corn ethanol producers has already suffered a combined loss of more than $100 million in the value of their enterprises due to the LCFS regulation. *See* Hardin Decl. ¶ 20. Some of those enterprises are owned by small investors like the farmers who supply the corn for the ethanol mills. See Clark Decl. ¶ 6. And over the next two years, the LCFS regulation will cause between $300 million and $664 million in economic losses for the domestic ethanol industry. *See* David Decl. ¶¶ 31-32. Those loses will be compounded due to the "restricted financing options" available for all but "the most financially sound ethanol operation[s]," caused by "implementation of the California low-carbon fuel standard." Brian Decl. ¶ 13. Growth Energy and RFA have therefore plainly demonstrated irreparable harm that warrants a preliminary injunction.

### A. Violations Of Constitutional Rights Are Presumptively Irreparable Injuries.

Constitutional violations are presumptively irreparable. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). When "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A Wright, et al., *Federal Practice & Procedure*, § 2948.1, pp. 160-61 (1995). Courts have specifically held that Supremacy Clause and Commerce Clause violations cause irreparable injuries and entitle a party to equitable relief. *See Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990) (Supremacy Clause); *American Library Ass'n v. Pataki*, 969 F.

Supp. 160, 168 (S.D.N.Y. 1997) (Commerce Clause).[15]  Thus, by showing that they are likely to succeed on their constitutional challenges to the LCFS regulation, plaintiffs have shown an imminent irreparable injury that warrants a preliminary injunction.

### B. The LCFS Regulation Causes Irreparable Business And Monetary Harm.

Because sovereign immunity prevents a party from recovering damages from a State, *California Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009), an unconstitutional law that causes some harm, even monetary harm, thereby causes irreparable injury.  *See American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (a "constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm"); *Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000); *Chemicals for Research & Indus. v. Thornburgh*, 762 F. Supp. 1394, 1396 (N.D. Cal. 1991); *see also Citicorp. Servs. Inc. v. Gillespie*, 712 F. Supp. 749, 753-754 (N.D. Cal. 1989) (both presuming and finding irreparable harm in dormant commerce clause case).  The touchstone for equitable relief is the inadequacy of legal remedies, and injunctions are proper when, as here, a plaintiff will not be able to recover its losses from the defendant after prevailing on the merits.  *See In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1479 (9th Cir. 1994).

In this case, the LCFS regulation has already reduced the value of investments in the corn ethanol industry by more than $100 million.  *See* Harden Decl. ¶ 10.[16]  Among ten Midwest corn ethanol plants that have sold ten percent or more of their volume in California, the LCFS regulation has reduced their overall value by at least $48 million to $55 million—a

---

[15] *See also ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999); *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009) (citing *Kendall-Jackson Winery v. Branson*, 82 F. Supp. 2d 844, 878 (N.D. Ill. 2000) and *Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 734 F. Supp. 853, 864 (S.D. Ind. 1990)); *American Booksellers Found. for Free Expression v. Deat*, 202 F. Supp. 2d 300, 321-322 (D. Vt. 2002); *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1185-86 (Colo. 2001); *C & A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848, 854 (S.D.N.Y. 1991); *see also Starlight Sugar Inc. v. Soto*, 909 F. Supp. 853, 861 (P.R. 1995) (stating that First Circuit has "appeared to accept a plaintiff's assertion that the deprivation of constitutional rights guaranteed by the dormant commerce clause would constitute irreparable injury").

[16] Mr. Harden uses CARB's own predictions of how the LCFS regulation will eliminate Midwest corn ethanol from the California market, based on the LCFS rulemaking documents.

6.4 percent to 7.4 percent loss in present value. *See id.* ¶ 13.[17] This is a highly conservative estimate, as it optimistically assumes that "all gallons currently being sold in California will be sold in a different market and will be able to be absorbed within that market." *See id.* ¶ 15. Moreover, because the market anticipates that the LCFS regulation will close the California to domestic corn ethanol by 2018, even producers who do not currently sell in California have suffered losses, ranging from $66 million to $77 million—a drop of 5.1 percent to 5.95 percent in value. *See id.* ¶ 17.

Without preliminary relief, the domestic ethanol industry will lose an additional $117 million to $256 million over the next twelve months and $300 million to $664 million over the next twenty-four months, all because of the LCFS regulation. *See* David Decl. ¶¶ 31-32. CARB predicts that the regulation will reduce the demand for Midwest corn ethanol in California.[18] Each of CARB's compliance scenarios demonstrates an immediate reduction in the use of Midwest corn ethanol—by some 170 million to 220 million gallons in 2011 and by 300 million to 320 million gallons in 2012. *See id.* Assuming the actual reduction is at the midpoint of CARB's predictions, the LCFS regulation will reduce demand for Midwest corn ethanol by about 1.6 percent and cut the price of corn ethanol by $0.016 to $0.022 per gallon. *See* David Decl. ¶¶ 26, 31. That hit directly diminishes the profitability of the Midwest corn ethanol industry. *See id.* ¶ 29. Because those losses cannot be recovered from the State, they constitute an imminent threat of irreparable harm to the Midwest corn ethanol industry.

Plaintiffs' members also face an imminent threat of "restrict[ed] financing options." Brian Decl. ¶ 13. As explained in the declaration of Gerald Brian—the former Chief Credit Officer of GreenStone Farm Credit Services, with 38 years of experience with agricultural financing—"[c]ommerical financing through the capital markets divisions of conventional financial institutions is the lifeblood" of Midwest corn ethanol producers. *Id.* ¶ 4. If

---

[17] Because the financial information provided to Mr. Harden is highly confidential, and indeed because the identity of the companies participating in his study cannot be disclosed publicly without causing severe harm to those businesses, the details of Mr. Harden's analysis are being filed under seal while movants seek agreement on a proposed Protective Order to govern the use of such materials in this case. Pending such agreement, movants are prepared to recommend reasonable accommodations to permit counsel for the CARB Executive Officer to have access to the confidential business information.

[18] *See also* FSOR at 826; ISOR at E-5 to E-8.

traditional credit markets are not available, the remaining financing alternatives "are limited and expensive." *Id*. Because the LCFS regulation will reduce the net price of corn ethanol, it renders all Midwest corn ethanol plants riskier investments than they otherwise would be, *see id*. ¶¶ 5-7, thereby restricting their financing options, *see id*. ¶ 13.

As Mr. Brian finds, average Midwest ethanol producers that currently can obtain traditional financing face the risk that financing will be unavailable, or available only at "higher rates" and with "restrictive loan covenants." Brian Decl. ¶ 10. Producers that are "more marginal" in their operations, but nonetheless can obtain some financing, will likely not be able to obtain financing in the traditional credit markets at all. *Id*. ¶ 11. And lenders would even have "some concern" as to "well run facilit[ies]." *Id*. ¶ 8. Mr. Brian concludes that "[a]ny hindrance to the ability of ethanol plants to obtain traditional capital financing would be a severe disadvantage and very threatening to their continued existence." *Id*. ¶ 4 (emphasis added). The risk to financing for Midwest ethanol producers constitutes irreparable harm. *See, e.g. Doren v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 435 (2d Cir. 1993); *Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley LLC*, 2010 WL 1005169, *4 (S.D.N.Y. Mar. 18, 2010); *In re Chrysler, LLC*, 2009 WL 1360862, * 1 (Bankr. S.D.N.Y. May 13, 2009) (noting absence of immediate access to financing can constitute irreparable injury); *In re Federated Dep't Stores, Inc.*, 1990 WL 120751, *6 (Bankr. S.D. Ohio July 26, 1990) (noting absence of financing would result in "immediate and irreparable harm").

### III. THE BALANCE OF HARDSHIPS SUPPORTS ENTRY OF A PRELIMINARY INJUNCTION.

However substantial CARB's concerns about global warming may be, those concerns are too attenuated within the context of this case to deny plaintiffs preliminary relief from an unconstitutional regulation that will cause irreparable harm to the U.S. corn ethanol industry. And being unable to apply the LCFS regulation until resolution of this litigation will not cause CARB greater hardship than what plaintiffs will suffer if CARB's unconstitutional regulation is applied to the corn ethanol industry. In fact, an injunction would cause no hardship at all.

Any temporary delay occasioned by a preliminary injunction will cause virtually no harm to California's interests. CARB has acknowledged that the LCFS regulation will have

no noticeable effect on global warming.  *See* Lyons Decl. ¶¶ 28-31.  According to CARB, "GHG emission reductions by the LCFS alone will not result in significant climate change." FSOR 342.  Given CARB's admission, defendant cannot claim any meaningful harm from a preliminary injunction.  Furthermore, enjoining CARB from enforcing the LCFS regulation will not affect other programs and laws designed to lessen global warming.  The hardship to government of a preliminary injunction is minimized when there are unchallenged programs that protect the government's interests, even if incompletely.  *See Am. Trucking*, 559 F.3d at 1059.

By contrast, the likely harm to plaintiffs' members is substantial and irreparable, as explained above.  *See* pp. 4-8.  Where, as here, defendant faces no discernible harm and plaintiffs' members face serious financial losses as well as the violation of their constitutional rights, the "balance of hardships tips sharply in the plaintiff's favor."  *The Lands Council v. McNair*, 537 F.3d 981, 987, 1003 (9th Cir. 2008) (quotations omitted).  As such, given the likelihood of irreparable harm and the fact that plaintiffs have plainly raises "serious questions going to the merits," a preliminary injunction should issue.  *Alliance for Wild Rockies*, 2010 WL 2926463, at *7.

**IV. THE PUBLIC INTEREST STRONGLY SUPPORTS ENFORCING THE CONSTITUTION AND PROVIDING THE REQUESTED INJUNCTIVE RELIEF.**

"Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."  *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *see Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("Surely, upholding constitutional rights serves the public interest."); *Preston v. Thompson*, 589 F.2d 300, 303 n. 3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest.").  Because plaintiffs are likely to succeed in their constitutional challenges to the LCFS regulation for the reasons set forth in the accompanying motion for summary judgment, the public interest in adhering to the Constitution and following its policies favors issuing a preliminary injunction.  *See West Lynn Creamery Inc. v.*

*Healy*, 512 U.S. 186, 204-05 n. 20 (1994) (public interest in "environmental preservation" is not "sufficient to uphold" a law violating the Commerce Clause).

Insofar as environmental issues are implicated in any way, however, here again the public interest still favors of a preliminary injunction. Because of the LCFS regulation's protectionist scheme for the production of corn ethanol for sale in California, the importation of corn ethanol from the Midwest will diminish and eventually cease altogether. *See* CARB, *Initial Statement of Reasons in Support of Proposed Rulemaking—Low-Carbon Fuel Standard* ("ISOR") at Appendix E, included as PRJN Exh. 1; *see also* FSOR at 148, 411, 414, 479, 486, 823, 826. Instead, the regulation will prop up corn ethanol refineries in California, who will obtain corn for their mills from the Midwest. *See* FSOR at 351, 826. A simple analysis using a standard freight rail logistics tool shows that the increased bulk involved in shipping corn, rather than ethanol, over the Rocky Mountains will result in a threefold increase in freight energy requirements. Lyons Decl. ¶ 32-34. If reductions in carbon emissions are the true goal, it is nonsensical to burn more coal or oil to transport corn over the Continental Divide to provide make ethanol in California, than would be required simply to ship ethanol from the Midwest in dedicated tanker car trains.

More fundamentally, as explained in plaintiffs' summary judgment motion, Congress has made it a national goal to support investment in the U.S. corn ethanol industry. If a preliminary injunction is granted, the plaints built with those investments will be protected from California's unwarranted (not to mention unconstitutional) regulation. *See* 42 U.S.C. § 17285 (Sense of Congress relating to the use of renewable resources to generate energy); *see also* Summary Judgment Mem. at 22-25. The domestic corn ethanol industry generates clean and efficient transportation fuels for automobiles; it promotes national security by reducing the nation's reliance on fossil fuels from volatile, politically unstable regions; and it creates jobs and wealth-creating opportunities for farmers and residents of rural communities across a broad section of the United States. Yet the LCFS regulation tramples that important federal policy. And the regulation ultimately threatens the "continued existence" of some ethanol producers, Brian Decl. ¶ 4, and the jobs they provide to Americans throughout the Midwest.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION   (1:09-CV-02234-LJO-DLB)**

At worst, the regulation could suffocate a significant part of the domestic corn ethanol industry; at best, its burdens will cause the industry needless and significant expense.  Either way, the public interest as articulated by Congress is disserved.

**CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated:   November 1, 2010                                  Respectfully submitted,

By: /s/ Timothy Jones
Timothy Jones #119841
John P. Kinsey #215916
JONES HELSLEY PC
8365 North Fresno Street, Suite 310
PO Box 28340
Fresno, CA  93729
Attorneys for all plaintiffs

| | |
|---|---|
| Charles H. Knauss<br>Thomas R. Lotterman<br>Bryan M. Killian<br>(*Admitted Pro hac vice*)<br>BINGHAM MCCUTCHEN LLP<br>2020 K Street, NW<br>Washington, DC  20006-1806<br>(202) 373-6000<br>Attorneys for plaintiff Renewable Fuels Association | Stuart A. C. Drake<br>John C. O'Quinn<br>(*Admitted Pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, NW<br>Washington, DC  20005<br>(202) 879-5000<br>Attorneys for plaintiff Growth Energy |