MARIE L. FIALA (CA Bar No. 79676)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104-1715
Telephone: 415-772-1200
Facsimile: 415-772-7400
mfiala@sidley.com

**Counsel For Plaintiffs**
**In Consolidated**
**Case No. 1:10-CV-00163 LJO DLB**

[ADDITIONAL PARTIES AND COUNSEL
SHOWN ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**JAMES GOLDSTENE, et al.,**<br><br>Defendants.<br><br>And Related Consolidated Action.<br>------------------------------------------------------------<br>**NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION,** *et al.***,**<br><br>Plaintiffs,<br><br>vs.<br><br>**JAMES GOLDSTENE,** *et al.***,**<br><br>Defendants. | LEAD CASE No. 1:09-CV-02234-LJO-DLB<br>*Consolidated With* Case No. 1:10-CV-00163 LJO DLB<br><br><br><br>**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS**<br><br><br><br>**Hearing Date:  February 23, 2011**<br>**Hearing Time: 8:30 a.m.**<br>**Courtroom:    Four**<br>**Judge:          Hon. Lawrence J. O'Neill** |

## **INTRODUCTION AND SUMMARY**

Pursuant to Local Rule 260(a), Plaintiffs National Petrochemical & Refiners Association ("NPRA"), American Trucking Associations, The Center For North American Energy Security, And The Consumer Energy Alliance (collectively, "Plaintiffs" or "NPRA Plaintiffs"), submit the following Statement of Undisputed Facts in support of their Motion for Summary Judgment or, alternatively, Summary Adjudication.

| UNDISPUTED MATERIAL FACT | EVIDENTIARY SUPPORT |
|---|---|
| 1. The LCFS assigns more favorable carbon intensity values to California corn-derived ethanol than to Midwest corn-derived ethanol. | LCFS § 95486(b), Table 6. |
| 2. According to Defendants, the " individual pathways for corn ethanol in the Lookup Table are differentiated based on four factors; location of the production facility (California or Midwest), type of corn milling (wet or dry), type of distillers grains produced (wet or dry), and source of fuel for heat energy and co-generated electrical power (natural gas, coal, or biomass)." | California's Low Carbon Fuel Standard – Final Statement Of Reasons (December 2009) ("FSOR") at 508 (Exhibit A to Request For Judicial Notice In Support Of Motion For Partial Summary Judgment By the NPRA Plaintiffs ("RJN"). |
| 3. According to Defendants, the carbon intensity values assigned by Defendants "include [GHG] emissions associated with transporting ethanol from the Midwest to California." | FSOR at 521 (Ex. A to RJN). |
| 4. According to Defendants, "California biorefineries do not use coal in their operation, and ARB does not expect coal use in in-state refineries in the future due to cost and regulatory requirements." | FSOR at 602 (Ex. A to RJN). |
| 5. CARB does not "expect ethanol produced using coal power to be used in California under the LCFS." | FSOR at 521 (Ex. A to RJN). |
| 6. According to Defendants, under the LCFS, "[t]he source of the ethanol will change . . . | FSOR at 426 (Ex. A to RJN). |

1

| | |
|---|---|
| to those suppliers who can produce it with lower carbon intensities." | |
| 7. Defendants set forth possible compliance scenarios through which regulated parties could meet the LCFS's requirements. Each of these scenarios shows Midwest corn ethanol use in California dropping to zero gallons. | California Environmental Protection Agency Air Resources Board Proposed Regulation to Implement the Low Carbon Fuel Standard - Staff Report: Initial Statement of Reasons with Appendices (March 5, 2009) ("ISOR") App. E, E-3 to E-9 (Ex. B. to RJN). |
| 8. According to Defendants, "[t]he carbon intensities of some California-produced fuels do benefit from shorter transportation distances and lower carbon intensity electricity sources." | FSOR at 713 (Ex. A to RJN). |
| 9. Defendants have assigned a baseline average carbon intensity value for CARBOB of 95.86 gCO2e/MJ and a baseline average carbon intensity value for California diesel fuel of 94.71 gCO2e/MJ. | FSOR at 23 (Ex. A to RJN); LCFS § 95486, Table 6. |
| 10. According to Defendants, the carbon intensities assigned for diesel fuel and CARBOB "are based on the average crude oil delivered to California refineries in 2006, and the average California refinery efficiencies in 2006." | FSOR at 23 (Ex. A RJN). |
| 11. According to Defendants, the average carbon intensity values assigned for diesel and CARBOB include "crude production, refining, use of the fuel, and all transportation and distribution activities." | FSOR at 23 (Ex. A to RJN). |
| 12. According to Defendants, "[t]he portion of the total average carbon intensity values that is attributable to the average carbon intensity of producing and transporting the crude oil for California CARBOB and diesel fuel is 6.93 gCO2e/MJ." | FSOR at 23 (Ex. A to RJN). |
| 13. CARB has stated that "[w]ith the exception of high carbon intensity crude oils not part of the 2006 California baseline crude mix, | FSOR at 23, 63 (Ex. A to RJN). |

2

| | |
|---|---|
| regulated parties must use th[e] single carbon intensity values for all California CARBOB and diesel fuel regardless of the actual carbon intensity of producing and transporting the specific crude oil used, or the specific refinery operations. This approach is taken to reduce the incentive for regulated parties to comply with the LCFS by shifting to less carbon-intensive crude oils or refinery operations." | |
| 14. According to Defendants, "[u]se of less carbon intensive crude oils would likely do nothing to reduce global GHG emissions because the higher carbon-intensive crude oils replaced would be refined and used elsewhere." | FSOR at 23, 63 (Ex. A to RJN). |
| 15. Defendants have stated "that California's LCFS, operating in isolation, may temporarily increase the potential for crude oil shuffling." | FSOR at 234 (Ex. A to RJN). |
| 16. According to Defendants, the "two percent threshold is designed to differentiate established crude sources that made up a significant fraction of the California crude oil supply in 2006 from potential emerging crude sources that could be a significant part of the crude supply in the future . . . ." | FSOR at 24 (Ex. A to RJN). |
| 17. The LCFS "differentiates between crude oil sources that were used in significant quantities in California in 2006 (e.g. 'included in the 2006 California baseline crude mix') and those crude sources that were not used in significant quantities in 2006." | FSOR at 233 (Ex. A to RJN). |
| 18. According to Defendants, "carbon intensities for mainstream crude oil production methods range from about 4 to more than 20g CO2e/MJ." | FSOR at 235 (Ex. A to RJN). |

3

| | |
|---|---|
| 19. According to Defendants, "[r]equiring all crude sources not part of the 2006 baseline mix to be evaluated individually will help to ensure that increased use of 'high carbon intensity crude oil' production methods are accurately accounted for within the regulation." | FSOR at 235 (Ex. A to RJN). |
| 20. The 6.93 gCO2e/MJ average for production and transport of crude oils is comprised of calculations by Defendants for (i) California crude oils, including California high carbon intensity crude oil (HCICO), (ii) Alaskan crude oil, (iii) Venezuelan crude oil, and (iv) other imported crude oil (from foreign countries other than Venezuela). | ISOR, Vol. II at C-59 Table C12-6 (Ex. B to RJN); FSOR at 23-24 (Ex. A to RJN). |
| 21. According to Defendants, the greenhouse gas emissions for the transport and production of Alaskan crude oil used in California in 2006 is 4.36 gCO2e/MJ, and the greenhouse gas emissions for the transport and production of "other imported" crude oils used in California in 2006 (excluding Venezuelan crude) is 4.65 gCO2e/MJ. | ISOR, Vol. II at C-59 Table C12-6. (Ex. B to RJN). |
| 22. Under the LCFS, Alaskan crude oil and "other imported" crude oil are assigned the average carbon intensity of 6.93 gCO2e/MJ for its production and transport without regard to the carbon intensities actually calculated by Defendants. | FSOR at 23-24 (Ex. A to RJN); ISOR, Vol. II, C-59 Table C12-6 (Ex. B to RJN). |
| 23. According to Defendants, the GHG emissions for the transport and production of Venezuelan crude oil used in California in 2006 is 21.95 gCO2e/MJ. | ISOR Vol. II, C-59 Table C12-6 (Ex. B to RJN). |
| 24. According to Defendants, with respect to California crude oil produced using thermal enhanced oil recovery ("TEOR"), "[t]he estimated carbon intensity from the production and transportation of this crude | FSOR at 24 (Ex. A to RJN); ISOR, Vol. II at C-59 Table C12-6 (Ex. B to RJN). |

4

| | |
|---|---|
| is 18.89 gCO2e/MJ." | |
| 25. According to Defendants, California TEOR made up 14.80% of the California crude oil used in 2006. | ISOR Vol. II at C-59 Table C12-6 (Ex. B to RJN). |
| 26. According to Defendants, Alaskan crude oil made up 16.10% of the California crude oil used in 2006. | FSOR at 23-24 (Ex. A to RJN); ISOR, Vol. II at C-59 Table C12-6 (Ex. B to RJN). |
| 27. According to Defendants, "Other Imported" crude oil made up 44.44% of the California crude oil used in 2006. | ISOR Vol. II at C-56 Table C12-1 (Ex. B to RJN). |
| 28. According to Defendants, Saudi Arabia, Ecuador, Iraq, Brazil, Mexico, Angola, Colombia, Oman, Venezuela, and Argentina imported crude to California in 2006. | ISOR Vol. II at C-56 Table C12-2 (Ex. B to RJN). |
| 29. Under the LCFS, Venezuelan crude oil may not use 6.93 gCO2e/MJ average carbon intensity for production and transport available to other crude oils in the 2006 California baseline mix because Venezuelan crude oil made up less than 2% of the 2006 California baseline mix. | FSOR at 23-24 (Ex. A to RJN); ISOR, Vol. II, C-59 Table C12-6 (Ex. B to RJN); ISOR Vol. II, C-56, Table C12-2 (Ex. B to RJN). |
| 30. According to Defendants, "HCICO produced from oil sands is most likely to come to California from Canadian producers." | FSOR at 25 (Ex. A to RJN). |
| 31. According to Defendants, California crude oil produced using thermal enhanced oil recovery processes (TEOR) is the only high carbon intensity crude oil that "qualifies for the default average carbon intensity values" and thus California TEOR is assigned a carbon intensity of 6.93 gCO2e/MJ for its production and transportation. | FSOR at 23-24, 233 (Ex. A to RJN); ISOR Vol. II at C-59 Table C12-6 (Ex. B to RJN). |
| 32. If a regulated party demonstrates for a HCICO outside the 2006 California baseline, "that the carbon intensity for | FSOR at 24 (Ex. A to RJN). |

5

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

| | |
|---|---|
| crude production and transport has been reduced to no more than 15.00 gCO2e/MJ – through technologies such as carbon capture and sequestration," the HCICO "would qualify for the default carbon intensity values based on overall averages. Otherwise, the actual carbon intensity from production and transport of the crude would have to be used." | |
| 33. The Government of Canada provided comments on the LCFS stating that "[b]ased on these concerns and other considerations, we would urge that the Board amend the proposed LCFS regulation to assign the same carbon intensity to all mainstream crude oil fuel pathways from light to heavy crudes, including oil sands crude, rather than only the crudes in the baseline." | FSOR at 605 (Ex. A to RJN). |
| 34. In responding to comments based on the LCFS's treatment of Canadian oil sands crude oil, CARB stated that "[t]he average crude carbon intensity should only be used to determine the carbon intensities of fuels refined from average crudes. The average crude carbon intensity shouldn't become a default value that providers of significantly higher carbon fuels are able to use when preparing their LCFS reports." CARB also stated that "all crude sources not part of the 2006 baseline mix" will be "evaluated individually." | FSOR at 606 (Ex. A to RJN). |
| 35. The Government of Canada and The Center for North American Energy Security provided comments on the LCFS stating that "[d]iscrimination against Canadian oil sands crude oil may be perceived as creating an unfair trade barrier and could be contrary to international trade obligations of the United States." | FSOR at 233 (Ex. A to RJN). |

6

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

| | |
|---|---|
| 36. Defendants have stated that California can reduce GHG emissions associated with transportation fuels by "increasing vehicle efficiency, reducing the number of vehicle miles traveled, and finally reducing the carbon intensity of the fuel used to power the vehicles." | FSOR at 74 (Ex. A to RJN). |
| 37. Defendants have stated that they "developed the LCFS in a manner that minimizes costs and maximizes the total benefits to California." | FSOR at 476 (Ex. A to RJN). |
| 38. Defendants have stated that, "[t]o the extent that California can produce more of its own transportation fuel, lower the amount of money spent on imported oil or petroleum products, and lower dependence on out-of-state biofuels, business competitiveness should be improved overall in the State." | FSOR at 474 (Ex. A to RJN). |
| 39. According to Defendants, "[t]he LCFS is designed to reduce California's dependence on petroleum . . . and stimulate the production and use of alternative, low-carbon fuels in California," and Governor Schwarzenegger has identified this outcome as an "important goal[] for California." | FSOR at 457 (Ex. A to RJN); FSOR 61 (Ex. A to RJN). |
| 40. According to Defendants, "[o]ne of the key advantages of the LCFS . . . is that it reduces our dependence on foreign oil." | FSOR at 461 (Ex. A to RJN). |
| 41. According to Defendants, the LCFS will result in the following impacts to California: "Biofuels will displace some percent of petroleum-based transportation fuels." | FSOR at 479 (Ex. A to RJN). |
| 42. According to Defendants, the LCFS will "[r]educ[e] the volume of transportation fuels that are imported from other states," and "will reduce foreign imports of oil into the U.S." | FSOR at 479 (Ex. A to RJN). |

7

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

| | |
|---|---|
| 43. According to Defendants, as a result of the LCFS, "[t]he biorefineries expected to be built in the State will provide needed employment, an increased tax base for the State, and value added to the biomass used as feedstock.  These benefits will be more important in rural areas of the State that are short on employment but rich in natural resources." | FSOR at 479 (Ex. A to RJN). |
| 44. According to Defendants, the LCFS will "[d]isplac[e] imported transportation fuels with biofuels produced in the State" and that will "keep[] more money in the State." | FSOR at 479 (Ex. A to RJN). |
| 45. According to Defendants, as a result of the LCFS, "[u]p to eighteen cellulosic ethanol and six corn ethanol plants could be built by 2020 with a total annual capacity of 1.2 billion gallons . . . The estimated capital investment for these new businesses is approximately $8.5 billion." | FSOR at 419–20 (Ex. A to RJN). |
| 46. Defendants  estimated that the "total cost" for "new/upgraded alternative fuel infrastructures and the cost of alternative fuel plants to be approximately $10 billion over the next decade." | FSOR at 420 (Ex. A to RJN). |
| 47. According to Defendants, "[w]ithout the wider adoption of fuel carbon-intensity standards, fuel producers are free to ship lower-carbon-intensity fuels to areas with such standards, while shipping higher-carbon-intensity fuels elsewhere. The end result of this fuel 'shuffling' process is little or no net change in fuel carbon-intensity on a global scale." | FSOR at 477, 715 (Ex. A to RJN). |
| 48. According to Defendants, "as LCFS regulations become more widely adopted by state and national governments the potential for crude shuffling will be greatly diminished." | FSOR at 235 (Ex. A to RJN). |

8

| | |
|---|---|
| 49. According to Defendants, "the potential for fuel shuffling is not limited to petroleum-based fuels. It is highly likely that supplies of ethanol with the lowest carbon intensity will be sent to California with the remaining 'high intensity' ethanol being sold outside of California. The LCFS does not account for this market-mediated effect which obviously benefits producers of low carbon intensity ethanol but does not result in reductions in greenhouse gas emissions on a global scale." | FSOR at 241 (Ex. A to RJN). |
| 50. According to Defendants, "[t]he LCFS uses multiple pathways for each fuel in order to provide both an accurate accounting of carbon intensity for each fuel and incentive for regulated parties to adopt production methods which result in lower emissions." | FSOR at 84 (Ex. A to RJN). |
| 51. According to Defendants, "[c]arbon intensity is not an inherent chemical property of a fuel, but rather it is reflective of the process in making, distributing, and using that fuel." | FSOR at 951 (Ex. A to RJN). |
| 52. According to Defendants, the LCFS "introduce[s] into the marketplace the additional consideration of lifecycle greenhouse gas emissions. Those fuels which are both economical to produce and also have low greenhouse gas emissions will compete well under the LCFS. Those fuels with large lifecycle greenhouse gas emissions may still be used, but any increase in emissions relative to the compliance standard must be compensated for by increased use of fuels with low lifecycle greenhouse gas emissions." | FSOR at 523–24 (Ex. A to RJN). |
| 53. The LCFS does not control the "chemical or physical properties" of fuel used in California, rather it regulates "*how* a fuel or blendstock was made." | ISOR at V-30 (Ex. B to RJN). |

9

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

| | |
|---|---|
| 54. The "full lifecycle" calculation of carbon intensity "means that the carbon intensity value assigned to each fuel reflects the GHG emissions associated with that fuel's production, transport, storage, and use." | FSOR at 507 (Ex. A to RJN). |
| 55. According to Defendants, assignment of a carbon intensity value for corn ethanol involves an assessment of the following:<br>• Farming practices (e.g., frequency and type of fertilizer used);<br>• Crop yields;<br>• Harvesting practices;<br>• Collection and transportation of the crop;<br>• Type of fuel production process (technology, efficiency of plant/process, etc.);<br>• Fuel used in the production process (Coal/Natural Gas/Biomass);<br>• Energy efficiency of the production process;<br>• The value of co-products generated (e.g. distillers grain);<br>• Transport and distribution of the fuel; and<br>• Combustion of the fuel in vehicles." | ISOR at IV-4-IV-5 (Ex. B to RJN). |
| 56. According to Defendants, "[t]he carbon intensity values generated for corn ethanol using CA-GREET take into account average industry-wide data inputs for farming practices, crop collection and transportation, fuel production, co-product generation, and distribution of fuel." | FSOR at 508 (Ex. A to RJN). |
| 57. According to Defendants, "individual pathways for corn ethanol in the Lookup Table are differentiated based on four factors; location of the production facility (California or Midwest), type of corn milling (wet or dry), type of distillers grains produced (wet or dry), and sources of fuel for heat energy and co-generated electrical power (natural gas, coal, or biomass). | FSOR at 508 (Ex. A to RJN). |
| 58. CARB has stated that "an important goal of the LCFS is to establish a durable fuel | FSOR at 477, 715 (Ex. A to RJN). |

10

| | |
|---|---|
| carbon regulatory template that is capable of being exported to other jurisdictions." | |
| 59. According to Defendants, the LCFS "is not setting a fuel standard," "contains no requirements that dictate the exact composition of compliant transportation fuels," and "does not establish any motor-vehicle fuel specifications." | FSOR at 439, 442 (Ex. A to RJN). |
| 60. "[A] gallon of ethanol made from corn grown and processed in the Midwest will, under a microscope or other analytical device, look identical in every material way to a gallon of ethanol processed from sugar cane grown in Brazil. Both samples of ethanol will have the same boiling point, the same molecular composition, the same lower and upper limits of flammability – in other words, both will have identical physical and chemical properties because both products consist of 100% ethanol. On the other hand, the corn ethanol from the Midwest will have different carbon intensity than the sugar cane from Brazil." | ISOR at V-30 (Ex. B to RJN). |
| 61. National Petrochemical & Refiners Association ("NPRA") is a trade association whose members include refiners and petrochemical manufacturers which operate in the United States, including California.  One of more members of NPRA is a regulated party subject to the requirements of the LCFS | Declaration of Timothy Hogan, ¶ 1 (Nov. 1, 2010) ("Hogan Decl.") (Ex. A, hereto). |
| 62. NPRA is a national trade association made up of more than 450 companies that represents corporations that own and operate over 90 percent of the United States' domestic petroleum refining capacity and over 95 percent of our nation's petrochemical production capacity. NPRA member companies manufacture and supply to consumers, both individual and corporate, a wide variety of essential | Hogan Decl. ¶ 2 (Ex. A, hereto). |

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

| | |
|---|---|
| products and services that are the backbone of the nation's transportation economy and are used daily by families, farmers and industries across the nation. These products include gasoline, diesel fuel, home heating oil, jet fuel, asphalt products, and the petrochemicals that serve as "building blocks" in thousands of products used every day by consumers and businesses, including plastics, clothing, medicine and computers. | |
| 63. A central objective of NPRA is to educate the public and policymakers about the vital role of the refining and petrochemical industries in the nation's economy and our member's contribution to improvements in the quality of life.  NPRA serves as a strong advocacy voice for our members with government officials, the media and the public to promote policies that balance energy supply needs with environmental goals.  NPRA participates, on behalf of its members, in regulatory or legal proceedings, with respect to a wide-variety of legal or policy issues that may affect the petroleum refining industry.    NPRA regularly comments on and, where appropriate, challenges in Court regulations and policies that may affect our members. | Hogan Decl. ¶ 3 (Ex. A, hereto). |
| 64. The LCFS has and will have a significant impact on the petroleum refining industry and, as a result, on NPRA's members. | Hogan Decl. ¶¶ 4-9 (Ex. A, hereto). |
| 65. According to Defendants, "[s]taff has estimated that each regulated party will require one staff person—at $170,000 salary, benefits, and overhead—to administer the LCFS program" and "$4.6 million for all affected industry." | FSOR at 426, 437 (Ex. A to RJN). |
| 66. According to Defendants, "the LCFS discourages the use of higher-carbon-intensity fuels . . . ." | FSOR at 477 (Ex. A to RJN). |

12

DATED:  November 1, 2010                    SIDLEY AUSTIN LLP


                                            By:  /s/ Marie L. Fiala
                                                 Marie L. Fiala

                                                 *Counsel for Plaintiffs*
                                                 *In Consolidated*
                                                 *Case No. 1:10-CV-00163 LJO DLB*

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

ADDITIONAL COUNSEL OF RECORD

Paul J. Zidlicky (DC Bar No. 450196)
Roger R. Martella, Jr. (DC Bar No. 976771)
James W. Coleman (DC Bar No. 986626)
*Pro Hac Vice*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  202-736-8000
Facsimile:  202-736-8711
pzidlicky@sidley.com
rmartella@sidley.com
jcoleman@sidley.com

*Counsel for Plaintiffs*
*In Consolidated*
*Case No. 1:10-CV-00163 LJO DLB*


Kurt E. Blase (DC Bar No. 288779)
Blase Law Group
879 N. Kentucky St.
Arlington, VA  22205
Telephone:  703-525-3161
Facsimile:  703-525-3161
kurt@blasegroup.com

*Counsel for Plaintiff Center for*
*North American Energy Security*

PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY THE NPRA PLAINTIFFS
LEAD CASE NO. 1:09-CV-02234-LJO-DLB