# EXHIBIT A

MARIE L. FIALA (CA Bar No. 79676)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104-1715
Telephone: 415-772-1200
Facsimile: 415-772-7400
mfiala@sidley.com

PAUL J. ZIDLICKY (DC Bar No. 450196) (*Admitted Pro Hac Vice*)
ROGER R. MARTELLA, JR. (DC Bar No. 976771) (*Admitted Pro Hac Vice*)
JAMES W. COLEMAN (DC Bar No. 986626) (*Admitted Pro Hac Vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  202-736-8000
Facsimile:  202-736-8711
rmartella@sidley.com
pzidlicky@sidley.com
jcoleman@sidley.com

Counsel For Plaintiffs
Consolidated  Case No. 1:10-CV-00163 LJO DLB

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ROCKY MOUNTAIN FARMERS UNION, et al.,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>JAMES N. GOLDSTENE, in his official capacity  as Executive Director of the CALIFORNIA AIR RESOURCES BOARD,<br>　　　Defendant. | CASE NO. CV-F-09-2234 LJO DLB |
| NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION, et al.,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>JAMES GOLDSTENE, et al.,<br><br>　　　Defendants. | CASE NO. CV-F-10-163 LJO DLB<br><br>**DECLARATION OF TIMOTHY HOGAN**<br><br>Hearing Date:　February 23, 2011<br>Hearing Time:　8:30 a.m.<br>Courtroom:　　Four<br>Judge:　　　　Hon. Lawrence J. O'Neill |

I, Timothy Hogan, declare:

1.    My name is Timothy Hogan. I am Director of Motor Fuels at NPRA, the National Petrochemical and Refiners Association, in Washington, D.C. I am responsible for the development and communication of NPRA's positions on federal and state motor fuels legislative and regulatory initiatives. I have worked at NPRA for the past 11 years and have personal knowledge about the petroleum refining industry and the potential impact of regulations on the petroleum refining industry.

2.    NPRA is a national trade association made up of more than 450 companies that represents corporations that own and operate over 90 percent of the United States' domestic petroleum refining capacity and over 95 percent of our nation's petrochemical production capacity. NPRA member companies manufacture and supply to consumers, both individual and corporate, a wide variety of essential products and services that are the backbone of the nation's transportation economy and are used daily by families, farmers and industries across the nation. These products include gasoline, diesel fuel, home heating oil, jet fuel, asphalt products, and the petrochemicals that serve as "building blocks" in thousands of products used every day by consumers and businesses, including plastics, clothing, medicine and computers.

3.    A central objective of NPRA is to educate the public and policymakers about the vital role of the refining and petrochemical industries in the nation's economy and our members' contribution to improvements in the quality of life. NPRA serves as a strong advocacy voice for our members with government officials, the media and the public to promote policies that balance energy supply needs with environmental goals. NPRA participates, on behalf of its members, in regulatory or legal proceedings, with respect to a wide-variety of legal or policy issues that may affect the petroleum refining industry. NPRA regularly comments on and, where appropriate, challenges in Court regulations and policies that may affect our members.

4.    Consistent with these objectives, NPRA has brought this challenge to California's Low Carbon Fuel Standard (LCFS) on behalf of its members because the LCFS will have a significant impact on the petroleum refining industry and, as a result, on NPRA's members.

5.    Under the LCFS, regulated parties, including NPRA members, must comply with

1

DECLARATION OF TIMOTHY HOGAN
CASE NO. CV-F-09-2234 LJO DLB, CASE NO. CV-F-10-163 LJO DLB

reporting requirements which obligate them to identify, for fuels sold or imported into California, the type of fuels, whether the fuel is blended, and the fuel's production process. Regulated parties are required to determine the "carbon intensity" for each fuel component. The LCFS requires regulated parties to report quarterly regarding each transportation fuels, including (i) the type of fuel, (ii) the number of blendstocks, (iii) the blendstock feedstock, (iv) and the carbon intensity for each fuel or blendstock.

6. In adopting the LCFS, the California Air Resources Board ("CARB") stated that compliance with the reporting requirements in the LCFS will impose a cost on regulated parties. CARB has estimated that the yearly cost of compliance with LCFS's reporting and recordkeeping requirements will be $4.6 million industry wide and that the cost for each regulated party would be about $170,000. *See* LCFS, Final Statement of Reasons at 426, 437.

7. In addition to the LCFS's reporting requirements, the LCFS's substantive provisions are scheduled to go into effect on January 1, 2011. The LCFS mandates that regulated parties, including NPRA members, reduce the average "carbon intensity" of the transportation fuels that sell in California. Those reductions increase each year through 2020. Under the LCFS, regulated parties are encouraged to sell transportation fuels in California that have been assigned lower-carbon-intensity values and to sell transportation fuels assigned higher-carbon-intensity values outside of California.

8. The LCFS creates an incentive for "shuffling" of transportation fuels, fuel components and fuel feedstocks. Specifically, LCFS-induced "fuel shuffling" would have regulated parties transport fuels, fuel components, or feedstocks that have been assigned higher carbon-intensity values away from California and shipping those materials that have been assigned lower carbon-intensity values to California. This "shuffling" would result in less efficient fuel distribution routes in which transportation fuels, components and feedstocks travel further distances.

9. Finally, according to CARB, the LCFS also is designed to promote the development of new local infrastructure to handle the influx of new sources of transportation fuels. As a result, regulated parties may be required to invest in infrastructure within California, including, for example, improved tankage facilities, new terminal and port facilities.

DECLARATION OF TIMOTHY HOGAN
CASE NO. CV-F-09-2234 LJO DLB, CASE NO. CV-F-10-163 LJO DLB

I declare under penalty of perjury that the foregoing is true and correct.

Executed this, the 1st day of November 2010.

_____
Timothy Hogan

Subscribed and sworn to before me this
1st day of ___November, 2010___
___Khin Brody___
Khin Brody, Notary Public
My commission expires: ___May 31, 2011___

**KHIN BRODY**
**NOTARY PUBLIC**
**District of Columbia**
**My Commission** Expires May 31, 2011

3
DECLARATION OF TIMOTHY HOGAN
CASE NO. CV-F-09-2234 LJO DLB, CASE NO. CV-F-10-163 LJO DLB