1  EDMUND G. BROWN JR., State Bar No. 37100
   Attorney General of California
2  ROBERT W. BYRNE, State Bar No. 213155
   Supervising Deputy Attorney General
3  GAVIN G. MCCABE, State Bar No. 130864
   MARK POOLE, State Bar No. 194520
4  DAVID A. ZONANA, State Bar No. 196029
   M. ELAINE MECKENSTOCK, State Bar No. 268861
5  Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5582
7   Fax:  (415) 703-5480
    E-mail:  Mark.Poole@doj.ca.gov
8  *Attorneys for Defendants*
   *James N. Goldstene et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION, et al.,** | LEAD CASE No. 1:09-CV-02234-LJO-DLB |
| Plaintiffs, | *Consolidated With* Case No.: 1:10-CV00163-LJO-DLB |
| v. | |
| **JAMES GOLDSTENE, et al.,** | **DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT SUBJECT TO GENUINE DISPUTE IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |
| And Related Consolidated Action. | |
| -------------------------------------------------------- | Date:     February 23, 2011<br>Time:     8:30 a.m.<br>Courtroom:  Four<br>Judge     The Honorable Lawrence J. O'Neill<br>Trial Date:  TBD |
| **NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION,** *et al.*, | |
| Plaintiffs, | |
| v. | **Action Filed: 12/23/2009** |
| **JAMES GOLDSTENE,** *et al.*, | |
| Defendants. | |

1

# DEFENDANTS' STATEMENT OF DISPUTED FACTS

Pursuant to Rule 56(a) and (c) of the Federal Rules of Civil Procedure and Local Rule 260(b), defendants respectfully submit their statement of disputed facts in support of their cross-motion for sumary judgment.

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 1. | The purpose of the LCFS regulation is to implement a low carbon fuel standard, which will reduce greenhouse gas emissions by reducing the full fuel-cycle, carbon intensity of the transportation fuel pool used in California, pursuant to the California Global Warming Solutions Act of 2006 (Health & Safety Code, section 38500 et seq.) | Title 17, Cal. Code Regs., § 95480; ISOR ES-1 ("In this rulemaking, the Air Resources Board (ARB/Board) staff is proposing to reduce emissions of greenhouse gases (GHG) by lowering the carbon content of transportation fuels used in California….The LCFS will reduce GHG emissions from the transportation sector in California by about 16 million metric tons (MMT) in 2020.  These reductions account for almost 10 percent of the total GHG emission reductions needed to achieve the State's mandate of reducing GHG emissions to 1990 levels by 2020.  In addition, the LCFS is designed to reduce California's dependence on petroleum, create a lasting market for clean transportation technology, and stimulate the production and use of alternative, low-carbon fuels in California.  Governor Schwarzenegger has identified all of these outcomes as important goals for California.") |
| 2. | California adopted the LCFS to reduce greenhouse gas emissions by reducing the full fuel-cycle, carbon intensity of the transportation fuel pool used in California, and to reduce California's reliance on petroleum and thereby reduce the consequences of oil price shocks, create a lasting market for clean transportation technology, and stimulate the production and use of alternative, low-carbon fuels in California. | See 17 C.C.R. § 95480; ISOR at ES-1; Exec. Order S-01-07; ARB Board Resolution 09-31, at p. 8. |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 3. | The LCFS is designed to prevent air pollution by significantly reducing emissions of greenhouse gasses such as carbon dioxide, methane, nitrous oxide, and other greenhouse gas contributors. | 17 C.C.R. § 95480; ARB Board Resolution 09-31, at p. 9; Scheible Decl. at ¶10. |
| 4. | Emissions rose 12 percent as a result of the growth in population and economic activity between 1990 and 2004. | Scheible Decl. ¶ 6. |
| 5. | The LCFS regulates transportation fuel sold, supplied or offered for sale in California.  With respect to the fuels, the LCFS applies, either on a compulsory or opt-in basis, to most types of fuels used for transportation in California, including:<br>• California reformulated gasoline;<br>• California diesel fuel;<br>• Compressed or liquefied natural gas;<br>• Electricity;<br>• Compressed or liquefied hydrogen;<br>• Any fuel blend containing hydrogen;<br>• Any fuel blend containing greater than 10 percent ethanol by volume;<br>• Any fuel blend containing biomass-based diesel;<br>• Neat denatured ethanol;<br>• Neat biomass-based diesel; and<br>• Any other liquid or non-liquid fuel not otherwise exempted from the regulation. | Title 17, Cal. Code Regs., § 95480.1(A); LCFS public hearing notice, at http://www.arb.ca.gov/regact/2009/lcfs09/lcfsnot.pdf |
| 6. | The LCFS does not apply to transportation fuel sold, supplied or offered for sale outside of California. | Title 17, Cal. Code Regs., § 95840.1(a); ISOR at V-2; FSOR at 335; Scheible Decl., ¶ 33. |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 7. | The LCFS does not prohibit any specific fuel from being sold, supplied or offered for sale in California. Rather, the regulation controls the aggregate carbon intensity of the transportation fuels offered for sale in California in a given year. Each regulated party (e.g., producer or importer of transportation fuels sold, supplied or offered for sale in California) is responsible for ensuring that the overall carbon intensity of all the fuels in its fuel pool meets the carbon intensity standard established for a given year and may use any credits accrued from previous years or credits purchased. | Title 17, Cal. Code Regs., § 95482, 95483, 95486(b)(1); ISOR at IV-5; Scheible Decl., ¶ 33. |
| 8. | The LCFS does not require the producer or importer of any transportation fuel to use a particular feedstock, feedstock production or distribution method, or fuel production, distribution or delivery method. | Title 17, Cal. Code Regs., § 95484; ISOR at ES-2, IV-5, V-1, V-2; FSOR at 317; Scheible Decl., ¶¶ 29-33. |
| 9. | It is up to the California fuel provider to provide a mix of fuels, augmented by any credits accrued or purchased, that meets its compliance obligation for that year. A provider could buy a small volume of very low carbon fuel at a higher price and then buy a higher carbon fuel at a lower price to meet its overall obligation. | Scheible Decl. at ¶¶ 29-31. |
| 10. | Regulated parties are persons who, pursuant to section 95484(a), must meet the average carbon intensity requirements in section 95482 or 95483. | Title 17, Cal. Code Regs., § 95481(a)(39). |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 11. | The regulated party initially is always either the owner of the facility in California where the transportation fuel was produced, or the person who owns the transportation fuel brought from outside California when it is received at an import facility in California. | Title 17, Cal. Code Regs., §§ 95484(a), 95481(a)(36, 37), 95481(a)(23, 24). |
| 12. | Subsequent transfers of ownership of the transportation fuel after its production in or importation to California but prior to consumption in California may or may not make the recipient of the fuel the regulated party, depending on the fuel being transferred or the terms of the transaction. | Title 17, Cal. Code Regs., § 95484(a). |
| 13. | The reductions in carbon content of fuel mandated by the LCFS are measured by assigning transportation fuels sold, supplied or offered for sale in California a "carbon intensity" value. | Title 17, Cal. Code Regs., § 95480; Scheible Decl., ¶¶ 26-33. |
| 14. | "Carbon intensity" means the amount of lifecycle greenhouse gas emissions, per unit of energy of fuel delivered, expressed in grams of carbon dioxide equivalent per megajoule (gCO2E/MJ). | Title 17, Cal. Code Regs., section 95481 (a)(11). |
| 15. | The carbon intensity assigned to a given fuel in the LCFS is determined using a lifecycle analysis. | Scheible Decl., ¶¶ 14-16, 24-25, 33-34; Spatari Decl. ¶¶ 7-8. |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 16. | LCFS defines "lifecycle greenhouse gas emissions" as the "aggregate quantity of greenhouse gas emissions (including direct emissions and significant indirect emissions such as significant emissions from land use changes), as determined by the Executive Officer, related to the full fuel lifecycle, including all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of the finished fuel to the ultimate consumer, where the mass values for all greenhouse gases are adjusted to account for their relative global warming potential." | 17 Cal. Code Regs., § 95481(a)(28). |
| 17. | RFS2's definition is virtually identical, defining ''lifecycle greenhouse gas emissions'' as the "aggregate quantity of greenhouse gas emissions (including direct emissions and significant indirect emissions such as significant emissions from land use changes), as determined by the Administrator, related to the full fuel lifecycle, including all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of the finished fuel to the ultimate consumer, where the mass values for all greenhouse gases are adjusted to account for their relative global warming potential." | 75 FR 14669, 14765 (Mar. 2010); 42 U.S.C. § 7545(o)(1)(H). |

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 18. | Life cycle analysis is a widely accepted technique for categorizing fuels according to their total GHG emissions. In addition to its use in the LCFS and RFS2 rulemakings, lifecycle analysis is widely used elsewhere in the world. | Scheible Decl. ¶ 14; Spatari Decl. ¶ 7 http://www.iso.org/iso/catalogue_detail?csnumber =37456; http://ec.europa.eu/environment/ipp/pdf/eipro report.pdf http://lct.jrc.ec.europa.eu/; http://www.transportation.anl.gov/modeling_ simulation/ GREET/publications.html; http://www.epa.gov/nrmrl/lcaccess/. http://www.ghgenius.ca/; http://www.eenews.net/public/25/12072/ features/documents/2009/08/10/document_cw_02.pdf |
| 19. | Lifecycle analysis is the best method for accurately controlling fuel carbon. | Scheible Decl. ¶¶ 14-17; Spatari Decl. ¶ 8; Babcock Decl. ¶¶ 6-7. |
| 20. | Carbon intensity values for particular fuel pathways are found in the lookup tables in Table 6 of the LCFS regulation for gasoline and fuels that substitute for gasoline and Table 7 for diesel and fuels that substitute for diesel. | Title 17, Cal. Code Regs., § 95486, Tables 6 and 7; Scheible Decl. ¶¶ 34-38. |
| 21. | The pathways currently listed in the regulation do not represent all of the possible pathways for producing fuels. The LCFS also provides an alternative method for establishing customized carbon intensity values. In order to obtain a customized value, a regulated party may propose for the Executive Officer's approval a modification of an existing value or an entirely new pathway which is scientifically defensible and supported by appropriate data. | Title 17, Cal. Code Regs., section 95486(c); ISOR, p. ES-14; Scheible Decl. ¶¶ 57-64. |

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ (1:09-CV-02234-LJO-DLB)

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 22. | The carbon intensities for the fuel pathways are comprised of both direct emissions associated with transportation fuels and indirect emissions. For corn ethanol, direct emissions include: farming practices; crop yields; harvesting practices; collection and transportation of the crop; type of fuel production process; fuel used in the production process; energy efficiency of the production process; the value of co-products generated; transport and distribution of the fuel; and combustion of the fuel in vehicles. The only significant source of indirect emissions for ethanol identified at this time is from land use change effects. For ethanol from corn, this value, 30 gCO2e/MJ, is the same for all corn ethanol. For ethanol from sugarcane, the value for indirect land use change is higher at 46 gCO2e/MJ. | ISOR at IV-4, IV-5, IV-17; Title 17, Cal. Code Regs., § 95486, Table 6; Scheible Decl. ¶¶ 19-21, 25. |
| 23. | ARB used CA-GREET, v. 1.8b, (Feb. 2009, updated Dec. 2009) and the GTAP Model (Feb. 2009) to conduct the full, fuel life-cycle analysis for all the fuel pathways listed in the Lookup Tables. | Title 17, Cal. Code Regs., § 95486, Tables 6 and 7, section 95486(b)(1); ISOR, V-24; Scheible Decl. ¶¶ 18-19, 23. |
| 24. | Both California and U.S.EPA recognize the importance of accounting for GHG emissions related to indirect land use changes. | Resolution 09-31, at 8; 75 FR 14669, 14767 [EPA is "confident that it is appropriate to consider indirect emissions, including those from both domestic and international land use changes, as 'related to' to the full fuel lifecycle based on the results of our modeling. These results form a reasonable technical basis for the linkage between the full fuel lifecycle of transportation fuels and indirect emissions, as well as for the determination that these emissions are significant."] |

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 25. | The Board found that GHG reductions from transportation fuels are best achieved using the LCFS' approach because, among several reasons, it ensures that the GHG emissions from the full fuel lifecycle are accounted for and reduced to the extent feasible. Further, the Board found that ARB staff performed the complete lifecycle analysis of the various fuels with assigned carbon intensity values under the LCFS, including but not limited to biofuels such as corn ethanol, and such carbon intensity values are scientifically defensible. Moreover, the Board found that the LCFS regulation was developed using the best available economic and scientific information and will achieve the maximum technologically feasible and cost-effective GHG emission reductions from transportation fuel used in California. | Resolution 09-31, at 7-9. |
| 26. | The ARB Board found that the proposed LCFS regulation was necessary in order to protect the public health by substantially reducing greenhouse gas emissions from the full fuel lifecycle of transportation fuels in California. | ARB Board Resolution 09-31, at p. 14. |

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ  (1:09-CV-02234-LJO-DLB)

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 27. | Not all vehicle emission controls involve solely tailpipe exhaust regulations. Conventional gasoline vehicles have both exhaust and evaporative emissions. California controls vehicle emissions both directly (exhaust limits at the tailpipe) and indirectly (fuel regulations). Regulating the fuel controls either or both the exhaust and evaporative emissions. For example, California's gasoline is subject to benzene and aromatic limits which are designed to reduce both exhaust and evaporative emissions from the vehicle and to reduce evaporative emissions during the transport of the fuel from the refinery and from delivery to the vehicle itself at the filling station. | Scheible Decl. ¶ 4. |
| 28. | Greenhouse gases are a characteristic or component of motor vehicle fuels. | Scheible Decl. ¶¶ 14-16; Spatari ¶ 8. |
| 29. | California ethanol plants import the corn used to produce ethanol in California from the Midwest. | Scheible Decl. ¶¶ 43, 45. |
| 30. | The value for the crude oil component of gasoline pathway, CARBOB, in Table 6 is 95.86, based on the average crude oil delivered to California refineries and the average California refinery efficiencies. | Title 17, Cal. Code Regs., § 95486, Table 6; Scheible Decl. ¶¶ 26-27. |
| 31. | Table 6 includes seven pathways for corn ethanol produced in the Midwest for sale in California and three pathways for corn ethanol produced in California for sale in California. Four of the Midwest pathways in the Lookup Table have carbon intensities less than CARBOB and lower than the compliance requirements for years 2011-2013. | Title 17, Cal. Code Regs., § 95486(b)(1), Table 6; Scheible Decl. ¶¶ 55-56. |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 32. | Forty seven ethanol facilities, forty four of which are out-of-state, have registered carbon intensities with ARB for their products.  A number of these facilities have registered carbon intensity values less than CARBOB. | Scheible Decl. ¶ 42. |
| 33. | Using California's registration process, several Midwest corn ethanol producers have registered for carbon intensity values of between 86.8 and 90.10. | Scheible Decl. ¶ 42. |
| 34. | As part of the lifecycle emissions calculation, the LCFS includes the emissions from transporting fuels, blendstocks and feedstocks sold, supplied or offered for sale in California whether the transport occurs inside or outside California or both. | Scheible Decl. ¶¶ 15, 19, 21, 24, 43, 45. |
| 35. | The LCFS regulation requires documentation and a demonstration of how a regulated party's fuel or blendstock is transported to California.  The regulation does not prohibit or otherwise restrict any method of fuel transport to California or within the State. | 17 Cal. Code Regs., §95485(d)(2). |
| 36. | For corn ethanol, the transportation factor in the carbon intensity value actually provides a benefit to Midwest produced ethanol because the emissions are lower for transportation of the finished product from the Midwest than transportation of the corn from the Midwest for production in California ethanol plants. | Scheible Decl. ¶¶ 43, 45. |
| 37. | Many Midwest corn ethanol plants are less efficient than more recently constructed California plants and the electricity used is more carbon-intense as a significant portion of it comes from coal-fired generation. | Scheible Decl. ¶¶ 46-47. |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 38. | The federal EPA is required to undertake a lifecycle emissions analysis in promulgating the rules under the Renewable Fuels Standard. This includes emissions related to the "distribution and delivery" of the fuel. | 42 U.S.C. § 7545(o)(1)(H); 17 Fed. Reg. 14669, 14765. |
| 39. | For ethanol produced from sugarcane, Table 6 contains pathways with carbon intensities ranging from 58.40 to 73.40, lower than all the corn ethanol carbon intensity values. | Title 17, Cal. Code Regs., § 95486, Table 6. |
| 40. | The majority of the world's sugarcane ethanol supply is currently produced in Brazil. | ISOR III-4. |
| 41. | Currently, 10 applications have been submitted pursuant to the Method 2A/2B process. | Scheible Decl. ¶¶ 61-64. |
| 42. | From those 10 applications, 25 new pathways, 22 for corn ethanol, with draft CI values ranging from 73.2 - 92.4, were publicly posted by ARB. | Scheible Decl. ¶¶ 61-64. |
| 43. | EPA does not regulate the carbon intensity of gasoline, diesel, CNG, LNG, electricity, and hydrogen, or any other non-biofuel. | 75 Fed. Reg. 14669, 14674. |
| 44. | The amount of emissions in a carbon intensity that come from a particular phase in the lifecycle (production, transportation, and combustion) varies with each fuel. For example, 75% of the emissions from gasoline are from combustion and emitted through the tailpipe. | Scheible Decl. ¶ 16. |
| 45. | There are three major contributing components to transportation greenhouse gas emissions: vehicle or engine efficiency, vehicle use and the carbon intensity of fuels. | ISOR ES-36; Scheible Decl. ¶ 8. |
| 46. | The largest source of GHG emissions in California is from the combustion of transportation fuels. | Scoping Plan at 11; Scheible Decl. ¶ 8. |

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ (1:09-CV-02234-LJO-DLB)

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 47. | California is the fifteenth largest emitter of GHGs on the planet and contributes approximately two percent of total worldwide GHG emissions. | Scoping Plan at 11. |
| 48. | Transportation activities are responsible for 38 percent of the GHG emissions in California – or 182 MMTCO2e in 2004. | Scoping Plan at C-55<br>Resolution 09-31, at 7; Scheible Decl. ¶ 8. |
| 49. | The LCFS is estimated to reduce GHG emissions for the combustion of transportation fuels by about 16 million metric tons (MMT) CO2e by 2020. | ISOR at ES-24, VII-1. |
| 50. | The two primary strategies for reducing transportation sector greenhouse gases, the Pavely Program and the LCFS, will collectively reverse the upward trend in transportation-related greenhouse gas emissions in California. | Bd. Transcript at 34;  Scheible Decl. ¶ 8. |
| 51. | Unlike the RFS, the LCFS is a specific control on greenhouse gases from transportation fuels. | RFS2 Summary and Analysis of Comments, 7-1, EPA, Feb. 2010.  (While these [the RFS2] thresholds do not constitute a specific control on greenhouse gases for transportation fuels (such as a low carbon fuel standard), they do require that the volume mandates be met through the use of renewable fuels that meet certain lifecycle GHG reduction thresholds."); RFS2 Final Regulatory Impacts Analysis at 457, 459, Feb. 2010. |
| 52. | Combustion of ethanol in a gasoline engine results in the emissions of CO2 and other GHGs like methane (CH4) and nitrous oxide (N2O).  For a given vehicle and fuel system, GREET separately calculates, among other things, emissions of CO2, CH4 and N2O. | ISOR at IV-9, 11. |
| 53. | Some transportation fuels, such as electricity, have zero emissions from use of the fuel in the vehicle. | Scheible Decl, ¶ 16. |

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 54. | USEPA has stated that, for the RFS2 regulation, "including international indirect emissions in EPA's lifecycle analysis, does not exercise regulatory authority over activities that occur solely outside the U.S., nor does it raise questions of extra-territorial jurisdiction. EPA's regulatory action involves an assessment of products either produced in the U.S. or imported into the U.S….Considering international emissions in determining the lifecycle GHG emissions of the domestically-produced or imported fuel does not change the fact that the actual regulation of the product involves its use solely inside the U.S." | 75 FR 14669, 14766 |
| 55. | Many corn ethanol plants in the Midwest have made investments to increase the efficiency of their production in order to compete better in the marketplace and maximize profit. | Scheible ¶ 82; RFA Comment on RFS p. 56, 83, 86. EPA RFS2 75 Fed. Reg, 14670, 14746 (March 26, 2010). |
| 56. | Production volumes from the corn ethanol industry are nearing the cap for credits under the RFS. | RFA Ethanol Industry Update, December 2010. |
| 57. | Ethanol production has increased dramatically in the last five years from 5 billion gallons to almost 14 billion gallons annually. | RFA Ethanol Industry Update, December 2010 |
| 58. | Most of the United States now blends ethanol at 10 percent. The US EPA recently approved an increase to 15 percent blend of ethanol in gasoline for newer cars. This will open even more markets to ethanol. | RFA Ethanol Industry Update, December 2010 |
| 59. | RFS expects the ethanol industry to increase exports of ethanol to foreign counties to at least 250 million gallons in 2010. | RFA Ethanol Industry Update, December 2010 |

14

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ (1:09-CV-02234-LJO-DLB)

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 60. | EPA views the RFS and LCFS as compatible programs. | US EPA Summary of Analysis and Comments for the RFS2, at 13-15 ("EPA through the RFS2 final rule is implementing the Renewable Fuel Standards program as required by Congress through EISA. Issues associated with State LCFS programs, and potential future Federal fuel standards, are not germane to the final RFS program. However, where possible we have attempted to structure the RFS2 program so as to be compatible with existing State LCFS programs, including coordination on lifecycle modeling."); See also 75 Fed. Reg. 14670, 14764 ("Dialogue with the State of California and the European Union on their parallel on-going efforts on GHG lifecycle analysis also helped inform EPA's methodology."). |
| 61. | California's LCFS is designed to complement the federal RFS2. | *See* ISOR at ES-5; Scheible Decl. at ¶¶ 12, 75-84. |
| 62. | The LCFS will incentivize greater reductions in greenhouse gas emissions from the transportation fuels used in California. | ARB Board Resolution 09-31, at p. 9; ISOR, at ES-5. |
| 63. | LCFS does not require a 20 percent reduction of greenhouse gases in order to be sold in California. Any fuel can be sold in California. | Scheible Decl. at ¶¶ 12, 79-80. |
| 64. | In 2007, Members of both Houses of Congress introduced bills proposing a national LCFS patterned after California's announced program. | H.R. 2215 (Inslee); H.R. 2809 (Inslee); S. 1324 (Obama); S. 2192 (Boxer); S. 1073 (Feinstein); S. 1297 (Boxer); see also Brent D. Yacobucci, CRS Report for Congress: A Low Carbon Fuel Standard: State and Federal Legislation and Regulations, dated December 23, 2008, at p. 9. |
| 65. | At least one of the bills proposed in Congress targeted the same level of reductions in lifecycle greenhouse gas emissions for 2020 as California. | S. 1324 (Obama). |

| | DEFENDANTS' UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| 66. | U.S. EPA cited the reduction in foreign oil as the energy security goal of RFS2. | 75 FR 14670-01 (March 26, 2010), at pp. 14839-14842. |
| 67. | In the RFS2 rulemaking, EPA further described the purpose of the RFS as "promoting the development of emerging technologies to produce clean alternatives to petroleum-based fuels, and to further U.S. energy independence" and "promoting energy independence and the reduction of GHG emissions from transportation fuels." | 75 FR 14670-01 (March 26, 2010), at p. 14691, 14705. |
| 68. | In its comments during the U.S. EPA's rulemaking for RFS2, plaintiffs Renewable Fuels Association stated that: "The purpose of the EISA was to increase the use of renewable fuels to reduce this country's dependence on foreign oil." | Comments of Renewable Fuels Association re REGULATION OF FUELS AND FUEL ADDITIVES: CHANGES TO RENEWABLE FUEL STANDARD PROGRAM; NOTICE OF PROPOSED RULEMAKING, 74 FED. REG. 24,904 (MAY 26, 2009), submitted September 25, 2009 (hereafter "RFA 9/29/09 Comments"), at p. 3; see also id. at p. 1 ("The RFS program is a vital part of the energy policy of this country as it moves toward less dependence on foreign oil."); id. at p. 3 ("The purpose of the EISA was to increase the use of renewable fuels to reduce this country's dependence on foreign oil."). |
| 69. | The LCFS is designed to reduce California's dependence on petroleum to help protect California's economy from the consequences of oil price shocks. | Executive Order S-01-07; ISOR, at p. ES-01; Scheible Decl. at ¶ 10. |

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ (1:09-CV-02234-LJO-DLB)

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 70. | USEPA stated in its rulemaking: "It should be noted, however, that there is no specific 'corn ethanol' mandated volume, and that any advanced biofuel produced above and beyond what is required for the advanced biofuel requirements could reduce the amount of corn ethanol needed to meet the total renewable fuel standard." | 75 FR 14670-01 (March 26, 2010), at p. 14743. |
| 71. | Not only is there no guaranteed volume of corn ethanol in the RFS, EPA has also made it clear that the corn ethanol industry will have to compete economically stating "Although there is not a set corn ethanol requirement, EISA allows for 15 billion gallons of the 36 billion gallon renewable fuel standard to be met by conventional biofuels.  We expect that corn ethanol will fulfill this requirement, provided it is more cost competitive than imported ethanol or cellulosic biofuel in the marketplace." | 75 FR 14670-01 (March 26, 2010), at p. 14746. |
| 72. | EPA also stated that "Implementation of EISA will undoubtedly benefit the domestic agriculture sector as a whole, with some components benefiting more than others depending in part on the lifecycle GHG emissions associated with the products to be made from individual feedstocks.  If Congress had sought to promote all biofuel production without regard to GHG emissions related to the full lifecycle of those fuels, it would not have specified GHG reduction thresholds for each category of renewable fuel for which volume targets are specified in the Act." | 75 FR 14670-01 (March 26, 2010), at p. at 14766. |

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ  (1:09-CV-02234-LJO-DLB)

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 73. | During the debate over the EISA, numerous members of Congress expressed concern about the expansion of corn-based ethanol and urged an emphasis in the RFS2 on advanced biofuels, including cellulosic biofuels. | 153 Cong. Rec. E2665 (Rep. Dingell stated "[t]o address these competing concerns [about corn ethanol], the [EISA] places an emphasis on the use of cellulosic biomass as a means of producing ethanol."; 153 Cong. Rec. E2631 (Rep. Davis stated "Placing a limit on the amount of corn ethanol eligible to be applied in meeting the RFS is a necessary step.  Yet, I have doubts as to whether that limit is too high and whether more should be done to ensure the development of other biofuels."); 153 Cong. Rec. E2529; 153 Cong. Rec. H14434-02, at H1440 (Rep. Stark "I am troubled that we are continuing to subsidize and ratchet up corn-based ethanol production. A simple shift from gasoline to ethanol will do nothing to reduce greenhouse gas emissions, but it will eat up open space and continue to drive up food prices. Fortunately, this bill includes some environmental safeguards and directs future production toward advanced bio-fuels"); 153 Cong. Rec. H16651-02, at H16655 (Rep. Green stating "[t]here is no shortage of literature detailing the negative environmental impacts of corn based ethanol, its questionable greenhouse gas reductions, its reduced fuel efficiency, and its effect on food and energy prices." |
| 74. | In response to comments regarding the exemption for existing corn ethanol plants, U.S. EPA stated that it:<br><br>"believes that the Act should not be interpreted as allowing unlimited expansion of exempt facilities for an indefinite time period, with all volumes exempt, as suggested by the commenter.  Such an approach would likely lead to a substantial increase in production of fuel that is not subject to any GHG limitations, which EPA does not believe would be consistent with the objectives of the Act." | 75 FR 14670-01 (March 26, 2010), at p. 14689. |

| DEFENDANTS' UNDISPUTED FACTS | | EVIDENCE |
|---|---|---|
| 75. | California's crude oil industry is declining because the resources available for extraction are diminishing. | Scheible Decl., ¶ 99. |
| 76. | RFA and Growth Energy have indicated that many of their members, most of whom are located in the Midwest, are well-situated to convert their corn ethanol plants to cellulosic processes when the latter becomes commercially viable. | Defendants' RJN, Exhs. S and T. |

Dated:  December 6, 2010

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
ROBERT W. BYRNE
Supervising Deputy Attorney General


/s/ Mark Poole
_____
MARK POOLE
Deputy Attorney General
*Attorneys for Defendants*
*James N. Goldstene et al.*

SF2010400011
20381822.doc

DEFENDANTS' STMT. OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MSJ  (1:09-CV-02234-LJO-DLB)