KAMALA D. HARRIS
Attorney General of California
ROBERT W. BYRNE
Supervising Deputy Attorney General
GAVIN G. MCCABE, State Bar No. 130864
MARK POOLE, State Bar No. 194520
DAVID A. ZONANA, State Bar No. 196029
ELAINE MECKENSTOCK, State Bar No. 268861
Deputy Attorneys General
　455 Golden Gate Avenue, Suite 11000
　San Francisco, CA  94102-7004
　Telephone:  (415) 703-5582
　Fax:  (415) 703-5480
　E-mail:  Mark.Poole@doj.ca.gov
*Attorneys for Defendant*
*James N. Goldstene et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION, et al.,**<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>**JAMES GOLDSTENE, et al.,**<br><br>　　　　　Defendants.<br><br>And Related Consolidated Action.<br><br>-----------------------------------------------------<br>**NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION,** *et al.***,**<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>**JAMES GOLDSTENE, et al.,**<br><br>　　　　　Defendants. | LEAD CASE No. 1:09-CV-02234-LJO-DLB<br><br>*Consolidated With* Case No.:<br><br>1:10-CV00163-LJO-DLB<br><br>**DEFENDANTS AND DEFENDANT-INTERVENORS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RMFU PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　　To Be Determined<br>Time:<br>Courtroom: Four<br>Judge:　　The Honorable Lawrence J. O'Neill<br>Trial Date: None Set<br>Action Filed: 12/23/2009 |

1

## INTRODUCTION

The Low Carbon Fuel Standard ("LCFS") has been in full effect since January 1 of this year, and ethanol is still flowing into California from the Midwest, some of it at a premium price. The ethanol market is booming, domestically and internationally. All evidence, including that obtained through discovery, indicates that Plaintiffs Renewable Fuels Association ("RFA") and Growth Energy anticipate a rosy future for the ethanol industry. In the absence of any factual basis for the doomsday scenario Plaintiffs painted in their motion for a preliminary injunction, this Court should deny that motion.

## ARGUMENT

**I.   EVEN LIMITED DISCOVERY CONFIRMS THAT PLAINTIFFS WILL NOT SUFFER IRREPARABLE INJURY IN THE ABSENCE OF A PRELIMINARY INJUNCTION.**

In December 2010, a month before regulated parties were required to begin complying with the LCFS, Bob Dinneen, the president and CEO of RFA, gave a presentation to investors on the state of the ethanol industry. ECF Doc. 137-1 at 25-66; *see* Declaration of Mark Poole in Support of Defendants' Supplemental Briefs In Opposition to RFMU Plaintiffs' Motion for Preliminary Injunction & Motion for Summary Judgment ("Poole Decl."), Exh. C at 12:5-18. Considering that RFA and the other RMFU plaintiffs had argued a month earlier in their motion for a preliminary injunction that the LCFS "could cripple the U.S. ethanol industry" and would "cost the domestic corn ethanol industry over $100 million in irreparable losses [in 2011] alone," one would have expected to hear a lot about the LCFS in that presentation. ECF Doc. 116 at 1. Yet the LCFS did not come up at all in the December 2010 presentation, or in the question-and-answer period that followed. Poole Decl., Exh. C at 16:7 – 17:13. Asked in RFA's 30(b)(6) deposition to explain the omission, Mr. Dinneen testified that the LCFS "was not, at that time, a burning issue." *Id.* at 17:15-16.

The few documents produced by RFA and Growth Energy in response to Defendants' Rule 56(d) motion, along with the deposition of RFA, demonstrate why the LCFS was "not a

2

burning issue" for RFA in December 2010, a month before it was to take effect. In fact, contrary to Plaintiffs' allegations in their motion for a preliminary injunction, RFA's own predictions for 2011 were not that the ethanol industry would be seriously injured by the LCFS, but rather that compliance with the LCFS would prove difficult (or impossible).[1] Poole Decl., Exh. B at RFALCFS-390-91.  In contrast to the bleak picture painted in Plaintiffs' preliminary injunction motion, the evidence shows that the ethanol industry is operating near capacity, and its future is bright.

To begin with, RFA acknowledges that in 2011, the amount of ethanol available with a low enough carbon intensity to generate credits or break even under the LCFS will be *more than double* the amount needed. ARB estimates that California consumers are likely to demand approximately 1.44 billion gallons of ethanol this year. ECF Doc. 148, Exh. C at E-5-9. RFA expects the domestic ethanol industry to produce approximately 3.5 billion gallons of ethanol with a low enough carbon intensity to generate credits under the LCFS. Poole Decl., Exh. B at RFALCFS-0262. Applications for new or modified pathways currently pending before ARB represent an additional 1.3 billion gallons, which will generate even larger credits. *Id.* With or without the new pathways, copious amounts of Midwest corn ethanol will be sold in California in 2011. In fact, sales of this credit-producing Midwest corn ethanol into California are already well underway, as are sales of higher carbon intensity Midwest ethanol as well. *See* Declaration of Michael Waugh in Support of Defendants' Supplemental Briefs in Opposition to RFMU Plaintiffs' Motion for Summary Judgment and Motion for Preliminary Injunction ("Waugh Decl."), at ¶¶ 10, 11.

In addition, RFA is optimistic about the waiver just granted by EPA that expands the

---

[1] In reality, as explained herein, there is more than enough ethanol available to meet California's demand and to comply with the LCFS.

3

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)

ethanol market by allowing a higher proportion of ethanol—fifteen percent ("E15") rather than ten percent ("E10")—to be used in most vehicles. RFA expects that "E15 will likely be available for commercial sales sometime this summer." Poole Decl., Exh. C at 41:7-9. The E15 waiver affects ethanol producers in two important ways. First, according to RFA, the availability of E15 will vastly expand the potential of the national ethanol market from 13 billion gallons at present to as much as 19 billion gallons in 2014. ECF Doc. 137-1 at 35; Poole Decl., Exh. C at 27:8-14; 35:2-6; 37:20–38:9. Second, RFA has concluded that the use of E15 would make Midwest corn ethanol "viable" under the LCFS through 2012. Poole Decl., Exh. B at RFALCFS-0269. Defendants dispute Plaintiffs' end date for "viability" of Midwest ethanol, especially as Plaintiffs' analysis explicitly ignores the ongoing addition of new pathways.[2] *Id.* Regardless, Plaintiffs' conclusion about the impact of E15 on fuel choices under the LCFS belies any possibility of near-term irreparable injury.

Documents produced by RFA and Growth Energy also show that existing corn ethanol producers have taken and will continue to take steps to reduce their carbon intensity values. As RFA's 2010 Ethanol Industry Outlook explains, "[e]xisting ethanol biorefineries operate in a constant state of change, ever-vigilant for new technologies that will improve their process and their profits." Poole Decl., Exh. B at RFALCFS-0183; *see also* Poole Decl., Exh. A at 21:24-22:11 ("RFA knows that corn ethanol producers regularly modify their facilities to use less electricity and less energy.").

Ethanol plants across the nation have used cutting-edge technologies to reduce their

---

[2] Plaintiffs' analysis also appears to ignore the use of ethanol in flexible-fuel vehicles (FFVs), which can run on blends of eighty-five percent ethanol ("E85"). According to RFA, "automakers General Motors, Ford, and Chrysler have pledged to make half of all new vehicles coming off their assembly lines in 2012 and beyond FFVs." Poole Decl., Exh. B at RFALCFS-0195. A 2010 "Ethanol Fact Book" produced by Growth Energy predicts that "[t]here could be over 12 million FFVs on the nation's highways by 2012 and 25 million by 2015." Poole Decl., Exh. E at RMFU-GRE-1791.

4

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)

energy consumption and increase their efficiency. Poole Decl., Exh. B at RFALCFS-0091, 0117, 0155. A study produced in discovery by Growth Energy estimated that newer, more efficient plants will "account for 75% [of total ethanol production] by the end of 2009." Poole Decl., Exh. E at RMFU-GRE-0146. A case in point is Green Plains, a Growth Energy member whose plants "have increased production by 20% [over the last two years] while decreasing energy consumption per gallon," achieving, for example, a "7% reduction in electricity consumption" since 2009. Poole Decl., Exh. E at RMFU-GRE-0081.

RFA concludes that "[t]he GHG benefits of ethanol will be even more significant in the future, as the carbon footprint of ethanol production continues to shrink and new technologies reduce the energy intensity of the process." Poole Decl., Exh. B at RFALCFS-0157. Likewise, Growth Energy predicts that by 2030, ethanol plants will have reduced their carbon intensity relative to gasoline by 100%. Poole Decl., Exh. E at RMFU-GRE-0108. All of these improvements make ethanol plants candidates for lower carbon intensity values under the LCFS, which in turn increases the appeal (and price) of their product in the California market. Indeed, many Midwest ethanol producers who have made some of these improvements have taken advantage of the regulation's flexibility and obtained a lower carbon intensity value. *See* Defendants' Supplemental Request for Judicial Notice ("RJN"), Exh. B. Given the constant technological advances lauded by Plaintiffs, there is no reason to conclude that Midwest ethanol producers are in imminent danger from the LCFS.

In fact, ethanol producers are currently building several new plants and expanding others—hardly what one would expect if the LCFS were poised to cripple the ethanol industry. Poole Decl., Exh. B at RFALCFS-0178; Poole Decl., Exh. E at RMFU-GRE-0235; ECF Doc. 137-1 at 27. Indeed, these facts directly contradict the speculation of Plaintiffs' declarants. According to RFA, these new plants use the "latest and greatest technology," "are generally going

5

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)

to be more efficient than the older facilities, and thus should have a[n] improved carbon footprint." Poole Decl., Exh. C at 55:10-14.  RFA has done no analysis showing that the new plants under construction will not be able to compete in California in 2020, let alone in 2011 or 2012. *Id.* at 59:2-13.

Finally, alternative marketing opportunities are available for corn ethanol producers who do not sell their product in California.  In addition to the thriving domestic market for ethanol, the export market is booming.  U.S. ethanol exports reached an all-time high in 2010, far surpassing any other year on record.  ECF Doc. 137-1 at 34.  U.S. producers exported ethanol to Brazil, the Middle East, and the European Union, Poole Decl., Exh. C at 30:20-22, and exported ethanol by-products to China, Canada, Mexico, and other countries, *id.* at 43:7-15.  A recent report indicates that "U.S. ethanol exports ended 2010 on a high note, with December exports surpassing all other monthly levels last year, according to figures from the U.S. Department of Commerce." Waugh Decl., Exh. B.

Clearly, the U.S. ethanol industry operates in "a climate of opportunity," having produced record amounts of ethanol every year in the last decade.  Poole Decl., Exh. B at RFALCFS-0176-0178; *see also id.* at RFALCFS-0004, 0025, 0044, 0063, 0113.  Against this evidence, Plaintiffs' assertions of irreparable injury fall flat.  Because "[t]he record . . . shows that the possibility of [irreparable] losses is dubious and speculative," this Court should deny Plaintiffs' motion for a preliminary injunction. *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir. 1985) (reversing a grant of a preliminary injunction where regulated entities had already begun to comply and the supply of goods to the market was uninterrupted).

For the foregoing reasons, as well as those stated in Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs have failed to show that they will suffer irreparable injury in the absence of a preliminary injunction.

## II. PLAINTIFFS ARE NOW EVEN LESS LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

Defendants incorporate by reference the arguments in Defendants and Defendant-Intervenors' Supplemental Memorandum of Points and Authorities In Opposition To RMFU's Motion for Summary Judgment.  For the reasons discussed therein, and in Defendants' opposition brief filed December 17, 2010, ECF Doc. 139, Plaintiffs have not established that they are likely to succeed on the merits of any of their claims.  Rather, the facts now show more clearly than ever that the LCFS creates no conflict with federal law and does not discriminate against or unduly burden interstate commerce.

## III. THE BALANCE OF THE EQUITIES IS NOW STARKER AND TILTS MORE SHARPLY AGAINST AN INJUNCTION.

The evidence obtained through discovery and the current status of the ethanol market in California, the nation and the world demonstrate clearly that, as Defendants stated in their initial opposition brief, *no* hardship is likely to befall Plaintiffs before the merits of this case are adjudicated.  For the reasons explained in that initial opposition brief, Defendants, in contrast, would experience significant hardships in the face of an injunction.  *See* ECF Doc. 140 at 17-20.  The balance of these equities counsels firmly against an injunction.

## IV. THE PUBLIC INTERESTS AT ISSUE HERE ARE MORE SHARPLY DEFINED AND WEIGH HEAVILY AGAINST AN INJUNCTION.

The absence of any evidence of injury to the ethanol market or to specific ethanol producers undermines Plaintiffs' assertion that the LCFS poses an immediate threat to them or any of their members.  In addition, the market has already adjusted to the LCFS, as evidenced by varying prices for different carbon intensity values.  *See* Waugh Decl., at ¶¶ 11, 12.  Further, numerous ethanol producers have sought, and continue to seek, individualized carbon intensity values.  In the absence of any real possibility of irreparable injury in the meantime, the efforts of ARB and the ethanol producers who have applied for alternative pathways should not be reversed until the merits of this case are decided.  There is no public interest in undoing all of that work, only to require it be done again if the LCFS is upheld.

7

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)

**CONCLUSION**

Although they were specifically asked for information supporting their claims of economic injury, Plaintiffs have produced no evidence of any injury to themselves or their members, let alone any evidence of imminent, irreparable injury. With all the facts against them, Plaintiffs have not met their burden to justify the extraordinary remedy of a preliminary injunction. The motion should be denied.

8

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)

| | |
|---|---|
| Dated: February 18, 2011 | Respectfully submitted, |
| | KAMALA D. HARRIS<br>Attorney General of California<br>ROBERT W. BYRNE<br>Supervising Deputy Attorney General |
| | /s/ Mark Poole<br>MARK POOLE<br>Deputy Attorney General<br>*Attorneys for Defendant*<br>*James N. Goldstene et al.* |

NATURAL RESOURCES DEFENSE COUNCIL

By:  /s/ David Pettit
     DAVID PETTIT

Attorneys for Defendant-Intervenor,
Natural Resources Defense Council, Inc.

SIERRA CLUB

By:  /s/ Pat Gallagher
     PAT GALLAGHER

Attorney for Defendant-Intervenor,
Sierra Club

CONSERVATION LAW FOUNDATION

By:  /s/ Jane West
     JANE WEST

Attorney for Defendant-Intervenor,
Conservation Law Foundation

ENVIRONMENTAL DEFENSE FUND

By:  /s/ James T.B. Tripp
     JAMES T.B. TRIPP
Attorney for Defendant-Intervenor,
Environmental Defense Fund

SF2010400011
20408842.doc

9

Supplemental Memo. of Points & Authorities In Opp. to RMFU Plaintiffs' Motion for Preliminary Injunction
(1:09-CV-02234-LJO-DLB)