1  MARIE L. FIALA (CA Bar No. 79676)
   SIDLEY AUSTIN LLP
2  555 California Street, Suite 2000
   San Francisco, CA 94104-1715
3  Telephone: 415-772-1200
   Facsimile: 415-772-7400
4  mfiala@sidley.com

5  Counsel For Plaintiffs
   In Consolidated
6  Case No. 1:10-CV-00163 LJO DLB

7  [ADDITIONAL PARTIES AND COUNSEL
   SHOWN ON SIGNATURE PAGE]

8

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11                   FRESNO DIVISION

12  ROCKY MOUNTAIN FARMERS UNION,        ) LEAD CASE No. 1:09-CV-02234-LJO-DLB
    et al.,                              ) *Consolidated With Case* No. 1:10-CV-00163
13                                       ) LJO DLB
               Plaintiffs,               )
14                                       )
         vs.                             ) **PLAINTIFFS' JOINT OPPOSITION TO**
15                                       ) **DEFENDANT AND DEFENDANT**
    JAMES GOLDSTENE, et al.,             ) **INTERVENORS' CROSS-MOTION FOR**
16                                       ) **SUMMARY JUDGMENT**
               Defendants.              )
17                                       ) Hearing Date: TBD
                                         ) Hearing Time: TBD
18                                       ) Courtroom:    Four
                                         ) Judge:        Hon. Lawrence J. O'Neill
19  ──────────────────────────           )
    NATIONAL PETROCHEMICAL &             )
20  REFINERS ASSOCIATION, *et al.*,      )
                                         )
21             Plaintiffs,               )
                                         )
22       vs.                             )
                                         )
23  JAMES GOLDSTENE, *et al.*,           )
                                         )
24             Defendant.               )
                                         )
25  ──────────────────────────

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ....................................................................1

FACTUAL BACKGROUND .............................................................................3

LEGAL STANDARDS ....................................................................................6

ARGUMANT ................................................................................................7

    A.    The LCFS. ...............................................................................3

    B.    The Clean Air Act (CAA). ........................................................4

    C.    This Court's Order Denying Defendants' Motion to Dismiss. ............5

I.    SECTION 211(C)(4)(B) OF THE CLEAN AIR ACT DOES NOT IMMUNIZE
THE LCFS FROM SCRUTINY UNDER THE COMMERCE CLAUSE. ........................7

II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD
BE DENIED WITH RESPECT TO PLAINTIFFS' PREEMPTION CLAIMS. ...............10

    A.    The EISA's Savings Clause Does Not Preclude
Plaintiffs' Preemption Claim. ....................................................12

    B.    CAA § 211(c)(4)(B) Does Not Exempt the LCFS From Preemption. .................13

    C.    Defendants' Argument That Certain Sections of the LCFS Could Survive a
Preemption Claim Does Not Preclude Plaintiffs' Preemption Claims. .................14

III.    DEFENDANTS' ARGUMENTS ALSO SHOULD BE REJECTED
BECAUSE THE LCFS WAS NOT ADOPTED UNDER SECTION 211(C)(4)(B). .......16

IV.    THE LCFS VIOLATES THE COMMERCE CLAUSE BY IMPERMISSIBLY
DISCRIMINATING AGAINST INTERSTATE AND FOREIGN COMMERCE
AND REGULATING COMMERCE IN OTHER STATES. ............................................19

CONCLUSION..............................................................................................19

i

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION
FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

# TABLE OF AUTHORITIES

**Page(s)**

Cᴀsᴇs

*Alaska Airlines, Inc.* v. *Brock*,
   480 U.S. 678 (1987) ..................................................................................15

*Brodheim* v. *Cry*,
   584 F.3d 1262 (9th Cir. 2009) ...................................................................7

*Celotex Corp.* v. *Catrett*,
   477 U.S. 317 (1986)..............................................................................7, 19

*Chicanos Por La Causa, Inc.* v. *Napolitano*,
   558 F.3d 856 (9th Cir. 2009) .............................................................10, 12

*Christensen* v. *Comm'r*,
   523 F.3d 957 (9th Cir. 2008) .....................................................................8

*Davis* v. *EPA*,
   348 F.3d 772 (9th Cir. 2003) ........................................................... passim

*Day* v. *Apoliona*,
   496 F.3d 1027 (9th Cir. 2007) ..................................................................10

*Engine Mfrs. Ass'n* v. *S. Coast Air Quality Mgmt. Dist.*,
   498 F.3d 1031 (9th Cir. 2007) ........................................................2, 14, 15

*Fla. Lime & Avocado Growers, Inc.* v. *Paul*,
   373 U.S. 132 (1963).................................................................................10

*Geier* v. *Am. Honda Motor Co.*,
   529 U.S. 861 (2000)...........................................................................10, 12

*Hillsborough Cnty.* v. *Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985).................................................................................10

*In re Barboza*,
   545 F.3d 702 (9th Cir. 2008) ...............................................................7, 16

*In re Rosson*,
   545 F.3d 764 (9th Cir. 2008) .....................................................................9

*Lewis* v. *BT Inv. Managers, Inc.*,
   447 U.S. 27(1980).....................................................................................8

*Medtronic, Inc.* v. *Lohr*,
   518 U.S. 470 (1996).................................................................................10

ii

*Miller* v. *Gammie*,
335 F.3d 889 (9th Cir. 2003) ...................................................................9

*Moreland* v. *Las Vegas Metro. Police Dep't*,
159 F.3d 365 (9th Cir. 1998) ............................................................7, 19

*NCAA* v. *Miller*,
10 F.3d 633 (9th Cir. 1993) ..................................................................15

*New England Power Co.* v. *New Hampshire*,
455 U.S. 331 (1982) ................................................................................8

*Oxygenated Fuels Ass'n, Inc.* v. *Davis*,
331 F.3d 665 (9th Cir. 2003) ........................................................ passim

*Oxygenated Fuels Ass'n* v. *Davis*,
163 F. Supp. 2d 1182 (E.D. Cal. 2001)....................................................9

*Rocky Mountain Farmers Union* v. *Goldstene*,
719 F. Supp. 2d 1170 (E.D. Cal. 2010).......................................... passim

*South-Central Timber Dev., Inc.* v. *Wunnicke*,
467 U.S. 82 (1984) ..................................................................................8

*United States* v. *Kapp*,
564 F.3d 1103 (9th Cir. 2009) ................................................................7

*United States* v. *Salerno*,
481 U.S. 739 (1987) ..........................................................................14, 15

*Wyoming* v. *Oklahoma*,
502 U.S. 437 (1992) ................................................................................8

**STATUTES, RULES & REGULATIONS**

42 U.S.C. § 7545...............................................................................................4

42 U.S.C. § 7545(c) ...........................................................................4, 6, 18

42 U.S.C. § 7545(c)(1)....................................................................................4

42 U.S.C. § 7545(c)(1) ....................................................................................4

42 U.S.C. § 7545(c)(4)......................................................................5, 8, 9, 14

42 U.S.C. § 7545(c)(4)(A) ...................................................................... passim

42 U.S.C. § 7545(c)(4)(B) ...................................................................... passim

42 U.S.C. § 7545(o) ................................................................................ passim

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION
FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

42 U.S.C. § 7545(o)(1)(B) ............................................................................................5

42 U.S.C. § 7545(o)(2) .................................................................................................5

42 U.S.C. § 7545(o)(2)(A)(i) ......................................................................................11

42 U.S.C. § 7545(o)(2)(A)(i) ..................................................................................5, 11

42 U.S.C. § 7545(o)(2)(A)(iii)(II)(aa) .......................................................................11

42 U.S.C. § 7545(o)(2)(B) ..........................................................................................11

Cal. Code Regs. Tit. 17 § 95481(a)(28) .......................................................................4

Cal. Code Regs. Tit. 17 § 94582(b), (c) ..............................................................3, 4, 18

Cal. Code Regs. Tit. 17 § 95486 ...................................................................................3

Cal. Code Regs. Tit. 17 § 95486(c) ..............................................................................3

Fed. R. of Civ. P. 56(c) ............................................................................................6, 7

Local Rule 260 ...............................................................................................................6

Local Rule 260(a) ..........................................................................................................7

*S. Comm. On Public Works, 93d Cong.*, 1 Legislative History of the Clean Air Amendments
    of 1970 (Comm. Print 1974) .................................................................................18

U.S. Const. art. VI, cl. 2 .............................................................................................10

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION
FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

1

## **INTRODUCTION AND SUMMARY**

2   Plaintiffs National Petrochemical & Refiners Association ("NPRA"), American Trucking

3   Associations, The Center For North American Energy Security, and The Consumer Energy Alliance

4   (collectively, "NPRA Plaintiffs"), along with Plaintiffs Rocky Mountain Farmers Union, Redwood

5   County Minnesota Corn and Soybeans Growers, Penny Newman Grain, Inc., Fresno County Farm

6   Bureau, Nisei Farmers League, California Dairy Campaign, Rex Nederend, Growth Energy and the

7   Renewable Fuels Association (collectively, "RMFU Plaintiffs"), submit this opposition to the

8   motion for summary judgment filed by Defendants and Defendant-Intervenors (collectively,

9   "Defendants").  *See* Defs' and Def.-Intervenors' Mem. in Supp. of Cross-Mot. for Summ. J. or

10   Partial Summ. J. (Dec. 17, 2010) (ECF No. 138-1) ("Defs. Cross-Motion").

11   Defendants seek summary judgment on all of Plaintiffs' Commerce Clause and preemption

12   claims by largely recycling the same arguments that were presented to this Court in connection with

13   Defendants' Motion to Dismiss.  *See Rocky Mountain Farmers Union* v. *Goldstene*, 719 F. Supp. 2d

14   1170 (E.D. Cal. 2010) ("*RMFU*").  This Court's prior decision rejects virtually all of Defendants'

15   arguments here, including their principal contention that the Clean Air Act ("CAA") § 211(c)(4)(B),

16   42 U.S.C. § 7545(c)(4)(B), immunizes California's Low Carbon Fuel Standard ("LCFS") from

17   scrutiny under the Commerce Clause and exempts the LCFS from federal preemption.

18   Defendants do not even cite this Court's prior decision.  That omission is baffling because, in

19   denying their Motion to Dismiss, this Court held that Defendants' legal arguments disregarded Ninth

20   Circuit precedent demonstrating that Section 211(c)(4)(B) of the Clean Air Act neither immunized

21   the LCFS from review under the Commerce Clause nor exempted the LCFS from preemption under

22   federal law.  *RMFU*, 719 F. Supp. 2d at 1187-89.  Further, Defendants offer no new explanation how

23   their legal arguments can be reconciled with the Ninth Circuit's controlling holding that "the sole

24   purpose of § 7545(c)(4)(B) is to waive for California the express preemption provision found in

25   § 7545(c)(4)(A)."  *Davis* v. *EPA*, 348 F.3d 772, 786 (9th Cir. 2003).  This Court's prior ruling,

26   rooted in controlling Ninth Circuit precedent, is dispositive of virtually all of Defendants' summary

27   judgment arguments.

28   First, with respect to the Commerce Clause, this Court held in rejecting Defendants' Motion

1   to Dismiss that "a federal provision that exempts a state law from preemption under another federal

2   statute is insufficient to exempt the state law from the requirements of the Commerce Clause."

3   *RMFU*, 719 F. Supp. 2d at 1196 (citing *New England Power Co.* v. *New Hampshire*, 455 U.S. 331,

4   341 (1982)).  The Court further held that the "sole purpose" of Section 211(c)(4)(B) was an

5   exemption from preemption under Section 211(c)(4)(A).  *Id.*  That decision is binding in this case,

6   and forecloses Defendants' argument that Section 211(c)(4)(B) authorizes Defendants to violate the

7   Commerce Clause.  *Id.* ("[D]efendant likewise may not rely upon Section 211(c)(4)(B) to violate the

8   requirements imposed by the Commerce Clause").

9          Second, this Court's prior holding, which followed *Oxygenated Fuels Ass'n, Inc.* v. *Davis*,

10  331 F.3d 665 (9th Cir. 2003), also disposes of Defendants' argument that § 211(c)(4)(B) immunizes

11  the LCFS from preemption by CAA § 211(o).  Those decisions "unambiguously limit[] that

12  exemption" from preemption in Section 211(c)(4)(B) "to the preemption provision" of CAA

13  § 211(c)(4)(A), 42 U.S.C. § 7545(c)(4)(A).  *See RMFU*, 719 F. Supp. 2d. at 1190.[1]  Defendants'

14  only new argument—that a facial claim of preemption cannot succeed because the LCFS regulates

15  fuels that federal law purports not to touch—is contrary to Ninth Circuit precedent that rejects the

16  very analysis advanced by Defendants.  *See Engine Mfrs. Ass'n* v. *S. Coast Air Quality Mgmt. Dist.*,

17  498 F.3d 1031, 1049 (9th Cir. 2007).

18         Third, an alternative and independent ground for rejecting Defendants' arguments is that the

19  LCFS does not "fit within" Section 211(c)(4)(B).  *RMFU*, 719 F. Supp. 2d at 1190.  This Court

20  previously ruled that Plaintiffs' allegations supported the conclusion the LCFS did not "fit within"

21  Section 211(c)(4)(B) because "the lifecycle analysis of the LCFS does not regulate a component of a

22  fuel or fuel additive" and that the LCFS's lifecycle approach "was passed for the purpose of

23  controlling emissions generally, not for the purpose of reducing emissions from a motor vehicle

24  specifically."  *Id.* at 1192.  The same result follows here because Plaintiffs' allegations were based

25  on statements by Defendants reflected in the administrative record during the development of the

26  _____

    [1] Defendants do not contend that Plaintiffs lack evidence to support their preemption claims.  Indeed, in opposing the
27  RMFU Plaintiffs' motion for summary judgment, Defendants argue that there are material disputed facts with regard to
    Plaintiffs' preemption claim.  The RMFU Plaintiffs have presented compelling evidence, drawn from the administrative
28  record prepared by Defendants that, at the very minimum, precludes the grant of summary judgment to Defendants.

1  LCFS, *id.* at 1191-92 (citing, for example, FSOR, 951 and ISOR, V-30), and as reflected in

2  Plaintiffs' Response to Defendants' Statement of Material Facts Not Subject to Genuine Dispute in

3  Support of Cross-Motion for Summ. J. ("Cross-Motion RSUF") (filed Mar. 14, 2011).

4         Finally, Defendants argue that the Court should grant them summary judgment on two of the

5  claims upon which Plaintiffs have sought summary judgment—the claims that the LCFS

6  discriminates against interstate commerce and regulates extraterritorially.  Plaintiffs' motions for

7  summary judgment and their reply briefs explain why summary judgment should be granted to

8  Plaintiffs on those claims.  Plaintiffs' affirmative motions foreclose Defendants' arguments here.

9         Defendants' cross motion for summary judgment should be denied.

10                                    **FACTUAL BACKGROUND**

11         Mindful of this Court's order that all briefs be "succinct and avoid unnecessary duplication,"

12  *see* Order on Briefing Page Limits (Oct. 29, 2010) (ECF No. 109), Plaintiffs will not repeat the full

13  description of the LCFS contained in their memorandum in support of their respective motions for

14  summary judgment.  *See, e.g.*, Mem. in Supp. of Mot. for Partial Summ. J. on Behalf of the NPRA

15  Pls. at 4-14 (Nov. 1, 2010) (ECF No. 126).  Plaintiffs instead provide brief summaries of the LCFS,

16  the federal Clean Air Act, and the renewable fuel provisions that the Court previously interpreted in

17  rejecting Defendants' Motion to Dismiss.

18     **A.    The LCFS.**

19         Under the LCFS, regulated parties must reduce the "average carbon intensity" of the

20  transportation fuels they sell in California each year beginning in 2011, with a 10 percent reduction

21  required by 2020.  *See* LCFS § 94582(b), (c), Tables 1-2; *see RMFU*, 719 F. Supp. 2d at 1177.  The

22  LCFS assigns carbon intensity scores for chemically-identical fuels based upon their "fuel

23  pathways."  *See* LCFS § 95486 & Lookup Table 6.  As acknowledged by Defendants, "[c]arbon

24  intensity is not an inherent chemical property of a fuel, but rather it is reflective of the process in

25  making, distributing, and using that fuel."  Cross-Motion RSUF ¶ 28 (quoting CARB, *Final*

26  *Statement of Reasons* (FSOR) 951 (Dec. 2009)).  As this Court has explained, a transportation fuel's

27  "carbon intensity" is "an estimate" of the "GHGs emitted when the transportation fuel is extracted,

28  refined and transported to California."  *RMFU*, 719 F. Supp. 2d at 1177; FSOR 507 ("the carbon

1   intensity value assigned to each fuel reflects the GHG emissions associated with that fuel's

2   production, transport, storage, and use").  Thus, the carbon intensity of a fuel pathway "'includ[es]

3   all stages of fuel and feedstock production and distribution, from feedstock generation or extraction

4   through the distribution and delivery and use of the finished fuel to the ultimate consumer.'"  LCFS

5   § 95481(a)(28); *RMFU*, 719 F. Supp. 2d at 1174-75.[2]

6      **B.      The Clean Air Act (CAA).**

7      *CAA's Fuel Emissions Regulation*.  Title II of the Clean Air Act (CAA) regulates mobile

8   sources of air pollution, including transportation fuels.  42 U.S.C. § 7521, *et seq*.  CAA Section 211

9   authorizes EPA to regulate transportation fuels and thereby control vehicle emissions and ensure a

10  national market for fuels.  42 U.S.C. § 7545.  Section 211(c) allows EPA to "control or prohibit" a

11  fuel or fuel additive if the "emission product" of the fuel "may reasonably be anticipated to endanger

12  the public health or welfare."  42 U.S.C. § 7545(c)(1).  Section 211(c)(4)(A) contains an express

13  preemption provision, which provides that when EPA prescribes a control or prohibition under

14  § 211(c)(1), then:

15      *Except as otherwise provided in subparagraph (B) or (C)*, no State may . . . prescribe
        or attempt to enforce, for purposes of motor vehicle emissions control, any control or
16      prohibition respecting any characteristic or component of a fuel or fuel additive in a
        motor vehicle or motor vehicle engine.

17

18  *Id*. § 7545(c)(4)(A) (emphasis added).  In turn, subparagraph (c)(4)(B)—the provision central to the

19  Defendants' motion—provides an exemption from this express pre-emption provision:

20      Any State for which application of section [209(a)] . . . has at any time been waived
        under section [209(b)] . . . may at any time prescribe and enforce, for the purpose of
21      motor vehicle emission control, a control or prohibition respecting any fuel or fuel

22  _____

[2] The LCFS assigns a higher carbon intensity score to corn-derived ethanol from the Midwest than it assigns to corn-
23  derived ethanol from California.  LCFS § 95486(b), Table 6.  Corn ethanol is "differentiated based on four factors; [1]
    location of the production facility (California or Midwest), [2] type of corn milling (wet or dry), [3] type of distillers
24  grains produced (wet or dry), and [4] [the] source of fuel for heat energy and co-generated electrical power (natural gas,
    coal, biomass)."  FSOR 508.  In contrast to the treatment of corn ethanol, the LCFS assigns a single average carbon
25  intensity value for most gasoline and diesel fuel, "regardless of the actual carbon intensity of producing or transporting
    the specific crude oil used, or the specific refinery operations."  FSOR 23; Reply to Defs. and Def. Intervenors' Resp. to
26  Pls.' Statement of Undisputed Facts in Supp. of Mot. For Partial Summ. J. by the NPRA Pls. (RSUF) (filed Mar. 14,
    2011) ¶ 13.  This approach disadvantages crude oils from Alaska and other countries for which Defendants have
27  determined the actual carbon intensity values of these fuels to be lower than the assigned value, RSUF ¶¶ 21-22, and
    benefits California high carbon intensity crude oil, which is assigned a carbon intensity score that is lower than the
28  carbon intensity calculated by Defendants, RSUF ¶¶ 24, 31.

additive.

*Id*. § 7545(c)(4)(B).[3]  As the Ninth Circuit held in *Davis*:  "The structure of [Section 211(c)(4)] makes it clear that the sole purpose of [Section 211(c)(4)(B)] is to waive for California the express preemption provision found in [Section 211(c)(4)(A)]."  348 F.3d at 786 (emphasis added).  In *Oxygenated Fuels*, 331 F.3d at 670, the Ninth Circuit further explained that CAA subsections 211(c)(4)(A) and 211(c)(4)(B) "are precisely coextensive," that is, Section § 211(c)(4)(B) exempts California fuel specifications from express preemption under Section § 211(c)(4)(A).

    *Federal Renewable Fuels Program.*  CAA Section 211(o) establishes a "Renewable fuel program."  Section § 211(o)(2) requires "that transportation fuel sold or introduced into commerce in the United States . . . on an annual average basis, contains at least the applicable volume of renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel" mandated by the Energy Independence and Security Act of 2007 (EISA).  EISA § 202(a)(1), 42 U.S.C. § 7545(o)(2).  The categories of advanced biofuel, cellulosic biofuel, and biomass-based diesel are defined in terms of their "lifecycle greenhouse gas emissions, as determined by the Administrator" of the EPA.  42 U.S.C. § 7545(o)(1)(B).  Section 211(o) expressly exempts certain existing biorefineries (that were either in production or had completed construction prior to certain specified deadlines) from the EISA's requirements for demonstrating reduced GHG lifecycle emissions.  42 U.S.C. § 7545(o)(2)(A)(i).

    **C.**    **This Court's Order Denying Defendants' Motion to Dismiss.**

    Plaintiffs' Complaints allege that the LCFS discriminates against interstate commerce, regulates transactions occurring outside of the state, and imposes substantial burdens on interstate commerce that clearly exceed any putative local benefits.  NPRA Pls. Compl. (Feb. 2, 2010) (Case No. 1:10-CV-00163, ECF No. 1); RMFU Pltfs. 2d Am. Compl. (Jan. 28, 2010) (ECF No. 11).  The Complaints also allege that the LCFS is preempted by federal law because it conflicts with and stands as an obstacle to the accomplishment of Congress' goals in CAA Section 211(o).  *Id.*

---

[3] Clean Air Act § 211(c)(4) is codified at 42 U.S.C. § 7545(c)(4).  For clarity, Plaintiffs will refer to this provision as Section § 211(c)(4).

1   Defendants moved to dismiss these Complaints, arguing, *inter alia*, that Section 211(c)(4)(B)

2   immunizes them from (1) scrutiny under the Commerce Clause, and (2) preemption by Section

3   211(o).  Defs.' Mem. of Points and Authorities in Supp. of Mot. to Dismiss (Mar. 31, 2010) (Case

4   No. 1:10-CV-0163) (ECF No. 25-1).  This Court rejected these two arguments as a matter of law.

5        Regarding the Commerce Clause, this Court followed the Ninth Circuit's holding that "the

6   sole purpose of [Section 211(c)(4)(B)] is to waive for California the express preemption provision

7   found in [Section 211(c)(4)(A)]," *RMFU*, 719 F. Supp. 2d at 1190 (quoting *Davis*, 348 F.3d at 786),

8   and rejected Defendants' arguments that it should depart from that holding, *id.* at 1190-91.  The

9   Court then explained that, under the decisions of the Supreme Court, "a federal provision that

10  exempts a state law from preemption under another federal statute is insufficient to exempt the state

11  law from the requirements of the Commerce Clause."  *Id*. at 1196.  Consequently, this Court held

12  that Defendants "may not rely upon Section 211(c)(4)(B) to violate the requirements imposed by the

13  Commerce Clause."  *Id*.

14       Applying the same reasoning to the preemption claims, this Court noted that "California is

15  not, by virtue of Section 211(c)(4)(B), 'authorized to negate the requirements imposed by

16  Congress'" in provisions other than Section 211(c)(4)(A), because the "'sole purpose'" of Section

17  211(c)(4)(B) is to waive the express preemption provision of 211(c)(4)(A).  *Id*. at 1196 (quoting

18  *Davis*, 348 F.3d at 786).  Thus, "although California is exempt from the preemption of Section

19  211(c), that exemption [from] preemption does not allow California to disregard the RFS2 as set

20  forth in Section 211(o)."  *Id*. at 1191.

21       Defendants also moved to dismiss on the merits of the preemption claim.  *Id*. at 1193-94.  On

22  this claim, the Court noted that Defendants' motion did not dispute "that one of EISA's goals is to

23  protect the United States corn ethanol industry" or "that the effects of the LCFS would stand as an

24  obstacle to that goal."  *Id*. at 1194-95.  This Court thus held that "[a]ccepting plaintiffs allegations as

25  true," Plaintiffs had stated a claim "that implementation of California's LCFS would frustrate the []

26  full effectiveness of federal law."  *Id*. at 1195 (internal quotation omitted).

27                              **LEGAL STANDARDS**

28       Under Federal Rule of Civil Procedure 56(c) and Local Rule 260, summary judgment is

6

appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Local Rule 260(a); *see Brodheim* v. *Cry*, 584 F.3d 1262, 1267 (9th Cir. 2009).  Defendants here bear the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).  This Court views the evidence in the light most favorable to Plaintiffs and determines whether there are genuine disputes as to issues of material fact.  "A disputed fact is material only if it can affect the outcome of the suit under governing law." *United States* v. *Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009).  If Defendants satisfy their burden, Plaintiffs then bear the burden of setting "forth specific facts showing that there is a genuine issue for trial." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). "A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Moreland* v. *Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (internal quotation omitted).

## ARGUMENT

**I.     SECTION 211(C)(4)(B) OF THE CLEAN AIR ACT DOES NOT IMMUNIZE THE LCFS FROM SCRUTINY UNDER THE COMMERCE CLAUSE.**

Defendants seek summary judgment on Plaintiffs' Commerce Clause claims, arguing that CAA § 211(c)(4)(B) authorizes them to violate the Commerce Clause through a regulation that discriminates against products from other States, attempts to regulate commerce in other States, and imposes burdens on interstate commerce that clearly outweigh any local benefit.  Defs.' Cross-Motion 26-28.  This Court has considered this same argument once before, so there can be no dispute about the controlling legal standard:

> "[F]or a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be unmistakably clear." *South-Central Timber Dev., Inc.* v. *Wunnicke*, 467 U.S. 82, 91 (1984).  As a result, to authorize a Commerce Clause violation, Congress must do more than simply authorize a State to regulate in an area, it must "affirmatively contemplate otherwise invalid state legislation," *id.*, and clearly express its intent to "remove federal Constitutional constraints." *Sporhase* v. *Nebraska ex rel. Douglas*, 458 U.S. 941, 960 (1982).  Defendants bear the burden of "demonstrating [this] clear and unambiguous intent." *Wyoming* v. *Oklahoma*, 502 U.S. 437, 458 (1992).

*RMFU*, 719 F. Supp. 2d at 1195.  Applying these standards, this Court has explained that Defendants must show that "Congress expressly, unmistakably, and unambiguously authorized California to

7

1    violate the Commerce Clause in each of" the ways alleged in the Complaints.  *Id*.[4]

2          As this Court already has held, controlling precedent forecloses Defendants' argument.  *Id*. at

3    1196.  Applying the Supreme Court's decisions in *Lewis, New England Power*, and *Wyoming*,[5] the

4    Court has held that the LCFS is not exempt from scrutiny under the Commerce Clause because, as

5    the Ninth Circuit has already held, the "<u>sole purpose</u> of [211(c)(4)(B)] is to waive for California the

6    express preemption provision found in [211(c)(4)(A)]."  *Davis*, 348 F.3d at 786 (emphasis added).

7    Further, the Court has held that, for the same reasons, "the savings clauses of the Clean Air Act and

8    the EISA do not authorize defendants to violate the Commerce Clause."  *Id*.[6]  Indeed, under

9    Defendants' theory, Congress would have given California a blank check to regulate "almost every

10   aspect of human activity," anywhere in the world, without any restraint under the Commerce Clause,

11   simply because such activity results in carbon emissions somewhere on Earth.  *See* Defs.' Cross-

12   Motion 8.

13         Defendants say nothing about this Court's prior ruling even though its legal analysis applies

14   equally to both their Motion to Dismiss and their Motion for Summary Judgment.  Defendants argue

---

16   [4] The requirement for explicit authorization is even more stringent in cases such as this one, where one of the State's
     explicit goals is to affect commerce with foreign nations.  Defs.' Cross-Motion 1, 6, 32 (purpose of the LCFS is to

17   "reduce our dependence on foreign oil").  When a state regulation has "ramifications beyond the Nation's borders.  The
     need for a consistent and coherent foreign policy, which is the exclusive responsibility of the Federal Government,

18   enhances the necessity that congressional authorization not be lightly implied."  *South Central Timber Dev.* v. *Wunnicke*,
     467 U.S. 82, 92 n.7 (1984).

19   [5] *See Lewis* v. *BT Inv. Managers, Inc.*, 447 U.S. 27, 48-49 (1980) (holding that a provision reserving "to the States a
     general power to enact regulations applicable to bank holding companies" did not create "a new state power to

20   discriminate between foreign and local bank holding companies" but instead applied "only to state legislation that
     operates within the boundaries marked by the Commerce Clause"); *New England Power Co.* v. *New Hampshire*, 455

21   U.S. 331, 341 (1982) (holding that a provision which authorized State regulation in a specific area otherwise expressly
     preempted by the Federal Power Act did not exempt the state law from the requirements of the Commerce Clause);

22   *Wyoming* v. *Oklahoma*, 502 U.S. 437, 458 (1992) (holding that a provision that "simply saves" a state law "from pre-
     emption" does not satisfy "[the] burden of demonstrating a clear and unambiguous intent on behalf of Congress to permit

23   the discrimination against interstate commerce" because "Congress must manifest its unambiguous intent before a
     federal statute will be read to permit or to approve such a violation of the Commerce Clause").

24   [6] The Ninth Circuit's holding in *Davis* is dictated by the statute's text.  By its terms, Section 211(c)(4)(A) provides:
     "*Except as otherwise provided in sub-paragraph (B)* . . . no State . . . may prescribe or attempt to enforce . . . any control

25   or prohibition respecting any characteristic or component of a fuel or a fuel additive."  42 U.S.C. § 7545(c)(4)(A)
     (emphasis added).  Given this structure and explicit cross-reference, the Ninth Circuit in *Oxygenated Fuels Ass'n Inc.* v.

26   *Davis* explained that "the two provisions are precisely coextensive."  331 F.3d 665, 670 (9th Cir. 2003).  Thereafter,
     *Davis* held that the "structure" of § 211(c)(4) compelled the conclusion that "the sole purpose of [Section 211(c)(4)(B)]

27   is to waive for California the express preemption provision found in [Section 211(c)(4)(A)]."  *Davis*, 348 F.3d at 786;
     *see Christensen* v. *Comm'r*, 523 F.3d 957, 960 (9th Cir. 2008) ("[W]e look to the language of the statutory scheme as a

28   whole to interpret the particular statutory provision").

---

1   that *Davis's* interpretation of CAA § 211(c)(4) is not "relevant" to this case, Defs.' Cross-Motion 28,

2   because *Davis* does not "mention the Commerce Clause," *id.* at 27.  That is the same argument that

3   Defendants previously advanced, and that this Court squarely rejected.  Def. and Defs.-Intervenors'

4   Consolidated Reply Br. in Supp. of Mot. to Dismiss 20 (ECF No. 77) ("The *Davis* case, however,

5   does not even once mention the Commerce Clause."); *RMFU*, 719 F. Supp. 2d at 1196 (applying

6   *Davis* to reject Defendants' motion to dismiss plaintiffs' claims under the Commerce Clause).

7          Defendants repeat their argument that "[t]here is only one prior case that considers the

8   precise question presented here as to the interplay between Section 211(c)(4)(B) and the Commerce

9   Clause," Defs.' Cross-Motion at 27, and they cite *Oxygenated Fuels Ass'n* v. *Davis*, 163 F. Supp. 2d

10  1182, 1184-85 (E.D. Cal. 2001), in which the district court stated that "[b]ecause Congress has

11  specifically authorized California to enact prohibitions and controls respecting fuels and fuel

12  additives under [§ 211(c)(4)(A)], the State's MTBE ban is not prohibited by the Commerce Clause."

13  163 F. Supp. 2d at 1188.  That district court decision—which pre-dates the Ninth Circuit's ruling in

14  *Davis* by three years—is premised on the conclusion that § 211(c)(4)(B) provides an "unrestricted

15  grant of authority to California." *Id*.  That ruling cannot be reconciled with the Ninth Circuit's

16  subsequent determination that § 211(c)(4)(B)'s "*sole purpose* . . . is to waive for California the

17  express preemption provision found in [§ 211(c)(4)(A)]." *Davis*, 348 F.3d at 786 (emphasis added);

18  *Oxygenated Fuels*, 331 F.3d at 670 ("[t]he two provisions are precisely coextensive").  As a result,

19  the district court's ruling in *Oxygenated Fuels* is based upon a conclusion—that § 211(c)(4)(B)

20  provides California broad affirmative authority to violate otherwise controlling federal law beyond

21  § 211(c)(4)(A)—subsequently rejected by the Ninth Circuit.  *Cf. In re Rosson*, 545 F.3d 764, 772 n.9

22  (9th Cir. 2008) (court not bound by prior ruling "where subsequent . . . case law is 'clearly

23  irreconcilable' with original [court's] holding"); *Miller* v. *Gammie*, 335 F.3d 889, 900 (9th Cir.

24  2003) (en banc) (same).[7]

25  _____

26  [7] Indeed, the District Court's conclusion that Section 211(c)(4)(B) provided congressional authorization that exempted California's MTBE ban from challenge under the Commerce Clause is contrary to the analysis of the Ninth Circuit in the

27  *Oxygenated Fuels* appeal.  Although the Commerce Clause claim was not at issue in that appeal, the Ninth Circuit rejected the premise of the district court's decision, holding that the MTBE ban "[did] not come within the (c)(4)(B)

28  exemption from preemption." *Oxygenated Fuels*, 331 F.3d at 669.  As a result, Section 211(c)(4)(B) was not

*(Footnote continued)*

Finally, Defendants suggest that Plaintiffs' reliance on the Ninth Circuit's interpretation of § 211(c)(4)(B) is improper, arguing that Plaintiffs have "inflated it into 'binding precedent.'"  Defs.' Cross Motion 27.  This too is an argument that the Court previously has considered and rejected.  In response to Defendants' argument that the ruling in *Davis* is "'almost in the category of dicta,'" this Court explained that "the formal term for 'almost dicta' is the holding of the Ninth Circuit on a controlling issue of law."  719 F. Supp. 2d at 1191; *see Day* v. *Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (holding that rulings of the Ninth Circuit are binding on district court in the Ninth Circuit).  As this Court already has held, Section 211(c)(4)(B) does not exempt the LCFS from scrutiny under the Commerce Clause.[8]

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED WITH RESPECT TO PLAINTIFFS' PREEMPTION CLAIMS.

Defendants' arguments as to plaintiffs' federal preemption claims also should be rejected, largely for the reasons set forth by the Court in denying Defendants' Motion to Dismiss.[9]

The governing standards are well established.  The Supremacy Clause, U.S. Const. art. VI, cl. 2, "invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cnty*. v. *Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (internal quotation omitted).  "[T]he purpose of Congress is the ultimate touchstone" in determining whether a federal statute has preemptive effect.  *Medtronic, Inc*. v. *Lohr*, 518 U.S. 470, 485-86 (1996).  Preemption of a state regulation "can be either express or implied."  *Chicanos Por La Causa, Inc.* v. *Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009).  As to implied preemption, state law is preempted to the extent of an actual conflict with federal law.  *Geier* v. *Am. Honda Motor Co*., 529 U.S. 861 (2000).  Conflict preemption exists either when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142-43 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

---

authorization for the MTBE ban, and it therefore could not have been authorization for an exemption from the Commerce Clause.

[8] Defendants' argument regarding the Commerce Clause also should be rejected because the LCFS was not adopted under Section 211(c)(4)(B), as set forth in Part III, below.

[9] The RMFU Plaintiffs have moved for summary judgment on this ground.  The arguments and evidence set forth in RMFU Plaintiffs' motion for summary judgment confirm, at the very minimum, that summary judgment should not be granted to Defendants on the federal preemption claim.

10

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

1    *RMFU*, 719 F. Supp. 2d at 1193 (quoting *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941)).

2           As Plaintiffs demonstrated previously, the LCFS conflicts with and is preempted by Section

3    211(o) of the Clean Air Act.  As the Court has recognized, Plaintiffs contend "that California's

4    LCFS is preempted to the extent that it conflicts with Section 211(o), as adopted by EISA in 2007."

5    *Id*. at 1187.  The broad purposes of the EISA are to "reduce the dependence of the United States on

6    energy imported from volatile regions of the world" and "stabilize the cost and availability of

7    energy."  EISA § 806(a)(4); *see RMFU*, 719 F. Supp. 2d at 1194.  To achieve these goals, the EISA

8    expressly exempts certain existing ethanol biorefineries (that were either in production or had

9    completed construction by a specified date) from the EISA's requirements for reduced lifecycle

10   GHG emissions.  42 U.S.C. § 7545(o)(2)(A)(i).  Section 211(o) also provides that EPA's regulations

11   may not "restrict geographic areas in which renewable fuel may be used."  42 U.S.C.

12   §§ 7545(o)(2)(A)(i), (o)(2)(A)(iii)(II)(aa); *see RMFU*, 719 F. Supp. 2d at 1194.  Finally, while

13   setting targets for new "advanced" and "cellulosic" biofuel, the EISA also retains ambitious targets

14   for existing renewable biofuel; the implicit targets for this traditional biofuel increase from 10.5

15   billion gallons in 2009 to 15 billion gallons in 2015.  42 U.S.C. § 7545(o)(2)(B).  These provisions

16   reflect a congressional purpose to ensure a continued nationwide market for ethanol from existing

17   biorefineries, which Congress has deemed necessary to "stabilize the cost and availability of

18   energy."  EISA § 806(a)(4).

19          The record evidence showing that the LCFS conflicts with Section 211(o) is set forth in

20   detail in the motion for summary judgment filed by the *RMFU* Plaintiffs, and will not be repeated

21   here.  Indeed, Defendants do not contend that the record evidence, applied to the legal standards

22   outlined above, would support summary judgment in their favor.  *See* Defs.' Mem. of Points and

23   Authorities in Opp. to RMFU's Mot. for Summ. J. at 2 (Dec. 17, 2010) (ECF No. 139) ("[P]laintiffs'

24   conflict preemption argument is based on disputed facts and speculation about the effects of the

25   LCFS on Midwest ethanol producers and therefore is not appropriate for summary judgment").

26          Defendants instead argue that a different set of legal principles should apply and those

27   principles foreclose Plaintiffs' federal preemption claims.  Specifically, they argue that summary

28   judgment should be granted based on three legal arguments:  (1) the savings clause of the EISA

exempts the LCFS from conflict preemption, Defs.' Cross-Motion 19-23; (2) Plaintiffs' claims "do not involve preemption at all" but a conflict between two provisions of federal law, *id.* at 25-26; and (3) portions of the LCFS can survive a facial preemption claim, *id.* at 23-25. The first two grounds already have been considered and rejected by the Court. The final argument appears new, but, as shown below, it too is meritless.

### A.    The EISA's Savings Clause Does Not Preclude Plaintiffs' Preemption Claim.

Defendants first argue that the EISA's savings clause exempts the LCFS from preemption by Clean Air Act § 211(o). Defs.' Cross-Motion 19-23. In connection with their motion to dismiss, Defendants argued that "Section 211(o) of the Clean Air Act, under EISA, cannot preempt California's LCFS regulation because 'conflict preemption principles do not apply' where a statute has express preemption provisions and savings clauses." *RMFU*, 719 F. Supp. at 1187. This Court rejected that argument, holding that Defendants' argument "is without merit, and is a misrepresentation of well-settled law." *Id.* at 1188. This Court explained that the Supreme Court "has clarified that ordinary conflict preemption principles do apply despite other express preemption provisions or savings clauses." *Id.* (citing *Sprietsma* v. *Mercury Marine*, 537 U.S. 51, 65 (2002)); *see also Geier*, 529 U.S. at 869 (holding that a savings clause does not "bar the ordinary working of conflict pre-emption principles"); *Chicanos Por la Causa*, 558 F.3d at 866 ("state laws that fall within a savings clause and are therefore not expressly preempted are still subject to the 'ordinary working of conflict pre-emption principles.'").[10]

Further, the EISA savings clause cited by Defendants is inapplicable to the LCFS because it only purports not to preempt a "more environmentally protective requirement." EISA § 204(b). Citing Defendants' own statements, Plaintiffs have demonstrated that the LCFS likely will lead to an overall increase in GHG emissions because it will mean redirecting fuels and feedstocks destined for

---

[10] Defendants once again argue that "the strong congressional intent regarding California's fuels' authority in Section 211(c)(4)(B) is, in the words of the Supreme Court, 'reliable indicium' of congressional intent not to preempt." Defs.' Cross-Motion 26 n.16 (citing *Freightliner Corp.* v. *Myrick*, 514 U.S. 280, 288-89 (1995)). As this Court explained previously, "[t]his passage from *Freightliner* is a quotation from *Cipollone* v. *Liggett Grp., Inc.*, 505 U.S. 504 (1992), used in Freightliner to explain where the source of the *mistaken* impression that an express preemption provision foreclosed conflict preemption principles." *RMFU*, 719 F. Supp. 2d at 1188 (emphasis in original). Further, this Court previously explained that "the *Freightliner* court rejected defendants' argument advanced here as 'without merit.'" *Id.*

1    California to other states through less efficient and redundant supply lines.  RSUF ¶¶ 14-15.  CARB

2    also has *admitted* that the LCFS will not benefit the environment:  "fuel producers are free to ship

3    lower-carbon-intensity fuels to areas with such standards, while shipping higher-carbon-intensity

4    fuels elsewhere."  CARB, *California's Low Carbon Fuel Standard: An Update on the California Air

5    Resources Board's Low Carbon Fuel Standard Program* (October 2009) at 1.  Defendants also have

6    admitted that "[t]he end result of this fuel 'shuffling' process is little or no net change in fuel carbon-

7    intensity on a global scale."  *Id*.  Indeed, as Defendants have acknowledged, "fuel shuffling" could

8    lead to an overall increase in GHG emissions.  FSOR at 234-35.  This evidence confirms that

9    Defendants cannot defeat preemption through reliance on a provision only applying to a "more

10   environmentally protective requirement."  EISA § 204(b).

11   **B.    CAA § 211(c)(4)(B) Does Not Exempt the LCFS From Preemption.**

12   Second, Defendants argue that "plaintiffs' preemption claims fail because they do not

13   involve preemption at all."  Defs.' Cross-Motion 25.  That is, according to Defendants, "plaintiffs'

14   claims actually involve two provisions within section 211:  section 211(c)(4)(B) and section 211(o)."

15   *Id*.  This argument is not new.  As this Court explained last June, "defendants argue that because this

16   action involves an alleged conflict between two federal statutes or statutory provisions, the

17   Supremacy Clause is not implicated."  *RMFU*, 719 F. Supp. 2d at 1187.  The Court rejected that

18   argument, ruling that Defendants' argument "erroneously implies that plaintiffs challenge Section

19   211(c)(4)(B)."  *Id*. at 1188.  As this Court explained, Plaintiffs do not argue that Section 211(o)

20   preempts Section 211(c)(4)(B); they assert that Section 211(o) preempts California's LCFS.  *Id*. at

21   1187-88.

22   Defendants now repeat that very same argument here, asserting that the LCFS is not

23   preempted because it "is an authorized exercise of California's authority to control fuels under

24   section 211(c)(4)(B) of the Clean Air Act."  Defs.' Cross-Motion 23.  This argument fails because

25   this Court already has held that § 211(c)(4)(B) is not an affirmative grant of authority.[11]  The Court's

---

[11] As set forth below in Part III, Defendants' arguments also fail because the LCFS was not adopted under Section 211(c)(4)(B).  That showing provides an alternative and independent basis for rejecting Defendants' arguments seeking summary judgment on Plaintiffs' Commerce Clause and federal preemption claims.

prior ruling is crystal clear:

> [D]efendants' argument relies on its position that Section 211(c)(4)(B) grants California "broad authority" and "substantial latitude" to prescribe any control respecting any fuel so long as it targets motor vehicle emissions.  As described more fully below, however, "the sole purpose of [Section 211](c)(4)(B) is to waive for California the express preemption provision found in [Section 211](c)(4)(A)."  *Davis*, 348 F.3d at 786.  This Court agrees with plaintiffs that the preemption exemption of Section 211(c)(4)(B) does not transform a California regulation into federal law for Supremacy Clause purposes and "does not bar the ordinary working of conflict pre-emption principles."  *Geier*, 529 U.S. at 869.

*RMFU*, 719 F.Supp. 2d at 1188.  Although Defendants make an effort to distinguish the Ninth Circuit's ruling in *Davis* with respect to Plaintiffs' claims *under the Commerce Clause*, Defs.' Cross-Motion 27-28, their only reference to *Davis* with regard to Plaintiffs' federal preemption claim is a bare, conclusory assertion, buried in a footnote, that their argument "is consistent with the Ninth Circuit's decision in *Davis*."  *Id.* at 12 n.4.[12]  Defendants nowhere make any effort to reconcile their argument with this Court's decision rejecting that same argument last year.

## C.    Defendants' Argument That Certain Sections of the LCFS Could Survive a Preemption Claim Does Not Preclude Plaintiffs' Preemption Claims.

Finally, Defendants argue that "the entire LCFS is facially constitutional if there is at least one 'set of circumstances' under which it could be valid."  Defs.' Cross-Motion 25 (citing *United States* v. *Salerno*, 481 U.S. 739, 745 (1987)).  That is, according to Defendants, if any aspect of the LCFS does not conflict with Section 211(o), then no part of the LCFS could be preempted by Section 211(o).  Defs.' Cross-Motion 23-25.  Defendants argue that Plaintiffs cannot meet their burden because Section 211(o) applies only "to renewable fuel" whereas the LCFS regulates a broader variety of fuels that "the federal law does not purport to reach."  *Id.* at 24.  This argument is contrary to controlling Ninth Circuit precedent.

In *Engine Mfrs. Ass'n* v. *South Coast Air Quality Management Dist.*, 498 F.3d 1031 (9th Cir. 2007), the Ninth Circuit reviewed a district court's decision rejecting, "*in toto*," a facial preemption challenge to the "entirety" of a "multifaceted" statute because the district court had concluded that "certain . . . provisions" of the law were not preempted.  *Id.* at 1049.  The Ninth Circuit reversed,

---

[12] In *Davis*, the Ninth Circuit held that "The structure of § [Section 211(c)(4)] makes it clear that the sole purpose of § [211(c)(4)(B)] is to waive for California the express preemption provision found in § [211(c)(4)(A)]."  348 F.3d at 786.

1   holding that "*Salerno* does not require a plaintiff to show that every provision within a particular

2   multifaceted enactment is invalid." *Id*. at 1049.  To the contrary, as the Ninth Circuit explained,

3   under *Salerno*, "some of the provisions might be facially invalid, and [some] might not." *Id*.

4   Defendants fail to address or even cite to the Ninth Circuit's decision in *Engine Mfrs*.  Under

5   that decision, it is no defense to Plaintiffs' preemption claims that provisions of the LCFS that do not

6   regulate "renewable fuel" might not conflict with Section 211(o).  Defs.' Cross-Motion 24.  That

7   was precisely the situation presented in *Engine Mfrs*., where plaintiffs argued that regulations were

8   "preempted in their entirety," but the district court concluded that "certain . . . provisions were

9   protected from preemption by the market participant doctrine."  498 F.3d at 1049.  Under *Engine

10   Mfrs*., even if a statute is alleged to be facially invalid in its "entirety," the Court still must make a

11   determination whether each "particular challenged provision" is preempted.  *Id*.

12   Defendants cannot avoid that result by arguing that some Plaintiffs have alleged that the

13   preempted portions of the LCFS are not severable from the remainder of the LCFS.  Defs.' Cross-

14   Motion 25 n.15 (asserting that Plaintiffs cannot "argue for preemption of only a subset of the LCFS

15   fuels").[13]  Under *Engine Mfrs*., the issue of severability is distinct from the determination whether a

16   certain provision is invalid under preemption principles.  498 F.3d at 1049; *see also NCAA* v. *Miller*,

17   10 F.3d 633, 640 (9th Cir. 1993).  The severability determination turns on whether Defendants

18   would have "enacted those provisions which are within its power, independently of that which is

19   not."  *See Alaska Airlines, Inc*. v. *Brock*, 480 U.S. 678, 684 (1987).  If certain specific provisions of

20   the LCFS are preempted, and those provisions cannot be severed from the balance of the LCFS, then

21   the LCFS is invalid in its entirety.  If the preempted provisions of the LCFS can be severed, then, as

22   the *Engine Mfrs*. court directed, this Court should strike down only the preempted provisions.  498

23   F.3d at 1049-50.

24   Defendants' argument that the LCFS is not preempted by Section 211(o) of the CAA should

25   be rejected as a matter of law.

26

27   _____

[13] Defendants make this point (Defs.' Cross-Motion 25 n.15) only with respect to the *RMFU* Plaintiffs.  They do not contend that this same argument—which is meritless in any event—applies to the NPRA Plaintiffs' preemption claims.

28

**III.   DEFENDANTS' ARGUMENTS ALSO SHOULD BE REJECTED BECAUSE THE LCFS WAS NOT ADOPTED UNDER SECTION 211(C)(4)(B).**

Separate and apart from the points set forth above, Defendants' arguments fail for the independent reason that "the LCFS was not adopted pursuant to Section 211(c)(4)(B)." *RMFU*, 719 F. Supp. 2d at 1196.   As this Court ruled previously, in denying Defendants' Motion to Dismiss, the LCFS does not "fit within" Section 211(c)(4)(B) because it (1) does not "regulate a component of a fuel or a fuel additive" and (2) is not "for the purpose of motor vehicle emissions control." *Id*. at 1190 (following *Oxygenated Fuels*, 331 F.3d at 670).[14]   As Defendants have repeatedly acknowledged, the LCFS is addressed to the energy used to produce and transport a fuel in interstate commerce rather than a fuel's chemical components.  *See* RSUF ¶ 60 (citing *Initial Statement of Reasons*, V-30).  The LCFS imposes "no requirements for reductions from specific fuels or categories of fuels."  Defs.' Cross-Motion 10.  As such, it is not "a control or prohibition respecting any fuel or fuel additive."  CAA § 211(c)(4)(B).  Likewise, the LCFS was not adopted for "the purpose of motor vehicle emissions control."  *Id*.  The LCFS thus has nothing to do with Section 211(c)(4)(B), and therefore that provision cannot support Defendants' motion for summary judgment.

Defendants ignore this Court's prior determination of what is required for the LCFS to "fit within the preemption exemption" of Section 211(c)(4)(B).  *RMFU*, 719 F. Supp. 2d at 1190.  They contend that "Section 211(c)(4)(A) contains a restriction, not present in section 211(c)(4)(B), limiting the scope of preemption under (A) to 'characteristic or component of a fuel or fuel additive.'"  Defs.' Cross-Motion 12 n.5.  As this Court has previously held, that argument is "unsupported and unsupportable" because it ignores the Ninth Circuit's controlling ruling that Sections 211(c)(4)(A) and 211(c)(4)(B) "are precisely coextensive."  *RMFU*, 719 F. Supp. 2d at

---

[14] Plaintiffs acknowledge that the Court's prior ruling on this point was made in the course of a motion to dismiss such that "any dispute on this issue must be resolved in favor of plaintiffs."  *RMFU*, 719 F. Supp. 2d at 1196.  In ruling on Defendants' summary judgment motion, the Court likewise must resolve any material disputes in favor of Plaintiffs. *E.g.*, *In re Barboza*, 545 F.3d at 707.  Further, in rejecting the same argument advanced by Defendants previously, this Court did not rest merely on allegations in Plaintiffs' Complaints, but instead ruled that Defendants' "argument is refuted by the statements defendants made when developing and adopting the LCFS."  *RMFU*, 719 F. Supp. 2d  at 1196;  *see also id.* at 1191-92 (highlighting Defendants' statements from the FSOR and ISOR).  Plaintiffs continue to rely on these statements from the regulatory record.

1190 (citing *Oxygenated Fuels*, 331 F.3d at 670).  Under the standard set by this Court, the LCFS does not "fit within" Section 211(c)(4)(B).

*First*, Defendants cannot show that the LCFS is "a control or prohibition respecting any characteristic or component of a fuel or fuel additive."  42 U.S.C. § 7545(c)(4)(A).  To the contrary, Defendants have admitted that "'the LCFS regulation . . . does not amend, repeal, modify, or change in any way the existing State specifications or other State or federal requirements on motor vehicle fuels.'"  Cross-Motion RSUF ¶ 28 (quoting FSOR 950).  Indeed, as Defendants have elaborated, "New and existing fuels that comply with the LCFS regulation will be essentially indistinguishable from comparable fuels that comply with other State and federal regulations."  *Id*.  A regulation that does not "change in any way . . . State or federal requirements on motor vehicle fuels," *id.*, cannot be a "control or prohibition respecting any characteristic or component of a fuel or fuel additive," 42 U.S.C. § 7545(c)(4)(A).  Indeed, Defendants have admitted as much when they stated that the LCFS regulates "the production process for the fuel" rather than "a vehicular fuel's permissible composition."  CARB, *Initial Statement of Reasons* (ISOR) V-28 (Mar. 2009).

Defendants' statements from the administrative record are dispositive because the Court already has rejected Defendants' legal argument that Section 211(c)(4)(B) "is not limited to components of a fuel or fuel additives."  719 F. Supp. 2d at 1192.  As the Court explained last year, the LCFS "does not regulate a component of a fuel [or] a fuel additive" but instead "regulates how fuels that have identical chemical compositions are made."  *Id*.  Although that ruling was based on Plaintiffs' well-pleaded allegations, the Court's decision acknowledged that those allegations were rooted in the statements by Defendants describing the LCFS in the administrative record—the same statements now before the Court.  *See id.* at 1191-92 (citing Defendants' statements from FSOR and ISOR).

*Second*, as this Court previously held, "Section 211(c)(4)(B) is inapplicable for the additional reason that the regulation was not passed for the purpose of motor vehicle emissions control."  *RMFU*, 719 F. Supp. 2d at 1192.  That ruling likewise was based on evidence drawn from Defendant's own statements.  Specifically, Defendants have repeatedly explained that the LCFS distinguishes between chemically identical fuels, with necessarily *identical* motor vehicle emissions,

17

1   based upon California's estimates of GHGs attributable to the production of the fuel and the

2   transportation of the fuel in interstate commerce.  Thus "[n]ew and existing fuels that comply with

3   the LCFS regulation will be essentially indistinguishable from comparable fuels that comply with

4   other State and federal regulations."  FSOR 950; ISOR V-28-V-30.  Chemically identical fuels will

5   necessarily have identical motor vehicle emissions.  *RMFU*, 719 F. Supp. 2d at 1192 ("Plaintiffs

6   point out that although the chemical properties of ethanol are identical, which would mean that the

7   motor vehicle emissions of any fuel containing ethanol would be the same, the LCFS assigns various

8   carbon intensity rates and caps to ethanol.").  Thus, the LCFS "was not passed for the purpose of

9   motor vehicle emissions control."  *Id.*[15]

10          Defendants argue that "emissions from combustion constitute approximately 75 percent of

11   the overall lifecycle emissions associated with gasoline."  Defs.' Cross-Motion 15.  But the LCFS

12   does not distinguish among types of gasoline based on these emissions; instead it lumps all types

13   into one category labeled "CARBOB."  LCFS § 95486(b), Table 6.  Indeed, the LCFS primarily

14   distinguishes among fuels based precisely on things *other* than motor vehicle emissions—as noted,

15   exactly the same quantity of carbon dioxide is emitted by combustion of each ethanol type listed in

16   the regulation.  *Id.*  In truth, Defendants, through the LCFS, seek to "capture carbon emissions from

17   every aspect of the fuel lifecycle, from extraction or growth of the feedstock, through production,

18   transportation and ultimately, use."  Defs.' Cross-Motion 15.  These statements confirm that the

19   LCFS "was not passed for the purpose of motor vehicle emissions control."  *RMFU*, 719 F. Supp. 2d

20   at 1192.[16]

---

21   [15] The legislative history of the Clean Air Act confirms that Section 211(c)(4)(B) is focused on emissions from
22   combustion of fuel within a motor vehicle.  During the Senate debates on the 1970 Amendments to the Clean Air Act,
     Senator Baker stated: "I simply reemphasize for the record . . . . the fuel is proposed to be regulated, not because of what
23   is in it or how it is made up according to what formula or process, but because of emissions into the atmosphere
     following the combustion of the fuel."  *S. Comm. On Public Works, 93d Cong.*, 1 Legislative History of the Clean Air
     Amendments of 1970, at 268 (Comm. Print 1974).  Similarly, the Senate Report on § 211(c) states "the Committee's
24   concern is with the effect of the actual emissions from the tailpipe," elaborating that "combustion of the fuel in its
     intended environment—inside an engine with proper emission controls would be the proper criterion for the Secretary to
25   use in judging the health and welfare effects of that fuel."  *Id.* at 434.
     [16] Defendants assert that, as a policy matter, they have been driven to this expansive approach by "the very nature of
26   carbon and carbon emissions," Defs.' Cross Motion 16, because unlike other materials "that can be captured at the
     tailpipe . . . [t]here is no way to capture carbon emissions from every aspect of the fuel lifecycle, from extraction or
27   growth of the feedstock, through production, transportation and ultimately, use," *id.*  The premise of this argument is
     incorrect—carbon is no different from any other material emitted during feedstock growth, production, and transport of a
28   *(Footnote continued)*

**IV.   THE LCFS VIOLATES THE COMMERCE CLAUSE BY IMPERMISSIBLY DISCRIMINATING AGAINST INTERSTATE AND FOREIGN COMMERCE AND REGULATING COMMERCE IN OTHER STATES.**

Defendants cross-move for summary judgment on two of the claims upon which the NPRA Plaintiffs and *RMFU* Plaintiffs have moved for summary judgment—the LCFS's discrimination against interstate commerce, and its direct regulation of interstate and foreign commerce outside California. Defs.' Mem. 28-34. Mindful of this Court's instruction to "avoid unnecessary duplication," Order on Briefing Page Limits (Oct. 29, 2010) (ECF No. 109), Plaintiffs submit that Defendants' arguments are addressed in full in the filings by Plaintiffs in support of their respective motions for summary judgment.[17] These filings confirm that the LCFS discriminates against sources of transportation fuel and transportation feedstocks from outside California, that this discrimination cannot satisfy strict scrutiny, and that the LCFS impermissibly regulates interstate and foreign commerce by imposing a burden on transportation fuels based on the manner in which they were produced and transported outside of California. *See*, *e.g.*, NPRA Pls.' Mem. in Supp. of Partial Summ. J. (Nov. 1, 2010) (ECF No. 126); NPRA Pls.' Reply in Supp. of their Mot. for Partial Summ. Judgment (filed Mar. 14, 2011); *RMFU* Pls.' Mem. in Supp. of Summ. J. (Nov. 1, 2010); *RMFU* Pls.' Reply in Supp.of their Mot. for Summ. J. (filed Mar. 14, 2011).

Because Plaintiffs are entitled to summary judgment on these issues, Defendants' contrary motion necessarily should be denied.[18]

## CONCLUSION

For these reasons, Plaintiffs respectfully submit that Defendants' cross-motion for summary

---

fuel. None of the emissions of these other materials is captured in tailpipe controls. Nevertheless, 211(c)(4)(B) only covers controls of vehicle emissions. *See supra* n.15.

[17] With respect to the merits of these Commerce Clause claims, as distinct from the authorization arguments, Defendants' motion for summary judgment does not raise any arguments that are not already presented in the briefing on Plaintiffs' own motions for summary judgment. Plaintiffs stand on the arguments made in that briefing and respectfully request that Defendants' reply be limited to the remaining arguments for which Plaintiffs file a response here.

[18] In all events, Defendants cannot show the "the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs have presented extensive evidence, drawn from Defendants' own statements that compels judgment in their favor and is sufficient "such that a reasonable jury could return a verdict" for the Plaintiffs, *Moreland* v. *Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). *See, e.g.*, Reply to Defs. and Def. Intervenors' Resp. to Pls.' Statement of Undisputed Facts in Supp. of Mot. For Partial Summ. J. by the NPRA Pls. (RSUF) (filed Mar. 14, 2011); Reply in Support of Statement of Undisputed Facts in Supp.of Mot. for Summ. J. by *RMFU* Pls. (filed Mar. 14, 2011).

19

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB

1   judgment should be rejected.

2

3   DATED:  March 14, 2011                SIDLEY AUSTIN LLP

4

5                                          By:  /s/ Roger R. Martella, Jr.
                                           Roger R. Martella, Jr.
                                           *Counsel for Plaintiffs*

6

7   Roger R. Martella, Jr. (DC Bar No. 976771)    Timothy Jones #119841
    Paul J. Zidlicky (DC Bar No. 450196)          John P. Kinsey #215916
    James W. Coleman (DC Bar No. 986626)          JONES HELSLEY PC

8   *Pro Hac Vice*                                8365 North Fresno Street, Suite 310
    SIDLEY AUSTIN LLP                             PO Box 28340

9   1501 K Street, N.W.                           Fresno, CA  93729
    Washington, D.C.  20005                       *Attorneys for all RMFU plaintiffs*

10  Telephone:  202-736-8000
    Facsimile:  202-736-8711                      Stuart A. C. Drake

11  rmartella@sidley.com                          John C. O'Quinn
    pzidlicky@sidley.com                          (*Admitted Pro hac vice*)

12  jcoleman@sidley.com                           KIRKLAND & ELLIS LLP
    *Counsel for Plaintiffs*                      655 Fifteenth Street, NW

13                                                Washington, DC  20005
    Kurt E. Blase (DC Bar No. 288779)             (202) 879-5000

14  Holland & Knight, LLP                         *Attorneys for plaintiff Growth Energy*
    2099 Pennsylvania Avenue, NW

15  Suite 100                                     Charles H. Knauss
    Washington, DC  20006                         Thomas R. Lotterman

16  Telephone:  (202) 469-5141                    Bryan M. Killian
    Facsimile:  (202) 955-5564                    (*Admitted Pro hac vice*)

17  Kurt.blase@hklaw.com                          BINGHAM McCUTCHEN LLP
    *Counsel for Plaintiff Center for*            2020 K Street, NW

18  *North American Energy Security*              Washington, DC  20006-1806
                                                  (202) 373-6000

19                                                *Attorneys for plaintiff Renewable Fuels*
                                                    *Association*

20

21

22

23

24

25

26

27

28

PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT AND DEFENDANT INTERVENORS' CROSS-MOTION
FOR SUMMARY JUDGMENT
LEAD CASE NO. 1:09-CV-02234-LJO-DLB