KAMALA D. HARRIS
Attorney General of California
ROBERT W. BYRNE
Supervising Deputy Attorney General
GAVIN G. MCCABE, State Bar No. 130864
MARK POOLE, State Bar No. 194520
DAVID A. ZONANA, State Bar No. 196029
M. ELAINE MECKENSTOCK, State Bar No. 268861
  Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5582
  Fax:  (415) 703-5480
  E-mail:  Mark.Poole@doj.ca.gov
*Attorneys for Defendants*
*James N. Goldstene, et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION, et al.,** | LEAD CASE No. 1:09-CV-02234-LJO-DLB |
| Plaintiffs, | *Consolidated with* Case No: 1:10-CV00163-LJO-DLB |
| v. | **DEFENDANTS' AND DEFENDANT-INTERVENORS' MOTION TO STRIKE AND OBJECTIONS TO NEW EVIDENCE SUBMITTED WITH RMFU PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| **JAMES N. GOLDSTENE, et al.,** | |
| Defendants. | |
| And Related Consolidated Action. | |
| **NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION, et al.,** | Date:        TBD<br>Time:        TBD<br>Courtroom:  TBD<br>Judge:       The Honorable Lawrence J. O'Neill |
| Plaintiffs, | |
| v. | Action Filed:  December 23, 2009 |
| **JAMES N. GOLDSTENE, et al.,** | |
| Defendants | |

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

On March 14, 2011, the RMFU Plaintiffs filed a reply brief in support of their Motion for Preliminary Injunction.  ECF No. 193.  With that brief, Plaintiffs filed four new declarations.  ECF Nos. 193-1, 193-2, 193-3, 193-4.  Those four declarations are in addition to six filed with their opening brief.  ECF Nos. 118, 120, 121, 122, 123, 124.  Defendants object to these four new declarations in their entirety.  Reply briefs are an opportunity to do precisely what their name indicates -- reply to the arguments introduced in opposition briefing.  They are not an opportunity to sandbag the opposing party with new evidence to which it has no chance to respond.  Indeed, as the court-ordered briefing schedule now stands, Defendants lack precisely that opportunity.  The Court should therefore strike all four of Plaintiffs' new declarations as improperly filed.  Defendants also object to the new declarations on evidentiary grounds, as described below in Section II.

**ARGUMENT**

**I.    THE COURT SHOULD NOT CONSIDER NEW EVIDENCE IMPROPERLY PRESENTED ON REPLY.**

"It is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper."  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999) (internal quotation omitted).  *See also Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made for the first time in reply.  This goes for new facts too.") (internal citations omitted).  This rule applies regardless of the nature of the motion before the court and has been applied to motions for preliminary injunction.  *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003); s*ee also United States v. Martinez-Leon*, 565 F. Supp. 2d 1131, 1132 n.1 (C.D. Cal. 2008) (disregarding declaration improperly presented with reply brief on motion to suppress evidence); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308-09 n.5 (N.D. Cal. 2005) (granting, in part, motion to strike declaration submitted with reply brief on motion to uphold confidential designation of

documents); *Payne v. Giant Food, Inc.*, 346 F. Supp. 2d 15, 21 n.4 (D.D.C. 2004) (noting that an affidavit filed with a reply brief "comes too late").[1]

Plaintiffs' new evidence is far-ranging and should not be permitted at this late stage in the briefing schedule.  For example, one of the new declarations provides one person's analysis of how compliance with the LCFS might be obtained, describes the implications of foreign competition for domestic investment in ethanol plant modification, predicts the future of cellulosic ethanol, and provides factors that allegedly belong in a lifecycle analysis of greenhouse gas emissions, among other statements.  ECF No. 193-2.  Another new declaration purports to describe the way the ethanol market works, including the factors that vary operating costs between plants, and the implications of shifts in the market for transportation costs and emissions.  ECF No. 193.  That same declaration, among other new "facts," provides two new "alternate supply curves" analyzing supply, demand, and profitability of the ethanol industry as well as an analysis of historical price differentials in different U.S. ethanol markets.  *Id.*  Those are just several illustrative examples from two of the four declarations submitted.  The briefing schedule permits only that Defendants' may file their reply brief on their cross-motion for summary judgment.  Defendants, thus, have no opportunity now to dispute any of these alleged facts or the other numerous new facts introduced by Plaintiffs' in support of their preliminary injunction motion.

In *Nautilus Group Inc.*, the plaintiff submitted new evidence with its reply brief in support of a motion for preliminary injunction.  Defendants were unable "to respond within the briefing schedule."  *Nautilus Group, Inc.*, 308 F.Supp at 1214.  As a result, the court refused to consider the evidence and granted defendants' motion to strike the declaration.  *Id.*  The facts here are virtually identical and require the same outcome.  Plaintiffs have submitted new evidence with their reply brief, and defendants lack an opportunity to respond within the briefing schedule.

---

[1] If the Court intends to consider the new evidence submitted with Plaintiffs' reply brief, Defendants respectfully request that the Court permit Defendants to file a sur-reply.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (agreeing with *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)).  Defendants anticipate they would need approximately 3 to 4 weeks from the Court's order granting a sur-reply to file the sur-re ply and supporting documents.

1    The court can and should decide Plaintiffs' motion on the basis of Plaintiffs' initial

2    declarations and Defendants' counter-declarations (to the extent that they survive opposing party

3    objections).  This is the normal practice.  *See Wong v. Hayakawa*, 464 F.2d 1282 (9th Cir. 1972)

4    ("The application for the preliminary injunction was heard, as such matters generally are, on a

5    record consisting of plaintiffs' verified complaint, together with supporting affidavits and

6    defendants' counter-affidavits.").  Accordingly, the four new declarations should be stricken as

7    they were in *Nautilus Group, Inc.*

8    **II.   DEFENDANTS ALSO OBJECT TO PLAINTIFFS' NEW DECLARATIONS ON
          EVIDENTIARY GROUNDS.**

9
10         In the event that the Court does not strike Plaintiffs' new declarations in their entirety as

11   improperly submitted on reply, Defendants further object to the declarations as described below.

12   These objections demonstrate numerous and significant disputes over the alleged facts crucial to

13   Plaintiffs' claims of imminent, irreparable injury.  On that basis alone, the Court should deny

14   Plaintiffs' motion.  *Int'l Modelers' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d

15   547, 551 (9th Cir. 1986); *Mayview Corp. v. Rodstein*, 480 F.2d 714, 719 (9th Cir. 1973).

16         **A.   Rebuttal Declaration of James Michael Lyons** (ECF No. 193-2)[2]

17              **1.   Much of the Lyons Rebuttal Is Improperly Focused, Speculative, and
                     Irrelevant.**

18         Defendants object to the opinions in paragraphs 4 and 5 as so seriously flawed as to be

19   irrelevant.  Fed. R. Evid. 401, 402, 702.  Mr. Lyons misuses the word "compliance" throughout

20   these paragraphs.  Compliance with the carbon intensity target for a given year is determined

21   based on the *aggregate* of all fuels sold by a regulated entity in California in a given year.  Lyons'

22   "compliance" analysis assumes that each and every individual gallon of E10 gasoline must meet

23   the carbon intensity target.  That is simply wrong and his analysis is irrelevant.  Not only could

24   any single gallon of E10 be over the target carbon intensity if another is below, but, more

25   _____

26         [2] Paragraphs 2 and 3 of the Lyons Declaration attempt to cure objections to Lyons'
     qualification as an expert.  While Mr. Lyons has now provided slightly more information about
     his background, Appendix A does not list the titles of his publications and his expertise is
27   described only in very general terms.  Where specific areas are identified, such as "Stage II vapor
     recovery systems and their design," they appear largely irrelevant to Mr. Lyons' declarations.

28
                                              4

1   importantly, reporting and calculation of credits and deficits is based on the *type* of fuel.

2   Regulated parties report their credits/deficits for ethanol separately from their credits/deficits for

3   fuels derived from crude oil, for example.  Thus, any ethanol that, by itself, is below the carbon

4   intensity target for the year generates a credit.  *See* CAL. CODE REGS., Tit. 17, §§ 95484-95485.

5   Further, compliance with the LCFS can be achieved through a number of means, including the

6   purchase of credits from other regulated parties or carrying over a deficit from one year to the

7   next.  *Id.*  Lyons' framing of "compliance" is too narrow to be relevant.

8       Defendants object to paragraph 6 as unsupported speculation and irrelevant.  Fed. R. Evid.

9   401, 402, 702.  It presents Lyons' opinion about some alleged implications of competition

10  between Midwest ethanol and Brazilian or Caribbean ethanol.  Plaintiffs have offered no evidence

11  that ethanol from Brazil or the Caribbean is even available for import or that such ethanol is being

12  imported into California.  Rather, the evidence in the record indicates that the United States

13  dominates the export market and that the only ethanol flowing into California in large enough

14  quantities to track is Midwestern.  *See* Defendants' Supplemental Memo. of Points & Authorities

15  in Opp. to RMFU Plaintiffs' Motion for  Preliminary Injunction ("Supp. Opp. to P.I."), 3:19-24

16  (ECF No. 171).  Lyons' speculation about potential imports cannot establish the irreparable injury

17  necessary to support a preliminary injunction and is therefore irrelevant.  Fed. R. Evid. 401, 402.

18  Further, plaintiffs have offered no evidence regarding the "cost of Brazilian and CBI ethanol" that

19  Lyons claims could impact Midwestern decision-making, so, for all anyone knows, Brazilian and

20  CBI ethanol may not be cost-competitive.  The speculative nature of Lyons' conclusions is

21  evident even from his own words:  "the relative to [sic] price impacts on Midwest corn *could be*

22  *far greater*…."  "[M]ore than subjective belief or unsupported speculation" is required by Rule

23  702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).  Speculation is

24  particularly irrelevant here, under Rules 401 and 402, because speculation cannot form the basis

25  of irreparable injury for a preliminary injunction.  *In re Excel Innovations, Inc.*, 502 F.3d 1086,

26  1094 (9th Cir. 2007).  Finally, if the Court considers this testimony admissible, defendants note

27  that plaintiffs' concerns about competition from foreign ethanols wholly undermines plaintiffs'

28  claim that the LCFS protects *California* ethanol to the detriment of *out-of-state* ethanol.

5

1   Defendants object to paragraph 7 as irrelevant.  Fed. R. Evid. 401, 402.  It purports to

2   challenge a paragraph of the Declaration of Michael Scheible (ECF No. 151).  That paragraph, in

3   the background section of the Scheible Declaration, describes the multi-faceted approach

4   California has taken to reducing emissions from the transportation sector.  Mr. Lyons' response

5   provides his opinion about a law that is not part of this lawsuit and contains nothing that

6   contradicts Mr. Scheible or is otherwise relevant to plaintiffs' preliminary injunction or

7   underlying constitutional claims.

8   Paragraph 8 is irrelevant, speculative, and beyond Mr. Lyons' expertise.  Fed. R. Evid. 401,

9   402, 702.  Mr. Lyons does not dispute the fundamental fact that by 2007 the transportation sector

10  made up 38% (and growing) of the State's total GHG emissions.  Further, Mr. Lyons' admits that

11  the Governor ordered development of an LCFS.  His other objections to Mr. Scheible's

12  declaration are irrelevant.  Mr. Lyons' unsupported opinion that California could dramatically

13  lower its emissions without tackling such a significant contributor is speculative, and Mr. Lyons'

14  claims expertise in motor vehicle emissions, not statewide, multi-sector emissions policy-making.

15  Paragraph 9 is speculative, as it purports to project California's cellulosic ethanol needs as

16  well as nationwide cellulosic production into 2020.  Fed. R. Evid. 702.  No one knows how much

17  fuel or of what types California consumers will demand in 2020, given the prospects of increases

18  in vehicle efficiencies, electric cars, other advanced biofuels and more.  Regardless, whether or

19  not Mr. Lyons' guesswork is correct, it is irrelevant, as the focus of plaintiffs' preliminary

20  injunction must be on the near-term irreparable injury, not on what might or might not happen in

21  2020 and 2035.  Fed. R. Evid. 401, 402.    Finally, the last sentence of paragraph 9 is unfounded

22  opinion and inadmissible.  Fed. R. Evid. 702.  Neither Mr. Lyons nor plaintiffs have offered any

23  evidence to contradict Defendants' evidence that the LCFS provides incentives for the

24  development of advanced, low-carbon fuels.  *See* Declaration of Dan Adler (ECF No. 140-1);

25  Declaration of Todd Ellis in Support of Opposition to Plaintiffs' Motion for Preliminary

26  Injunction (ECF No. 140-2).

27  Paragraphs 10 and 11 are irrelevant to this preliminary injunction and plaintiffs' underlying

28  claims because they purport to question aspects of ARB's application of the lifecycle analysis.

6

Fed. R. Evid. 401, 402. This lawsuit is not about the precise carbon intensity values associated with each and every individual component of transportation listed by Mr. Lyons in ¶ 10. Further, Mr. Lyons does not dispute the fundamental facts for which Mr. Scheible's declaration was offered. He simply questions the support provided. That is an irrelevant, non-factual assertion. Plaintiffs' bear the burden of proving their claims and have offered no evidence that contradicts Mr. Scheible. Rather, neither Mr. Lyons nor plaintiffs dispute that California plants are "of newer designs" than the average Midwest plant, and the undisputed evidence indicates that newer plants are more energy efficient.

Paragraphs 12 and 13 are irrelevant because the focus for a preliminary injunction must be on the near-term, not 2013. Fed. R. Evid. 401, 402. To the extent that plaintiffs assert 2013 and beyond is relevant to their irreparable injury because of its implications for the present values of businesses, then so too the continuing reductions of carbon intensity values for Midwest ethanol are relevant. Since no one expects those reductions to cease, least of all plaintiffs, it is highly speculative, indeed, unrealistic, to assume that the current carbon intensity values will still be the lowest numbers for Midwest ethanol in 2013. *See* Supp. Opp. to P.I., 3:13-17, 4:10-5:22 (ECF No. 171); Fed. R. Evid. 702. These paragraphs are irrelevant for the additional reasons discussed above for paragraphs 4 and 5. Fed. R. Evid. 401, 402.

### 2. The Lyons Rebuttal Contains Inadmissible Hearsay and Violates the "Best Evidence" or "Original Document" Rule

Paragraphs 7, 8 and 9 also violate the "best evidence" or "original document" rule. Fed. R. Evid. 1002. The Pavley law, AB32, the Governor's Executive Order, the U.S. EIA's analysis, and the Declarations of Bruce Babcock and Michael Scheible are the best evidence of their own contents, and all relevant documents are before the Court. To the extent documents not before the Court are relevant in Plaintiffs' view, they should have submitted those original documents. Plaintiffs' assertion that this rule does not "bar testimony *about the contents of the documents*" mis-states the law. *See* Plaintiffs' Response to Defendant and Defendant-Intervenors' Objections to Declarations in Support of the Motion for a Preliminary Injunction, 4:4-11 (ECF No. 194). *United States v. Smith* states that Rule 1002 "applies to the circumstances where the proponent

7

1  seeks 'to prove the content' of a document" and "exists to afford guarantees against inaccuracies

2  and fraud."  566 F.3d 410, 413 (4th Cir. 2009).  Inaccuracies in reporting the contents of

3  documents are precisely what Defendants wish to prevent with their objections, and the rules

4  apply.[3]  *See, e.g.,* Lyons Rebuttal Declaration, 4:4-6 (misstating Dr. Babcock's testimony out of

5  context).

6       Defendants also object to the last sentence of paragraph 8 as inadmissible hearsay.  Hearsay

7  is only admissible for a preliminary injunction when admitting it "serves the purpose of

8  preventing irreparable harm."  *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)

9  (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).  That purpose is not

10  served by Mr. Lyons' mis-characterization of testimony that is already before the Court.

11       **B.    Rebuttal Declaration of Jesse David** (ECF No. 193-3 (redacted))

12            **1.    The Entire David Rebuttal Is Irrelevant and Unreliable**

13       As with Dr. David's first declaration, the rebuttal declaration is fundamentally flawed such

14  that it is not relevant.  Fed. R. Evid. 401, 402, 702.  Dr. David continues to base his analysis on

15  the compliance scenarios from the LCFS rulemaking.  In the interest of avoiding repetition,

16  Defendants respectfully refer the Court to earlier briefs for a full explanation of why that fact

17  makes Dr. David's analysis inadmissible as unreliable and irrelevant.  Defendants' Objections to

18  David Declaration (ECF No. 140-11); Defendants' Memorandum of Points & Authorities in

19  Opposition to Plaintiffs' Motion for Preliminary Injunction, 10:6-13:10 (ECF No. 140).  Dr.

20  David's own acknowledgment of facts on the ground demonstrate that the compliance scenarios

21  are not an accurate basis for predicting price shifts.  Dr. David admits that some Midwest ethanols

22  are highly viable under the LCFS, at carbon intensity values currently available, through at least

23  2013.  Rebuttal Declaration of Jesse David, ¶ 12.  Inexplicably, however, Dr. David then redoes

24  his original analysis *without accounting for that fact*.  *Id.* ¶ 23 (calculating new supply curves

25  with the same projected decreases in demand).  That "ignore[s] distinctions crucial to arriving at a

26

27       [3] Plaintiffs' other cited case stands for the proposition that *summaries* of voluminous
materials are admissible, which is totally inapplicable here.  *See United States v. Lemire*, 720 F.2d
1327, 1346-48 (D.C. Cir. 1983).

28

DEFENDANTS' MTN. TO STRIKE & OBJECTIONS TO NEW EVIDENCE SUBMITTED WITH RMFU
PLAINTIFFS' REPLY MEMO. IN SUPPORT OF MTN. FOR P.I.  (1:09-CV-02234-LJO-DLB)

1   valid conclusion." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988).  It also

2   demonstrates a lack of the requisite "intellectual rigor that characterizes the practice of expert

3   economists." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Dr. David's

4   conclusion remains at odds with Plaintiffs' other declarant, Mr. Harden, who assumes that there

5   will be no change in the spot price of ethanol.  *See* Rebuttal Declaration of Stuart H. Harden In

6   Support of Plaintiffs' Motion for Preliminary Injunction, ¶¶ 25, 29, 33, 37, 41 (ECF No. 193-4).

7   Because these flaws are fundamental to Dr. David's analysis and conclusions, the entire

8   declaration is inadmissible.

9        Further, the opinions in paragraphs 6 and 7 lack the necessary "sufficiency of the

10   underlying facts and data" to be admitted.  *United States v. W.R. Grace*, 504 F.3d 745, 765 (9th

11   Cir. 2007).  The data provided does not even purport to be either a complete data set of ethanol

12   shipments to California or a representative sample.  It is simply too narrow a basis to support Dr.

13   David's sweeping assertion of a "pattern."  Fed. R. Evid. 702.  Further, Dr. David's analysis

14   entirely ignores the fact that many of the plants with lower carbon intensities are equally as close,

15   if not closer, to California than his hypothetical plant in South Dakota.  *See, e.g,* Exh. I,

16   Defendants' RJN (ECF No. 142-1).  Costs from speculative fuel-shuffling between two

17   admittedly hypothetical plants cannot support a finding of irreparable injury for a preliminary

18   injunction motion.  *In re Excel Innovations, Inc.*, 502 F.3d at 1094.

19        The opinions in paragraphs 9 and 10 lack the requisite intellectual rigor.  *Kumho Tire Co.,*

20   *Ltd.*, 526 U.S. at 152.  Dr. David does not dispute Mr. Waugh's testimony that quarterly average

21   differences between Chicago and L.A. have been as low as 8 cents and as high as 13 or that the

22   average price differences between New York and Los Angeles have varied to the extent that

23   prices in New York have sometimes been higher than those in Los Angeles.  That the differentials

24   for both 90.1 and 98.4 ethanol selling in California now stand in the middle of the ranges of past

25   differentials does not demonstrate a "reduced differential."  It demonstrates that Dr. David

26   selected an overly narrow set of data for his baseline.  Indeed, Dr. David provided no explanation

27   for the narrow timeframe selected.  Fed. R. Evid. 702.  Given the undisputed fluctuation in

28   ethanol prices over time, using less than two months worth of data as a baseline lacks intellectual

9

1   rigor.  Dr. David further does not explain why ethanol that might otherwise have been sold into

2   California must be sold in the Midwest, rather than in New York or other alternative market.  His

3   unsupported assumption renders his calculation of the resulting "loss" speculative and irrelevant.

4   Fed. R. Evid. 401, 402, 702.

5          Defendants object to paragraph 11 as outside of Dr. David's expertise and as unfounded

6   speculation.  Fed. R. Evid. 702.  He is not an expert in emissions analysis.  And, as discussed

7   above, Dr. David makes a number of speculative and unfounded assumptions about the nature of

8   alleged shuffling.

9          Paragraphs 17-19 further demonstrate the insufficiency and irrelevancy of Dr. David's

10  entire rebuttal declaration.  Fed. R. Evid. 401, 402, 702.  Dr. David finds a price decrease (and

11  resulting lost profits) based on a *projected decline in demand for ethanol*.  If demand actually

12  rises, then the price will not decrease and neither will profits.  Dr. David does not consider the

13  likely demand for ethanol in 2011 or 2012, and his analysis is therefore unreliable.  It is also

14  irrelevant because irreparable injury, by definition, means both that there is actual harm and that

15  the harm is not remedied by some other means.  Because Dr. David ignored the undisputed global

16  growth in the demand for ethanol, his analysis cannot demonstrate either an actual harm or a harm

17  that has not already been remedied by market forces.

18         Paragraphs 20-25 acknowledge that Dr. David's original analysis was flawed but do not

19  fully correct those flaws.  As noted above, Dr. David continues to assume a decline in ethanol

20  demand, both in total and in California, despite undisputed evidence that the opposite is true.

21  Further, Dr. David eliminates a number of plants from his analysis before performing it again but

22  fails to explain why the 33 remaining plants (apparently representing only 3 billion tons of

23  ethanol, less than 1/3 of national production) constitute a representative sample.  Fed. R. Evid.

24  702.  In addition, Defendants still have no way to verify that the data used is accurate, let alone

25  representative.

26         Paragraph 27 is too speculative to be admissible, as evident from its plain language.  Fed. R.

27  Evid. 702.

28

DEFENDANTS' MTN. TO STRIKE & OBJECTIONS TO NEW EVIDENCE SUBMITTED WITH RMFU
PLAINTIFFS' REPLY MEMO. IN SUPPORT OF MTN. FOR P.I.  (1:09-CV-02234-LJO-DLB)

1

**2.    The David Rebuttal Also Contains Inadmissible Hearsay and
Violates the "Best Evidence" or "Original Document" Rule**

2

3    Paragraphs 2, 3, 4, and 27 contain inadmissible hearsay and violate the "best evidence" or

4    "original document" rule.  Fed. R. Evid. 802, 1002.  For example, paragraph 2 purports to list

5    ARB's "assertion[s];" paragraph 3 purports to state how ARB "described" parts of the rulemaking

6    documents as well as things ARB "assumed" or "calculated" during the rulemaking; paragraph 4

7    purports to describe parts of the rulemaking; and paragraph 27 again purports to describe ARB's

8    assumptions as well as statements made by ARB and Pacific Ethanol.  These statements are

9    offered for the truth of the matter asserted.   For the reasons explained above in part II.A.2, these

10   problems make these statements inadmissible, even in the context of a preliminary injunction

11   motion.

**C.    Rebuttal Declaration of Stuart H. Harden** (ECF No. 193-4)

12   **1.    The Entire Harden Rebuttal Is Unreliable and Irrelevant.**

13   Mr. Harden's rebuttal declaration suffers from many of the same problems described above

14   regarding Dr. David's declaration.  Mr. Harden's key assumptions lack any factual support, and

15   his conclusions are therefore inadmissible.  *See Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d

16   825, 830 (9th Cir. 2001).  First, Mr. Harden assumes that the East Coast is the only alternative

17   market for ethanol that allegedly would otherwise have been sold in California.  Harden Rebuttal,

18   ¶ 6.  Yet, Mr. Harden provides no basis for this fundamental assumption other than "I have also

19   been informed that this is the only market which could absorb this volume of additional ethanol."

20   *Id.* at ¶ 14.  Even if such hearsay is admissible as a basis for an expert opinion, that statement

21   provides an insufficient explanation.  To the extent that the alleged fuel shuffling occurs in the

22   initial phase of the LCFS, there is no evidence that such shuffling would not occur among *all*

23   ethanol markets.  Mr. Harden provides no explanation or support for his assertion that any

24   shuffling that occurs would be limited to the California and New York markets.  Mr. Harden's

25   assumption is also inconsistent with Dr. David's assumption that the alternative market would

26   likely be the Midwest.

27

28

11

1    Second, Mr. Harden assumes that the "overall demand for ethanol in the U.S. is likely to be

2    inelastic."  Harden Rebuttal Decl., ¶¶ 16, 18.  That assumption is plainly contradicted by the

3    growth of demand for ethanol both domestically and internationally and by the continued

4    expansion of the ethanol industry.  *See* Supp. Opp. to P.I. 6:6-15 (ECF No. 171).

5    Third, Mr. Harden ignores that "sources with lower carbon intensity" might well be

6    Midwestern sources, leading to no displacement of Midwestern ethanol at all.  (Paragraph 17

7    suffers from these same flaws.)

8    Fourth, while Mr. Harden considers the lower carbon intensity values assigned to

9    Midwestern ethanol in his analysis (unlike Dr. David), Mr. Harden implicitly assumes that the

10   current values are as low as they will go, despite uncontroverted evidence from Plaintiffs' to the

11   contrary.  *See* Supp. Opp. to P.I., 4:15-6:5 (ECF No. 171).

12   Fifth, Mr. Harden's  purported "verification" of the data does not cure Defendants'

13   objection that the data underlying his analysis is unidentified and therefore unverifiable by

14   Defendants or the Court.

15   Sixth, and finally, neither Mr. Harden nor plaintiffs offer an explanation for the current

16   investments in new Midwest ethanol plants, which contrast sharply with the doomsday scenario

17   Mr. Harden paints for the current valuations and future incomes of such plants.  *See* Supp. Opp to

18   P.I., 5:23-28 (ECF No. 171).  Mr. Harden's assumptions and conclusions are flatly contradicted

19   by these undisputed facts and, as such, are unreliable.

20   These problems wholly undermine Mr. Harden's assumptions, as detailed in paragraphs 24,

21   28, 32, 36, 40 and discussed throughout.  Mr. Harden's statement that he deems these

22   assumptions "reasonable" does not make them so.  Mr. Harden acknowledges that the basis of his

23   conclusions must be what buyers consider "likely" to happen in terms of cash flows for ethanol

24   plants.  *E.g.,* Harden Rebuttal Decl., at ¶ 11.  Yet, there is no basis in fact to support the

25   likelihood of Mr. Harden's scenarios.[4]  All of his conclusions are therefore inadmissible.  *See*

26   *Guidroz-Brault*, 254 F.3d at 830.

27   _____
          [4] Mr. Harden's assertions that the compliance scenarios provide "the best available
28   information," Harden Rebuttal Decl., ¶ 13, 22, are contradicted by the description of the

                                          (continued…)

                                      12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.      The Harden Rebuttal Also Contains Inadmissible Hearsay and Violates the "Best Evidence" or "Original Document" Rule.

Paragraphs 7 and 9, contain inadmissible hearsay and violate the "best evidence" or "original document" rule.  Fed. R. Evid. 802, 1002.  For the reasons explained above in part II.A.2, these problems make these statements inadmissible, even in the context of a preliminary injunction motion.

## CONCLUSION

Plaintiffs have improperly submitted new evidence with their reply brief.  Since Defendants have no opportunity to respond with their own declarations and briefs to counter Plaintiffs' claims, the Court should strike the new declarations as improper.  In addition, all three of the rebuttal declarations are inadmissible as unreliable, unfounded and irrelevant, as described above.  For either reason, the Court should not consider these declarations in ruling on Plaintiffs' Motion for Preliminary Injunction.

_____

(…continued)
compliance scenarios in the LCFS rulemaking document and by the evidence that plaintiffs conducted their own analysis of the LCFS' potential impacts.  The fact that the compliance scenarios were used for regulatory impact analysis does not make them the appropriate basis for a showing of actual or imminent irreparable injury.

13

1    Dated:  March 28, 2011                              Respectfully submitted,

2                                                        KAMALA D. HARRIS
                                                         Attorney General of California
3                                                        ROBERT W. BYRNE
                                                         Supervising Deputy Attorney General
4

5
                                                         /s/ Mark Poole
6                                                        MARK POOLE
                                                         Deputy Attorney General
7                                                        *Attorneys for Defendants*
                                                         *James N. Goldstene, et al.*
8
                                                         NATURAL RESOURCES DEFENSE
9                                                        COUNCIL

10
                                                         By:    /s/ David Pettit
11                                                              DAVID PETTIT

12                                                       Attorneys for Defendant-Intervenor,
                                                         *Natural Resources Defense Council, Inc.*
13
                                                         SIERRA CLUB
14

15
                                                         By:    /s/ Pat Gallagher
16                                                              PAT GALLAGHER

17                                                       Attorney for Defendant-Intervenor,
                                                         *Sierra Club*
18
                                                         CONSERVATION LAW FOUNDATION
19

20
                                                         By:    /s/ Jane West
21                                                              JANE WEST

22                                                       Attorney for Defendant-Intervenor,
                                                         *Conservation Law Foundation*
23
                                                         ENVIRONMENTAL DEFENSE FUND
24

25
                                                         By:    /s/ James T.B. Tripp
                                                                JAMES T.B. TRIPP
26                                                       Attorney for Defendant-Intervenor,
                                                         *Environmental Defense Fund*
27
     SF2010400011
28   40490032.doc
                                            14

     DEFENDANTS' MTN. TO STRIKE & OBJECTIONS TO NEW EVIDENCE SUBMITTED WITH RMFU
     PLAINTIFFS' REPLY MEMO. IN SUPPORT OF MTN. FOR P.I.  (1:09-CV-02234-LJO-DLB)