**Exhibit D**

1  **JONES HELSLEY PC**
   265 E. River Park Circle, Suite 310
2  Post Office Box 28340
   Fresno, California 93720
3  Telephone: (559) 233-4800
   Facsimile: (559) 233-9330
4
   Timothy Jones #119841
5  John P. Kinsey #215916

6  **KIRKLAND & ELLIS LLP**
   655 Fifteenth Street, NW
7  Washington, DC  20005
   Telephone:  (202) 879-5000
8  Fascimile:  (202) 879-5200

9  Stuart A. C. Drake (*pro hac vice*)
   John C. O'Quinn (*pro hac vice*)
10
   Attorneys for Plaintiff Growth Energy
11

12

13              UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15 | ROCKY MOUNTAIN FARMERS UNION, *et al*, | LEAD CASE NO.
                                              1:09-C-02234-LJO-DLB
16 |                     Plaintiffs,
                                           | *Consolidated With* Case No.:
17 |   v.                                    1:10-CV-00163-LJO-DLB

18 | JAMES N. GOLDSTENE, in his official capacity
   | as Executive Officer of the California Air
19 | Resources Board,
                                           | **PLAINTIFF GROWTH ENERGY'S**
20 |                     Defendant.         | **RESPONSES TO DEFENDANTS'**
                                              **FIRST SET OF INTERROGATORIES**
21 |
   | and Related Consolidated Action
22

23
         **PROPOUNDING PARTIES:**   All Defendants in Case No. 1:09-c-02234
24
         **RESPONDING PARTY:**      Growth Energy
25
         **SET NUMBER:**            One (1)
26

27

28

---

**GROWTH ENERGY'S RESPONSES TO DEFTS' FIRST SET OF INTERROGATORIES**

Pursuant to the Court's Order of January 14, 2011 (ECF # 157) and Rules 33 and 34 of the Federal Rules of Civil Procedure, plaintiff Growth Energy hereby responds to defendants' first set of interrogatories.

## PRELIMINARY STATEMENT

Growth Energy's responses set forth below are based upon Growth Energy's knowledge and belief at the present time. All responses are based upon Growth Energy's good faith efforts to provide such information as is presently available to Growth Energy. These responses are provided without prejudice to Growth Energy's ability to produce evidence of any fact(s) that Growth Energy may later recall or discover.

Growth Energy reserves the right to introduce or otherwise make use of any subsequently discovered or recalled evidence. Growth Energy is a not-for-profit corporation that represents the interests of numerous ethanol producers and other enterprises in the ethanol industry. (*See* www.growthenergy.org.) Under federal and state law, Growth Energy does not seek nor can it obtain confidential business or financial information belonging to its members or other private companies in the ethanol industry or any other private business enterprise, and such information is not available to Growth Energy. When possible in these responses Growth Energy is providing information contained in publicly available documents that is responsive to defendants' interrogatories.

Growth Energy provides these responses subject to and without waiving its position that defendants have not demonstrated an entitlement to this discovery under Rule 56(d) of the Federal Rules of Civil Procedure, and for each response set forth below subject to and without waiving the objections presented on pp. 8-9 below.

## INTERROGATORIES

**Interrogatory No. 1.** If YOU are an INDIVIDUAL PLAINTIFF, state whether YOU applied to ARB to use an alternative pathway under Method 2B of the LCFS.

**Response.** Interrogatory No. 1 does not apply to Growth Energy.

//
//

**Interrogatory No. 2.** If YOUR answer to Interrogatory No. 1 is no, state why YOU did not so apply.

**Response.** Interrogatory No. 2 does not apply to Growth Energy.

**Interrogatory No. 3.** If YOU are not an INDIVIDUAL PLAINTIFF, state which, if any of YOUR members applied to ARB to use alternative pathways under Method 2B of the LCFS. For any of YOUR members who did not so apply, IDENTIFY the member and state the reasons why such application was not made.

**Response.** Table 1 on page 3 below identifies firms that have applied for alternative pathways under Methods 2A and 2B in section 95486 of the California low-carbon fuel standard ("LCFS") regulation, based on publicly available information Growth Energy is aware of, found on the website of the California Air Resources Board ("CARB"), as of the date when this response was prepared.

According to the CARB website, the members of Growth Energy who have applied for Method 2A pathways are Conestoga (two locations), Green Plains (four locations) and POET (multiple locations). According to the CARB website, Conestoga (Liberal, Kansas, location) has also applied for a Method 2B pathway. According to the CARB website, Hawkeye Renewable, LLC has applied for a Method 2A or Method 2B pathway, or both.[1]

Information concerning addresses for the foregoing facilities available to Growth Energy from a search of its business records is contained in the set of documents being produced to defendants identified as Document Nos. RMFUGRE0002-0078. Growth Energy has no knowledge of any reason why any producer of transportation fuels for sale in California would not have applied to use alternative pathways, other than a determination or belief by the producer that the producer would not have qualified for the use of such an alternative pathway using commercially practicable methods, or that the use of such a pathway would not have otherwise been in the best interest of the producer.

---

[1] Documents concerning the Hawkeye application were not loaded in a readily identified location on the CARB website at the time when this response was prepared. As of January 25, 2011 at 1:45 pm (PST), the hyperlink for the Hawkeye application on the CARB website opens the application by KAAPA Ethanol, as does the hyperlink for KAAPA Ethanol.

Table 1. Applications for Method 2A and 2B Pathways Published on the CARB Website

| CARB Assigned Number | Posted Date | Fuel Producers | Facility Location | Fuels Pathways |
|---|---|---|---|---|
| 1 | 12/14/2010 | Archer Daniels Midland | 8 subpathways for Columbus, NE | Corn Ethanol |
| 2 | 12/14/2010 | POET | 11 subpathways for multiple plants | Corn Ethanol |
| 3 | 12/14/2010 | Trinidad Bulk Traders Limited | Trinidad and Tobago | Dehydration Brazilian Sugarcane Ethanol |
| 4-5 | 12/14/2010 | Green Plains | Lakota, NE | Corn Ethanol |
| | | | Central City, NE | Corn Ethanol |
| 6 | 12/14/2010 | LouisDreyfus Commodities | Norfolk, NE | Corn Ethanol |
| 7-8 | 01/10/2011 | Conestoga (Arkalon Ethanol LLC) | Liberal, KS | Sorghum/Corn Ethanol |
| | | Conestoga (Bonanza BioEnergy, LLC) | Garden City, KS | Sorghum/Corn Ethanol |
| 9 | 01/10/2011 | Clean Energy | Ehrenberg, AZ | Liquefied Natural Gas |
| 10-12 | 01/12/2011 | US Energy Partners LLC (White Energy) | Russell, KS | Sorghum/Wheat Slurry/Corn |
| | | | Plainview, TX | Sorghum/Corn Ethanol |
| | | | Hereford, TX | Sorghum/Corn Ethanol |
| 13 | 1/24/2011 | Hawkeye Renewables, LLC | Iowa Falls, IA | Corn Ethanol |
| 14 | 1/24/2011 | KAAPA Ethanol, LLC | Minden, NE | Corn Ethanol |
| 15-16 | 1/24/2011 | Green Plains | Ord, NE | Corn Ethanol |
| | | | Shenandoah, IA | Corn Ethanol |
| 17 | 1/24/01 | Parallel Products, Inc. | Rancho Cucomonga, CA | Waste Beverage Ethanol |

**Interrogatory No. 4.**   If YOU are an INDIVIDUAL PLAINTIFF, state whether YOU applied to ARB to use an alternative pathway under Method 2A of the LCFS.

**Response.**   Interrogatory No. 4 does not apply to Growth Energy.

**Interrogatory No. 5.**   If YOUR answer to Interrogatory No. 4 is no, state why YOU did not so apply.

**Response.**   Interrogatory No. 5 does not apply to Growth Energy.

**Interrogatory No. 6.** If YOU are not an INDIVIDUAL PLAINTIFF, state which, if any of YOUR members applied to ARB to use alternative pathways under Method 2A of the LCFS. For any of YOUR members who did not so apply, IDENTIFY the member and state the reasons why such application was not made.

**Response.** Please refer to Growth Energy's response to Interrogatory 3.

**Interrogatory No. 7.** State a) the dates on which YOU or YOUR members commenced construction of their production facilities, b) the dates YOU or they began operating the plants, c) the permitted capacity of any plants under construction as of December 19, 2007, and d) IDENTIFY any acknowledgment of the U.S. EPA that ethanol from those plants qualifies as "renewable fuel" under EISA.

**Response.** Growth Energy has searched its business records for documents that contain information concerning the construction and operation of ethanol production plants operated by its members and the production capacities of its member companies' facilities, and has conducted a reasonable search for publicly available information responsive to this Interrogatory. All the information responsive to this Interrogatory available to Growth Energy is set forth in the documents provided in response to defendants' first document request.

With respect to Subparts (a), (b) and (c) of this Interrogatory, Growth Energy refers to Document Nos. RMFUGRE0001D, RMFUGRE0002-0078, RMFUGRE0198-0260, RMFUGRE0616-0725, RFMUGRE 1725-1745 and RMFUGRE1872 produced in response to defendants' document requests, which contain the information available to Growth Energy concerning the capacities and operational dates of corn ethanol production facilities.[2] Estimates and statements concerning production capacities available to Growth Energy sometimes refer to operating, nameplate or permitted capacities. Differences in those estimates and statements may exist based on differences in methods of estimation or computational methods, differences in the dates on which the estimates or statements are made, or for other reasons.

The U.S, Environmental Protection Agency ("EPA") does not issue formal

---

[2] Information contained on the native-format version of RMFUGRE0001D not required to be produced in response to this Interrogatory has been redacted from RMFUGRE0001D.

"acknowledgments" to ethanol production facilities, but maintains a registration program for renewable fuels pursuant to the Clean Air Act, as amended by the Energy Independence and Security Act of 2007. *See* 40 C.F.R. §§ 80.1425-1429; RMFUGRE0261-0262.  As of January 25, 2011, each producer member of Growth Energy except Coskata, Green Plains Renewable Energy -- Lakota, Green Plains Renewable Energy -- Riga, and POET Biorefining -- Cloverdale was listed as a facility capable of producing renewable fuels on the EPA website at www.epa.gov/otaq/regs/fuels/fuelsregistration.htm.

**Interrogatory No. 8.** For any plants under construction as of December 19, 2007, IDENTIFY each such plant that has applied to ARB for an individualized carbon intensity score under either Method 2A or Method 2B of the LCFS.

**Response.** Please refer to the response to Interrogatory 3 and Document Nos. RMFUGRE0002-0078, which contain or refer to all the information available to Growth Energy with respect to this Interrogatory.

**Interrogatory No. 9.** State the results of all internal studies or analyses in YOUR custody or control that RELATE TO the scope and/or pricing for the non-California ethanol market for the years 2011-2021 or any period therein.

**Response.** Growth Energy objects to the terms "internal studies or analyses" and "scope" as vague and undefined. Subject to that objection and its general objections, Growth Energy states that it has no such studies or analyses, but refers defendants to RMFUGRE1826-1852, which refer to markets for ethanol. Growth Energy is also producing public reports that refer to market volumes and prices. *See* RMFUGRE0263-0511 and RMFUGRE1725-1745.

**Interrogatory No. 10.** Do YOU contend that YOU (or any of YOUR members) will lose profits if the LCFS is not enjoined? If so, state the amount of lost profits that each of YOU (or YOUR members) claim and state all facts and IDENTIFY all DOCUMENTS on which these claims are based.

**Response.**   Yes.   Growth Energy refers to Document Nos.  RMFUGRE0548-0551, previously provided to CARB in the LCFS rulemaking in 2009, to Document Nos. RMFUGRE1831-

5

1852, and to the Declarations of Jesse David and Stuart Harden filed in this action on November 1, 2010 (ECF # 122 and # 124) that describe the impacts of the LCFS regulation on margins in the ethanol industry and on the business value of members of Growth Energy. As stated above Growth Energy does not have access to the confidential business or financial information of its members.

**Interrogatory No. 11.** Do YOU contend that YOU (or any of YOUR members) will go out of business if the LCFS is not enjoined? If so, state all facts and IDENTIFY all DOCUMENTS upon which these claims are based.

**Response.** Growth Energy objects to the term "go out of business" as vague and undefined as used in this Interrogatory. Subject to that objection and its general objections, and lacking access to the confidential business or financial information of its members, Growth Energy states that one or more of its members may be forced to terminate or curtail production, seek restructuring, or enter liquidation proceedings as a result of the adverse business conditions that would result from the implementation of the LCFS regulation. Growth Energy refers to Document Nos. RMFUGRE0548-0551 and RFMUGRE1831-1852 which estimate the impacts on the U.S. corn ethanol industry that may result from implementation of the LCFS regulation.

**Interrogatory No. 12.** Do YOU or YOUR members contend that the LCFS has discriminatory effects on non-California corn ethanol producers and/or suppliers? If so state all facts and IDENTIFY all DOCUMENTS on which this contention is based.

**Response.** Yes. The LCFS discriminates against Midwest corn ethanol producers because it "assigns a higher carbon intensity score to corn-derived ethanol from the Midwest than it assigns to corn-derived ethanol from California" having the same pathway characteristics. *Rocky Mt. Farmers Union v. Goldstene*, 719 F.Supp.2d 1170, 1178 (E.D.Cal. 2010); see 17 C.C.R. § 95486(b), Table 6. Thus, for four pathways -- (1) Dry Mill; Wet Distillers Grains; Natural Gas; (2) Dry Mill; Dry Distillers' Grains; Natural Gas; (3) Dry Mill; Dry Distillers Grains; 80% Natural Gas, 20% Biomass; (4) Dry Mill; Wet Distillers Grains; 80% Natural Gas, 20% Biomass -- the carbon intensity value assigned to Midwest corn ethanol is about 10% higher than to the counterpart California pathways. CARB has claimed to base those different carbon intensity values on variable that are intertwined with origin, as made clear in CARB's regulatory support documents. *See* CARB, *Final Statement of*

*Reasons -- Low-Carbon Fuel Standards* ("FSOR") at 64, 339, 560, 713; CARB, *Initial Statement of Reasons in Support of Proposed Rulemaking -- Low-Carbon Fuel Standard* ("ISOR") at II-3, IV-9 to IV-12; CARB, *Detailed California-Modified GREET Pathway for Corn Ethanol* at 6, 43. The discriminatory impact of the LCFS regulation is demonstrated by CARB's analyses forecasting that when fully implemented, the LCFS regulation will eliminate many or all Midwest corn ethanol producers from the California energy market, while California corn ethanol producers using production methods CARB treats as the same as or as similar to the Midwest producers will remain at steady production and/or sales levels. *See* ISOR Appendix E, Tables E-1a to E-5a. CARB has admitted the discriminatory effects of the LCFS regulation, and has presented them as inevitable and as beneficial to local interests. *See* FSOR at 427, 479, 499, 826; ISOR II-3.

**Interrogatory No. 13.** **Describe any energy efficiency improvements that YOU or YOUR members have made since 2007.**

**Response.** Subject to and without waiving its general objections, Growth Energy refers to Document Nos. RMFUGRE0079-0234, RMFUGRE0745-749, and RMFUGRE1711-1809, which contain information concerning specific members of Growth Energy or information responsive to this Interrogatory for the corn ethanol industry as a whole, including the members of Growth Energy.

**Interrogatory No. 14.** **Identify all ethanol production facilities owned or operated by YOU or YOUR members which have suffered a loss of market share as a result of the LCFS.**

**Response.** Lacking access to confidential business and financial information of its members, Growth Energy cannot identify facilities that have lost market share or that have been unable to obtain financing as a result of the LCFS regulation, whose fuel carbon reduction standards took full effect less than one month prior to the date of these responses.

**Interrogatory No. 15.** **Identify all ethanol production facilities owned or operated by YOU or YOUR members which have been unable to obtain financing as a result of the LCFS.**

**Response.** Please see the response to Interrogatory 14, and the Declaration of Gerald Brian,

7

**GROWTH ENERGY'S RESPONSES TO DEFTS' FIRST SET OF INTERROGATORIES**

filed November 1, 2011 (ECF # 121), which contains predictions of the expected impacts of the LCFS regulation on ethanol industry credit facilities.

**Interrogatory No. 16.** Do YOU or YOUR members contend that the LCFS will not have any effect on the results of climate change in California? If so, state all facts and IDENTIFY all DOCUMENTS on which this contention is based.

**Response.** Growth Energy objects to this Interrogatory on the grounds that the terms "climate change" and "results" are vague and undefined as used in this Interrogatory, and insofar as the Interrogatory posits that "climate change" has unspecified "results" in California. Interpreting this Interrogatory as intended to determine whether Growth Energy contends that implementation of the LCFS regulation will not have any measurable impact on ambient temperature level changes in California, Growth Energy responds in the affirmative. According to statements made by defendants and their declarants, the LCFS regulation may result in no reduction in sales of Midwest corn ethanol. On that premise, and without accepting it as correct or likely for purposes of this response, the LCFS regulation will not reduce greenhouse gas ("GHG") releases from the transportation sector in the United States. On the alternative premise that the LCFS regulation will reduce GHG releases, and to an extent far exceeding that forecast by CARB in its regulatory support documents, the changes in ambient temperature that can be estimated using computer models is too small to be perceptible or measurable in the real world, as CARB has admitted in its regulatory support documents for the LCFS regulation. *See* FSOR at 342. In addition to that admisson in CARB's regulatory support document, Growth Energy refers to Document Nos. RMFUGRE 1101-1105 and RMFUGRE 1853-1871.

## GENERAL OBJECTIONS

The objections set forth below apply to each of the foregoing Interrogatories to which Growth Energy has responded.

Growth Energy objects to defendants' interrogatories to the extent that they modify or purport to modify Growth Energy's obligations under the Federal Rules of Civil Procedure or the Local Rules of this Court, to the extent they call for information available to defendant Goldstene or to the defendant-intervenors, and to the extent they call for information that is not needed to respond

8

to Growth Energy's motion for summary judgment or that is irrelevant to claims and defenses in this action placed in issue by that motion. Growth Energy objects to defendants' interrogatories to the extent they seek information beyond Growth Energy's knowledge. Growth Energy objects to the interrogatories to the extent they call for information protected from disclosure under the attorney-client or work-product privileges or for the identification of experts or disclosure of expert reports if this case is not resolved on the currently filed motions.

Growth Energy also objects to the Instructions that accompanied defendants' discovery requests as unduly burdensome, including but not limited to (i) the instruction concerning the method for identification of persons and documents, and (ii) the definitions of "referring to" and "relating to," which are vague, overbroad and unduly burdensome. Growth Energy objects to defendants' interrogatories that seek discovery of the contentions of Growth Energy as improper for purposes of discovery under Fed. R. Civ. P. 56(d). Growth Energy objects to defendants' interrogatories to the extent they contain multiple, discrete subparts and further objects to the extent that these interrogatories, including their subparts, exceed the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).

Growth Energy reserves all objections and other questions as to the competency, relevance, materiality, privilege or admissibility as evidence of the information and documents provided herein in this or any other action.

## VERIFICATION

I, Katy Ziegler-Thomas, the Chief of Staff of Growth Energy, having reviewed the foregoing responses to Interrogatories served on Growth Energy and undertaken a reasonable inquiry under the circumstances into the process by which they were compiled by Growth Energy under the direction of and with the assistance of counsel, hereby verify under penalty of perjury that to the best of my knowledge, information and belief, the foregoing responses to interrogatories accurately reflect the information available to Growth Energy.

Date: 1/26/2011

Katy Ziegler-Thomas

9

GROWTH ENERGY'S RESPONSES TO DEFTS' FIRST SET OF INTERROGATORIES

| | |
|---|---|
| DATED: January 26, 2011 | By: /s/ Stuart A.C. Drake |
| | Stuart A. C. Drake (*pro hac vice*) |
| | John C. O'Quinn (*pro hac vice*) |
| | KIRKLAND & ELLIS LLP |
| | 655 Fifteenth Street, NW |
| | Washington, DC 20005 |
| | Telephone: (202) 879-5000 |
| | |
| | Timothy Jones #119841 |
| | John P. Kinsey #215916 |
| | JONES HELSLEY PC |
| | 265 E. River Park Circle, Suite 310 |
| | Post Office Box 28340 |
| | Fresno, CA 93720 |
| | |
| | Attorneys for Plaintiff Growth Energy |

**GROWTH ENERGY'S RESPONSES TO DEFTS' FIRST SET OF INTERROGATORIES**