**JONES HELSLEY PC**
265 E. River Park Circle, Suite 310
Post Office Box 28340
Fresno, California 93720
Telephone: (559) 233-4800
Facsimile: (559) 233-9330

Timothy Jones #119841
John P. Kinsey #215916

Attorneys for:   Plaintiffs Rocky Mountain Farmers Union; Redwood County Minnesota Corn And Soybeans Growers; Penny Newman Grain, Inc.; Fresno County Farm Bureau; Nisei Farmers League; California Dairy Campaign; Rex Nederend; Growth Energy and the Renewable Fuels Association

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKY MOUNTAIN FARMERS UNION; REDWOOD COUNTY MINNESOTA CORN AND SOYBEANS GROWERS; PENNY NEWMAN GRAIN, INC.; FRESNO COUNTY FARM BUREAU; NISEI FARMERS LEAGUE; CALIFORNIA DAIRY CAMPAIGN; REX NEDEREND; GROWTH ENERGY and the RENEWABLE FUELS ASSOCIATION,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES N. GOLDSTENE, in his official capacity as Executive Officer of the California Air Resources Board,<br><br>　　　　　　　Defendant.<br><br>and Related Consolidated Action | LEAD CASE NO.<br>　1:09-CV-02234-LJO-DLB<br><br>*Consolidated With* Case No.:<br>　1:10-CV-00163-LJO-DLB<br><br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS IN SUPPORT OF REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (ECF # 212)** |

　　　　Plaintiffs Growth Energy and the Renewable Fuels Association respectfully submit this response to the "evidentiary grounds" for defendants' objections to the rebuttal declarations submitted in support of plaintiffs' motion for a preliminary injunction.[1]

---

[1] *See* Defendants' and Defendant-Intervenors' Motion to Strike and Objections to New Evidence Submitted with RMFU Plaintiffs' Reply Memorandum in Support of Motion for Prelimi-

1

---
**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

A.   **Objections to the Rebuttal Declaration of Dr. Jesse David.**[2]

Although cloaked as "evidentiary" objections (Defts' Mot. at 2:11), defendants' challenges to Dr. David's rebuttal declaration are mainly arguments of counsel in sur-rebuttal. As argument of counsel purporting to contradict expert opinion and analysis, those "objections" can be weighed for their own merit, which is essentially nil.[3]   The only objections to Dr. David's rebuttal declaration stated by defendants that have any relation to the rules of evidence that apply in preliminary injunction proceedings should be overruled.

1.   Defendants object to unspecified portions of paragraphs 2, 3, 4, and 27 of Dr. David's rebuttal declaration as either (or both) hearsay and tendered in violation of Rule 1002. (*See* Defts' Mot. at 8-9.)  Putting aside the point that the hearsay rules do not apply in the preliminary injunction context,[4] none of the relevant matter is hearsay.  In paragraph 2, Dr. David explains what documents and statements made by defendants in submissions to this Court he was asked to address in his reply declaration.  Dr. David is certainly entitled to do so, and to identify for the Court the materials reviewed.  *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984).  When Dr. David notes what defendants "asserted" in earlier filings, he is not making these statements for the truth of the matter asserted.  In addition, none of Dr. David's statements in paragraphs 2, 3, 4 and 27 violate Rule 1002.  The Court has all of the relevant documents in its possession, because defendants filed them all.  (*See* p. 8 & n.17 below.)  Moreover, this is precisely the type of information that would come within the collateral matter exception to the rule.[5]

---

nary Injunction (hereinafter "Defts' Mot.") at 4-13.  Plaintiffs have filed a brief separate response to the "motion to strike" in Defts' Mot. at 1-4.  *See* ECF # 214.

[2] Defendants' objections to Dr. David's rebuttal declaration on the ground that it presents new facts and analysis are addressed in plaintiffs' opposition to the motion to strike, as are similar objections to the rebuttal declarations of Mr. Harden and Mr. Lyons. *See* ECF # 214.

[3] *See Ramirez v. Scribner*, No. 1:04-cv-06418-OWW-DLB PC, 2008 WL 4792541, at * 7 n.6 (E.D. Cal. October 29, 2008) (adopted by *Ramirez v. Scribner*, 2008 WL 5377662 (E.D. Cal. December 19, 2008) (overruling objections to declarations where such objections are "merely argument"); *see also Tuleburg Auto Body Garage and Tow v. City of Stockton*, No. CIV. S-05-1504 FCD JFM, 2008 WL 801495 at *1 n.6 (E.D. Cal. March 25, 2008).

[4] *See* Plaintiffs' Response to Defendants' Evidentiary Objections to Declarations, ECF # 194 at 1-4 (filed March 14, 2011).

[5] *See* ECF # 194 at 4.

2

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

2. Defendants' objections to paragraphs 6 and 7 of Dr. David's rebuttal declaration (Defts' Mot. at 5-6) should also be overruled. Dr. David's rebuttal declaration analyzes the impact of the LCFS regulation on a specific group of approximately two dozen large, high-volume Midwest corn ethanol producers. He applies his expertise as an economist to estimate the costs of increased freight shipment when the shipping patterns change, under defendants' new, "fuel shuffling" compliance scenario, using specific examples.[6] This is entirely competent expert testimony under Rule 702, which defendants may consider "speculative," but which they have offered no expert testimony to refute, either based on Dr. David's factual premises or his analytical methods.[7] Insofar as defendants' main point is that Dr. David's analysis and conclusions apply only to a subset of Midwest ethanol producers,[8] the losses that Dr. David forecasts just for that subset of producers in his example ($7.3 million to $14.5 million in 2011) would certainly be relevant and probative with respect to those plants' irreparable injury.

3. The objections to paragraphs 9 and 10 of Dr. David's rebuttal declaration as lacking "intellectual rigor" have no merit. In those paragraphs, Dr. David accepts the main point in the declaration filed by Michael Waugh, on behalf of defendants, that there are now differences in "spot prices" for ethanol assigned different carbon intensity values by the LCFS regulation. Dr. David then accounts for average freight costs, and determines the net impact of the regulation on producers who cannot sell in California because they have higher carbon intensity values ($10 to $20 million in 2011, depending on the extent of the "fuel shuffling" required by the LCFS regulation). Dr. David's analysis uses the data he cites in footnote 22 on page 8 of his rebuttal declaration, which was the only current data on freight costs available to him, and all the spot-market price data available from a standard industry reporting service through the first

---

[6] Defendants call Dr. David's use of the fuel-shuffling scenario "speculative," but they are themselves the author of that scenario, to which Dr. David is simply responding with a quantitative analysis. *See* David Rebuttal Decl. ¶ 5 (citing defendants' briefs and expert declaration).

[7] Notably, defendants have not sought Dr. David's deposition, just as they have not sought the deposition of any of plaintiffs' other experts who have provided testimony in support of the preliminary injunction motion.

[8] *See* Defts' Mot. at 9:11-12 ("The data provided does not even purport to be either a complete data set of ethanol shipments to California or a representative sample").

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

weeks of full implementation of the LCFS regulation. The "narrow timeframe" of which defendants complain (Defts' Mot. at 9:23-27) therefore covers all the relevant and available data for a regulation that was in effect for about two and half months at the time Dr. David completed his analysis. Presumably, defendants do not believe that a party seeking a preliminary injunction must wait until six months or a year after a regulation has been implemented in order to have a more robust data set to assess irreparable injury.

    4.   Defendants next object to paragraphs 17 to 25 of Dr. David's rebuttal declaration based on "insufficiency and irrelevance," but their objection appears to arise from a complete misunderstanding of the purpose of Dr. David's analysis, and the question before the Court on a motion for a preliminary injunction. As defendants state, Dr. David's loss quantifications do not take account of changes in overall national or global ethanol demand. Nor should they: the question is not whether the U.S. corn ethanol industry is in better (or worse) condition now than it was before 2011 as a result of global or national demand for ethanol. The question is whether the LCFS regulation is likely to have adverse economic impacts prior to trial that cannot be redressed after trial. Accordingly, as Dr. David underscores in paragraph 19 of his rebuttal declaration, he is estimating the changes in revenue between scenarios in which (1) the LCFS remains in effect pending trial (*i.e.*, in 2011 and/or 2012) and (2) the LCFS is preliminarily enjoined. *See* David Rebuttal Decl. ¶ 14 ("my analysis is based on the impact of the LCFS in 2011 and 2012 *relative to the projected state of the industry in the absence of the LCFS*, not relative to the current state of the industry") (emphasis in original). Dr. David's comparison is the one that is relevant for purposes of a preliminary injunction motion. The "insufficiency" claim appears tied to the fact that Dr. David's data set covers 33 plants, not all plants in the U.S. ethanol industry. Dr. David carefully explained the impact of that limitation in his opening declaration, and in any event a demonstration of irreparable injury at 33 plants cannot be gainsaid by defendants, particularly insofar as their "fuel shuffling" compliance scenario produces no countervailing environmental benefits. *See* Declaration of Jesse David, ECF # 122, at ¶¶ 22-25 & nn.21-23 (filed November 1, 2010).[9]

---

[9] As for defendants' objection that Dr. David is not competent to testify concerning the lack of

4

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

**B. Objections to the Rebuttal Declaration of Stuart H. Harden**

1. As with the hearsay objections to Dr. David's declaration, the hearsay objections to Mr. Harden's declaration (*see* Defts' Mot. at 11) cannot be sustained within a preliminary injunction context.[10] To the extent that defendants believe that Mr. Harden is wrong to rely upon reports that only the East Coast could absorb the volume of ethanol that will no longer be saleable in California after 2017 or 2018, they could have (but did not) offer competent evidence to the contrary.[11] Mr. Harden's reliance on the information he has been provided in this respect hardly seems questionable on its face: as defendants have necessarily conceded in the summary judgment briefing, California is by far the largest ethanol market in the nation, accounting for more than 10 percent of corn ethanol consumption on an average annual basis.[12] The same is true of Mr. Harden's reliance on information that demand for ethanol in the United States is likely to be inelastic (*see* Defts' Mot. at 12:1-4): if defendants had a basis for a contrary assumption, they could have tried to present it using competent testimony. Likewise, if defen-

---

any emissions reductions that will be produced by fuel shuffling (Defts'Mot. at 10), Dr. David is essentially just restating a point made by Defendant Goldstene in the administrative record (CARB's "Final Statement of Reasons" for implementation of the LCFS), which was that "fuel shuffling [will result in] little or no net change in fuel carbon-intensity on a global scale." *See* Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Motion for Summary Judgment, ECF #127, Exhibit 4, at 477 (filed November 1, 2010).

[10] Many of the stated hearsay objections do not involve hearsay at all. For example, paragraphs 7 and 9 of Mr. Harden's rebuttal declaration simply identify, for purposes of establishing the relevance of his rebuttal, the criticisms included in defendants' objections and opposition to his November 2010 declaration.

[11] Defendants are mistaken when they claim that Dr. David (unlike Mr. Harden) made an assumption that the only alternative market for ethanol excluded from California would be the Midwest. (*See* Defts' Mot. at 11:25-27.) Dr. David offers an example of how freight costs would rise if (as defendants now posit) the main effect of the LCFS regulation in the near term will be to shift producers in various locations (Illinois and South Dakota, in Dr. David's example) from their current markets, for which they have efficient freight logistics, to different markets. Dr. David need not and does not for purposes of his example assume that all ethanol diverted from California will go to the Midwest; indeed, his assumption that the South Dakota ethanol in his example could be sold entirely in the Chicago market is conservative. As Mr. Harden is informed, only the East Coast could absorb all the ethanol that would need to be "shuffled" from California (*see* Harden Rebuttal Decl. ¶ 14); consequently, the industry-wide freight costs increases caused by "fuel shuffling" could well be higher than in Dr. David's example.

[12] *See*, *e.g.*, Defendants' Response to RMFU Plaintiffs' Statement of Material Facts Not Subject to Genuine Dispute and Defendants' Statement of Disputed Facts, ECF # 139-1, at ¶ 19 (filed December 17, 2010).

5

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

dants actually believed they could credibly contradict Mr. Harden's assumption, as an experienced financial analyst, that buyers and sellers evaluate businesses based on expected future cash flow (*id.* at 12:20-26), they presumably would have offered their own evidence to that effect.[13]

2.   The balance of the "evidentiary" objections to Mr. Harden's rebuttal declaration, which are largely untethered to the rules of evidence, seem intended to obscure the central point of the analysis that Mr. Harden presents in his rebuttal declaration, as well as the conservative nature of his valuation analyses.  If one credits defendants' opposition papers, some Midwestern corn ethanol plants that now have lower carbon-intensity scores than they had in November 2010 can now remain in the California market.  Mr. Harden's valuation analyses therefore now include scenarios in which there is no reduction in California sales by the Midwest corn ethanol producers he has studied until 2017 or 2018.[14]  *See* Harden Rebuttal Decl. ¶¶ 30-42.  Even under those extremely conservative assumptions, the reduction in net present value for those plants ranges from $26 to $31 million, depending on the year in which market exit occurs and other details.  *See id.* ¶ 39.  The fact that some new plants are coming on line now (*see* Defts' Mot. at 12:15-19) does not undercut any part of Mr. Harden's analysis of the impact of the regulation on existing plants.  Defendants proffer no competent evidence, only argument of counsel, to suggest that any of that additional capacity (other than at plants located in California) aims to serve the California market.  Nor do they offer any evidence, or even argument, that the investors who may be able to underwrite new ethanol plants are the same investors in the existing plants that serve California.  That latter group of individuals are those who most

---

[13] Mr. Harden used the same valuation methodology in his first declaration (*see* Harden ECF # 124 at ¶¶ 10, 18, 20), so defendants have had plenty of time to find a qualified financial analyst to challenge his methodology.  Similarly, if defendants had wanted to review his data and worksheets (*see* Defts' Mot. at 12:12-13 ("data … unverifiable by Defendants or the Court")), it would have behooved them to seek discovery from him.

[14] Defendants have offered no competent testimony showing why the Court should not credit CAARB's own long-term compliance scenarios, which show Midwest corn ethanol eliminated from California by 2017 or 2018.  Contrary to Defts' Motion at 12:8-11, is there is no competent evidence that any Midwest corn ethanol plants will be able to obtain new, still-lower carbon intensity levels that will allow them to remain in the California energy market long-term -- much less any such evidence that all Midwest producers that were in the market before the LCFS regulation will be able to remain in that market.

6

PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS
SUBMITTED IN SUPPORT OF P.I. REPLY MEM.

directly affected by the LCFS regulation in Mr. Harden's valuation analysis, and the harm they suffer is relevant and has been demonstrated with sound expert testimony.[15]

### C. Objections to the Rebuttal Declaration of James Michael Lyons

1. Mr. Lyons offers in paragraphs 5 and 6 of his rebuttal declaration a simple arithmetic demonstration about the long-run impact of the LCFS regulation, as the regulation has now been modified with the new, lower-carbon-intensity pathways for some Midwest corn ethanol producers. Mr. Lyons' purpose is to place proper bounds on the predictions offered by defendants' declarant, Mr. Scheible, about the future viability of Midwest corn ethanol. *See* Lyons Rebuttal Declaration ¶¶ 5-6. Mr. Lyons shows that even the new, lowest-carbon-scored Midwest corn ethanol will not allow a gasoline marketer to meet the LCFS standard beyond 2015, even if it could be blended into gasoline at a 20 percent level (above the levels allowed by current law). Defendants call his arithmetic "seriously flawed" (Defts' Mot. at 4-5) and therefore irrelevant. If Mr. Scheible's rosy depiction of the future of corn ethanol is relevant, than so is Mr. Lyons' analysis, and unlike Mr. Scheible, Mr. Lyons uses mathematics and explains his calculation. As for the unspecified math errors committed by Mr. Lyons, it bears noting that Dr. David independently calculates the year in which even the lowest-scoring Midwest corn ethanol will no longer assist gasoline marketers in complying with the LCFS regulation, and also determines that the last such year is 2015. (*See* David Rebuttal Decl. ¶ 12.) Defendants appear to state no quarrel with Dr. David's analysis of this question, amid their objections to nearly every portion of his rebuttal declaration.[16] The objections to Mr. Lyons' analysis in paragraphs 5 and 6 as irrelevant or mathematically flawed should be overruled.

---

[15] Defendants treat it as significant that Mr. Harden assumes no long-run change in the national average prices of corn ethanol, while Dr. David predicts a decrease by applying basic laws of supply and demand. *See* Defts' Mot. at 9:3-8, 12:8-11. This is simply further evidence of Mr. Harden's conservatism in his analysis, and hardly a refutation of Dr. David's application of fundamental economic principles -- something that Dr. David, a qualified expert in the economics of the transportation energy market, is competent to do.

[16] Defendants argue in their objections to Mr. Lyons' rebuttal declaration that if gasoline marketers generate early credits, they might be able to rely on the lowest-carbon corn ethanol past 2015. Defendants offer no evidence that any gasoline marketer is currently accruing credits. Nor is there any competent mathematical demonstration that Midwest corn ethanol remains viable after 2017 or 2018, and certainly none that undercuts CARB's own long-run analysis, which it used when approving the LCFS regulation in 2009, showing an eventual exodus of

7

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS
SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

2.  Defendants also dispute Mr. Lyons' use of the carbon intensity values assigned to sugar cane ethanol to place further bounds on Mr. Scheible's depiction of the LCFS regulation, and to Mr. Lyons' correction of errors and what Mr. Lyons considers to be misstatements in Mr. Scheible's lengthy background discussion of the regulation.[17]  They contend that Mr. Lyons' statements are "unsupported speculation and irrelevant," and that the issue on which Mr. Lyons disagrees with Mr. Scheible is "not part of this lawsuit." (Defts' Mot. at 5:8, 6:5.)  If Mr. Scheible's own background statements about the LCFS regulation are competent, and his statements are relevant, then so is Mr. Lyons' effort to put those statements in context.  Likewise, if Mr. Scheible can properly try to interpret the regulations, then his interpretations are fair targets for an expert like Mr. Lyons, who has worked for a range of parties on the LCFS regulation since its earliest inception.

3.  Similarly, defendants apply a double-standard to Mr. Lyons' rebuttal to the statements by defendants' declarants concerning the future of cellulosic ethanol (an alternative to corn ethanol) in California and nationwide.  Mr. Lyons addresses that issue -- which defendants examine at some length, to no apparent purpose, in their papers -- in case the Court considers the "incentives for the development of advanced, low-carbon fuels" somehow relevant to this motion for a preliminary injunction.  (*See* Defts' Mot. at 6:23-24.)  If that issue is relevant enough to warrant coverage in multiple defense declarations, then it is not "irrelevant" (*id*. at 6:19) for Mr. Lyons to respond using data and analysis from the U.S. Energy Information Administration.  *See* Lyons Rebuttal Decl. ¶ 9.  The same is true of defendants' objections to Mr. Lyons' rebuttal to the generalized overview of lifecycle emissions analysis offered by Mr. Scheible and others.  Plaintiffs *agree* that the merits of that general method of emissions analysis is not relevant to the preliminary injunction motion (*see* Defts' Mot. at 6:27); Mr. Lyons'

---

Midwest corn ethanol from the California market.

[17] Mr. Scheible's declaration appears intended in part to support defendants' efforts to retreat from the predictions about the future of Midwest corn ethanol that CARB made in the LCFS rulemaking.  *See generally* ECF #140-3.  Mr. Scheible does not claim any opinion on how low the carbon intensity values that CARB might assign to corn ethanol in the future may be.  Lacking such an estimate, he offers no quantitative analysis, and indeed nothing other than speculation, to explain how Midwest corn ethanol could can sustain compliance with the LCFS regulation over the long term.  *See* Lyons Rebuttal Decl. at  ¶ 5.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

sole purpose was to offer a succinct response to defendants' interjection of this issue through Mr. Scheible and several other declarants. *See* Lyons Decl. at 10-11.  Similarly, in paragraphs 12 and 13 of his rebuttal declaration, Mr. Lyons addresses compliance issues after 2013, simply because Mr. Scheible does so.  If, as defendants now argue, "the focus for a preliminary injunction must be on the near-term, not 2013," then it was pointless to file extensive statements by Mr. Scheible and others on their long-term vision for the LCFS regulation.

4.  Turning to the objections to Mr. Lyons' declaration that are purportedly based on the rules of evidence, there is no merit to the objections under Rule 1002 to Mr. Lyons' references to the contents of legislative and gubernatorial documents. (*See* Defts' Mot. at 7-8.)  For example, in paragraph 8 of his rebuttal declaration, Mr. Lyons simply points out what the text of A.B. 32 does ***not*** say, as well as the fact that Executive Order S-01-07 is a gubernatorial edict, not a statute.[18]  As for Mr. Lyons' statements concerning the Pavley law and various EIA forecasts (*see* ECF # 193-2 at ¶¶ 7, 9), Mr. Lyons' statements are not made to prove the contents of those documents.  Defendants object to "the last sentence of paragraph 8 [of Mr. Lyons' rebuttal declaration] as inadmissible hearsay." (Defts' Mot. at 8:6.)  But Mr. Lyons' statement that "the A.B. 32 mandate could be met in other ways than implementation of an LCFS" is not an out-of-court statement.  *See* Fed. R. Evid. 801(c).  Likewise, Mr. Lyons' statement about what Mr. Babcock says in his own declaration is not a statement offered for the truth of the matter asserted.  Even treated as hearsay, however, Mr. Lyons is entitled to rely on and submit to the Court this information as a way to explain the basis and logic of his expert opinions.  *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984); *see generally Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (joining six other circuits, including the Ninth Circuit, in concluding that district courts may "rely on hearsay evidence ... to award a

---

[18] Moreover, inasmuch as defendants admit that all the relevant documents are before the court [fact-finder]," Mr. Lyons' statement about those documents would not in any event violate Rule 1002.  The case defendants cite (Defts' Mot. at 7-8) makes clears that the "original document" rule does not bar testimony about the contents of a document so long as that document is before the fact-finder.  *See United States v. Smith*, 566 F.3d 410, 413 (4th Cir. 2009) ("The Rule exists to afford guarantees against inaccuracies and fraud by requiring that the ... document be offered [into evidence]").

9

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**

preliminary injunction" and that a hearsay objection "goes to weight, not preclusion, [of evidence] at the preliminary injunction stage").

### D. Conclusion

Plaintiffs attempted to engage defendants on issues involving evidentiary objections early during the briefing of the preliminary injunction motion, in order to resolve or narrow any disputes and reduce the burden of motions practice for the Court and all parties. *See* Plaintiffs' Response to Defendants' Evidentiary Objections to Declarations (filed March 14, 2011) ECF # 194 at 1 & n.2. Defendants ignored that attempt, and have now filed two rounds of objections for the Court to address. Defendants' evidentiary objections should be overruled.

DATE:  April 1, 2011

Respectfully submitted,

By:___/s/__Timothy Jones_____
Timothy Jones #119841
John P. Kinsey #215916
JONES HELSLEY PC
265 East River Park Circle, Suite 310
PO Box 28340
Fresno, CA  93720
    Attorneys for all Plaintiffs

| | |
|---|---|
| Charles H. Knauss (*pro hac vice*) | Stuart A. C. Drake (*pro hac vice*) |
| Thomas R. Lotterman (*pro hac vice*) | John C. O'Quinn (*pro hac vice*) |
| Bryan M. Killian (*pro hac vice*) | KIRKLAND & ELLIS LLP |
| BINGHAM McCUTCHEN LLP | 655 Fifteenth Street, NW |
| 2020 K Street, NW | Washington, DC  20005 |
| Washington, DC  20006-1806 | Telephone:  (202) 879-5000 |
| Telephone:  (202) 373-6000 |     Attorneys for Plaintiff Growth Energy |
|     Attorneys for Plaintiff Renewable Fuels Association | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO EVIDENCE CONTAINED IN REBUTTAL DECLARATIONS SUBMITTED IN SUPPORT OF P.I. REPLY MEM.**