# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION, et al.,** | **Lead case: 1:09-cv-2234-LJO-BAM** |
| **Plaintiffs,** | **Consolidated with member case: 1:10-cv-163-LJO-BAM** |
| **v.** | **MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' MOTION TO AMEND AMENDED COMPLAINT (Doc. 313[1])** |
| **JAMES N. GOLDSTENE, in his official capacity as Executive Officer of the California Air Resources Board, et al.,** | |
| **Defendants.** | |
| **NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION, et al.,** | |
| **Plaintiffs,** | **1:10-cv-163-LJO-BAM** |
| **v.** | |
| **JAMES N. GOLDSTENE, in his official capacity as Executive Officer of the California Air Resources Board, et al.,** | |
| **Defendants.** | |

## I. INTRODUCTION

This consolidated action is on remand from the United States Court of Appeals for the Ninth Circuit. *See Rocky Mountain Farmers Union v. Corey* ("*RMFU*"), 730 F.3d 1070, 1078 (9th Cir. 2013), *rehearing denied*, 740 F.3d 507, 508 (9th Cir. 2014), *cert denied*, 134 S.Ct. 2875 (2014), 134 S.Ct. 2884 (2014). On December 23, 2009, Plaintiffs[2] filed their complaints against Defendants[3] in which they

---

[1] Unless otherwise indicated, all citations to the docket refer to the docket in *Rocky Mountain Farmers Union v. Goldstene*, 09-cv-2234-LJO-BAM.

[2] Plaintiffs in this consolidated action are Rocky Mountain Farmers Union, Redwood County Minnesota Corn and Soybean Growers, Penny Newman Grain, Inc., Growth Energy, Renewable Fuels Association, Red Nederend, Fresno County Farm Bureau, Nisei Farmers League, California Dairy Campaign, National Petrochemical & Refiners Association, American

1

challenged California's Low Carbon Fuel Standard ("the LCFS"), 17 Cal. Code Regs. ("CCR") §§ 95480-90. Doc. 1. Plaintiffs filed an amended complaint on January 11, 2010, Doc. 7, and a second amended complaint—currently the operative complaint—on January 28, 2010. Doc. 11, Second Amended Complaint ("SAC"). Defendant-Intervenors[5] intervened pursuant to the parties' stipulation. Doc. 35.

The parties filed cross-motions for summary judgment (Docs. 111, 125, 138, 172), and Plaintiffs filed a motion for a preliminary injunction. Doc. 115. On December 29, 2011, this Court issued three separate orders resolving those motions, primarily in Plaintiffs' favor. *See Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1042 (E.D. Cal. 2011) ("*Rocky Mountain Preemption*"); *Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1071 (E.D. Cal. 2011) ("*Rocky Mountain Ethanol*"); *Rocky Mountain Farmers Union v. Goldstene*, Nos. 09-cv-2334-LJO-DLB, 10-cv-163-LJO-DLB, 2011 WL 6936368 (E.D. Cal. Dec. 29, 2011) ("*Rocky Mountain Crude*") (collectively, "the *RMFU* orders"). Defendants appealed the *RMFU* orders. *See RMFU*, 730 F.3d at 1086.

On appeal, the Ninth Circuit affirmed in part, reversed in part, vacated, and remanded the case to this Court. *Id.* at 1077. Plaintiffs' petition for a rehearing en banc was denied. *Rocky Mountain Farmers Union v. Corey*, 740 F.3d 507, 508 (9th Cir. 2014). The parties' cross-petitions for a writ of certiorari in the United States Supreme Court were likewise denied. *Rocky Mountain Farmers Union v. Corey*, 134 S.Ct. 2875 (2014); *Corey v. Rocky Mountain Farmers Union*, 134 S.Ct. 2884 (2014).

---

Trucking Association, Center for North American Energy Security, and the Consumer Energy Alliance (collectively, "Plaintiffs").

[3] Defendants in this consolidated action are James N. Goldstene, in his official capacity as Executive Director of the California Resources Board ("CARB"); Mary D. Nichols, Daniel Sperling, Ken Yeager, Dorene D'Adamo, Barbara Riordan, John R. Balmes, Lydia H. Kennard, Sandra Berg, Ron Roberts, John G. Telles, and Ronald O. Loveridge, in their official capacities as members of CARB; Arnold Schwarzenegger, in his official capacity as Governor of the State of California, and Edmund G. Brown, Jr., in his official capacity as California Attorney General.

[4] Plaintiffs in 09-cv-2234-LJO-BAM ("RMFU Plaintiffs"), referred to as "the lead case," challenge the ethanol provisions of the LCFS whereas Plaintiffs in 10-cv-123-LJO-BAM ("AMFU Plaintiffs") challenge both the ethanol and crude oil provisions in the LCFS. *See RMFU*, 730 F.3d at 1086.

[5] Intervenor-Defendants are Natural Resources Defense Council, Inc., Conservation Law Foundation, Sierra Club, and Environmental Defense Fund (collectively, "Intervenor-Defendants"). Defendants and Defendant-Intervenors shall be referred to collectively as "Defendants" or "CARB."

Currently before the Court is Plaintiffs' motion to amend the SAC under Fed. R. Civ. P. 15(a)(2). Doc. 313. The Court did not set a hearing for the motion and the parties did not request one. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to amend (Doc. 313).

## II. FACTUAL BACKGROUND[6]

Plaintiffs, various parties with interests in the corn ethanol, gasoline production, trucking, and petrochemical manufacturing industries, challenged the validity of the LCFS, a collection of regulations promulgated by Defendant California Air Resources Board ("CARB") to implement provisions of California Assembly Bill 32 ("AB 32"), California's Global Warming Solutions Act of 2006, Cal. Health & Saf. Code § 38500 *et seq*. SAC at ¶ 1. Plaintiffs asserted that the LCFS violated the Commerce Clause of the U.S. Constitution, art. I, § 8, cl. 3 ("Commerce Clause"), and was preempted by federal law. *Id.* Specifically, Plaintiffs alleged that the LCFS conflicted with and was preempted by Section 211(o) of the Clean Air Act ("CAA"), 42 U.S.C. § 7545 *et seq*., also known as the federal Renewable Fuel Standard ("RFS"), codified in 42 U.S.C. § 7545 ("Section 211(o)"), which was modified by the Energy Policy Act of 2005 and again by the Energy Independence and Security Act of 2007 ("EISA"). *Id.* at ¶¶ 70, 77-78. Plaintiffs brought two causes of action for (1) declaratory and injunctive relief that the LCFS is preempted by federal law and (2) that the LCFS improperly regulates, discriminates against, and unduly burdens interstate commerce. *Id.* at 15, 17.

A.   **Carbon Intensity.**

Carbon intensity is defined in the LCFS as "the amount of lifecycle greenhouse gas emissions, per unit of energy of fuel delivered, expressed in grams of carbon dioxide per megajoule." *Id.* § 95481(a)(11). "Lifecycle greenhouse gas emissions" are defined as the

---

[6] Unless otherwise indicated, the background facts underlying the *RMFU* orders have not changed. Accordingly, the Court will refer to the facts as stated in the *RMFU* orders where appropriate.

aggregate quantity of greenhouse gas emissions (including direct emissions and significant indirect emissions such as significant emissions from land use changes), as determined by the Executive Officer, related to the full fuel lifecycle, including all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of the finished fuel to the ultimate consumer, where the mass values for all greenhouse gases are adjusted to account for their relative global warming potential.

*Id.* § 95481(a)(28). The lifecycle analysis "includ[es] all stages of fuel and feedstock production and distribution, from feedstock generation or extraction through the distribution and delivery and use of finished fuel to the ultimate consumer." *Id.* § 95481(a)(28). In short, carbon intensity is an estimate of "emissions related to a fuel's lifecycle that focuses on [greenhouse gases ('GHGs')] emitted when the transportation fuel is extracted, refined, and transported to California." *Rocky Mountain Preemption*, 843 F. Supp. 2d at 1051. "Carbon intensity is not an inherent chemical property of a fuel, but rather it is [] reflective of the process in making, distributing, and using that fuel." *Id.* (citations and quotation marks omitted).

**B.    The LCFS.**

The purpose of the LCFS is to "reduce greenhouse gas emissions by reducing the full fuel-cycle, carbon intensity of the transportation fuel used in California." 17 CCR § 95480. The LCFS "applies to any transportation fuel ... that is sold, supplied, or offered for sale in California, and to any person who, as a regulated party defined in [the regulation] is responsible for a transportation fuel in a calendar year." *Id.* § 95480.1(a). The "LCFS focuses on the 'carbon intensity' of fuels to estimate emissions related to a fuel's lifecycle, including GHGs emitted when the fuel is extracted, refined, and transported to California. It establishes different standards for gasoline and diesel fuels, and provides for a gradual implementation of the fuel standards for both, with a goal to reduce the carbon intensity of fuel by 10% by the year 2020." *Rocky Mountain Preemption*, 843 F. Supp. 2d at 1051 (citing *id.* §§ 95482(b)-(c)). The LCFS intends to "account for emissions associated with all aspects of the production, refining, and transportation of a fuel." *RMFU*, 730 F.3d at 1081 (citing 17 CCR § 95481(a)(38)). "When these emissions are measured, CARB assigns a cumulative carbon intensity value to an individual fuel lifecycle, which is called a 'pathway.'" *Id.* (citing 17 CCR § 95481(a)(14)).

The LCFS requires providers to comply with reporting requirements which obligate them to identify for fuels sold or imported into California, the type of fuels, whether the fuel is blended, and the fuel's production process. Each year, a regulated party's overall carbon intensity for its pool of transportation fuels must meet the applicable annual carbon intensity standards." *Rocky Mountain Preemption*, 843 F. Supp. 2d at 1051 (citations and quotation marks omitted). "Fuel providers may meet carbon intensity standards either by blending low-carbon ethanol into gasoline or buying credits generated from another fuel provider that has credits." *Id.* However, the "LCFS contains no requirements that dictate the exact composition of compliant transportation fuels." *Id.* The LCFS does "not set[ ] a fuel standard," and it does not "establish any motor-vehicle specifications." *Id.* at 1052 (citations and quotation marks omitted).

The LCFS "gives regulated parties two methods to comply with its reporting requirements." *RMFU*, 730 F.3d at 1082. "CARB issued a schedule of 'default pathways' for a range of fuels that it anticipated would appear in the California market." *Id.* Under the first method ("Method 1"), "regulated parties who sell fuel under a default pathway may rely on that pathway in reporting the carbon intensity of the conforming fuel." *Id.* (citing 17 CCR § 95486(b)). "Under Method 2A, a regulated party relies in part on a default pathway but proposes a replacement for one or more of the pathway's average values." *Id.* (citing 17 CCR § 95486(c)). "Under Method 2B, a regulated party proposes a new, individualized pathway." *Id.* (citing 17 CCR § 95486(d)).

In short, the LCFS regulates the carbon intensity of fuels sold in California, including ethanol and crude oil. *See Rocky Mountain Ethanol*, 843 F.3d at 1078-79; *Rocky Mountain Crude*, 2011 WL 6936368, at *2-6. Plaintiffs challenge the legality of those regulations under federal law.

## III. **PROCEDURAL BACKGROUND**[7]

The parties filed complex cross-motions for summary judgment (Docs. 111, 115, 125, 138, 172), and Plaintiffs filed a motion for a preliminary injunction. Doc. 115. On December 29, 2011, this Court

---

[7] The Court discusses only the aspects of the procedural history that are necessary to resolve Plaintiffs' motion to amend.

1    issued the *RMFU* orders, resolving those motions. *See RMFU*, 730 F.3d at 1077.

2    **A.      *Rocky Mountain Preemption.***

3            In *Rocky Mountain Preemption*, this Court addressed Defendants' motion for summary

4    judgment. 843 F. Supp. 2d at 1047. Defendants asserted the LCFS is constitutional because it is

5    insulated from Plaintiffs' preemption and Commerce Clause challenges under Section 211(c)(4)(B) of

6    the CAA ("Section 211(c)(4)(B)"). *Id.* Defendants further argued that, contrary to Plaintiffs' assertion,

7    the LCFS is not facially preempted. *Id.* Defendants moved for summary judgment that

8            (1) the LCFS is an authorized control of motor vehicle fuel pursuant to Section 211(c)(4)(B); (2)
9            California's authority pursuant to Section 211(c) is not restricted by Section 211(o); (3) the
             LCFS does not conflict with Section 211(o); (4) the Supremacy Clause is not invoked between
10           two provisions of federal law; and (5) Section 211(c)(4)(B) insulates California fuel regulations
             from the Commerce Clause.

11   *Id.* at 1054. Plaintiffs opposed the entire motion. *See id.* at 1047.

12           The Court made a number of findings to resolve the parties' preemption arguments. First, the

13   Court rejected Defendants' argument that preemption principles do not apply in this action because the

14   Supremacy Clause is not implicated in this case. *Id.* at 1062. With regard to Section 211(c)(4)(B), the

15   Court ultimately found that "the LCFS is a control respecting a fuel or fuel additive and was enacted for

16   the purpose of emissions control" and therefore "the Section 211(c)(4)(B) preemption exemption

17   authorizes [] the LCFS." *Id.* at 1061. The Court further found that "the LCFS is excused expressly from

18   a preemption challenge based on federal fuels regulations set forth in Section 211(c)," *id.* at 1061-62,

19   but that "this preemption exception does not allow California unfettered authority to conflict with other

20   federal laws, including Section 211(o)." *Id.* at 1062 n.3.

21           Next, the Court rejected Defendants' argument that "Section 211(c)(4)(B) allows unfettered

22   authority to enact fuels regulations without being subject to conflict preemption scrutiny." *Id.* at 1062.

23   Rather, the Court found that "Section 211(c)(4)(B) does not authorize California to enact and enforce

24   fuel standards that conflict with federal laws, including other provisions of the [CAA] such as . . .

25   Section 211(o)." *Id.* As to whether the LCFS conflicted with Section 211(o), the Court found that neither

26   party addressed the appropriate standard of review. *Id.* at 1071; *see also id.* at 1047, 1068. The Court

1   therefore denied Defendants' motion for summary judgment that the LCFS did not conflict with and was

2   not preempted by Section 211(o). *Id.* at 1071.

3        In sum, the Court (1) found that "the LCFS is a control or prohibition respecting a fuel or fuel

4   component, as defined by Section 211(c)(4)(B) of the [CAA]"; (2) found that Section 211(c)(4)(B) does

5   not insulate the LCFS from preemption or Commerce Clause challenges; and (3) declined to find that

6   the LCFS does not conflict with and is not preempted by Section 211(o) because neither party addressed

7   the appropriate standard of review for assessing that preemption challenge. *Id.* at 1070-71.[8]

8   **B.   *Rocky Mountain Ethanol.***

9        In *Rocky Mountain Ethanol*, this Court addressed the RMFU Plaintiffs' Commerce Clause

10  challenge to the ethanol provisions of the LCFS and its request for a preliminary injunction enjoining the

11  enforcement of those provisions. 843 F. Supp. 2d at 1078. The RMFU Plaintiffs asserted that the LCFS

12  violates the Commerce Clause because it:

13       (1) impermissibly discriminates against out-of-state corn ethanol; (2) impermissibly regulates
         commerce and the channels of interstate commerce; (3) excessively burdens interstate commerce
14       without producing local benefits; and (4) is preempted by [EISA].

15  *Id.*

16       First, the Court rejected Defendants' argument that the LCFS is insulated from Commerce

17  Clause challenges under Section 211(c)(4)(B) for the reasons outlined in *Rocky Mountain Preemption*.

18  *Id.* at 1084. The Court found that "the LCFS impermissibly discriminates [on its face] against out-of-

19  state corn ethanol and impermissibly regulates extraterritorially in violation of the dormant Commerce

20  Clause and its jurisprudence." *Id.* at 1078-79, 1090, 1093. Because of these findings, the Court did not

21  address the RMFU Plaintiffs' "arguments related to discriminatory effects or factors relevant to an

22  analysis pursuant to *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)," *id.* at 1079 n. 2. As in *Rocky*

23  *Mountain Ethanol*, the Court denied the RMFU Plaintiffs' motion for summary judgment on preemption

24  _____

25  [8] Whether the LCFS is preempted by federal law, as Plaintiffs assert, remains unresolved. *See RMFU*, 730 F.3d at 1107 ("We
    express no opinion on Plaintiffs' claim that the [LCFS] is preempted by the RFS. We also express no opinion on CARB's
26  claim that the savings clause in [EISA] precludes implied preemption by the RFS.").

grounds because the Court found that neither party had failed to set forth the appropriate standard of review for that claim. *Id.* at 1079, 1105. Finally, the Court granted the RMFU Plaintiffs' preliminary injunction motion and enjoined the enforcement of the LCFS during the pendency of this litigation. *Id.* at 1105.

**C.     *Rocky Mountain Crude.***

In *Rocky Mountain Crude*, this Court addressed the AMFU Plaintiffs' motion for summary judgment on their Commerce Clause challenge to the crude oil provisions of the LCFS. 2011 WL 6936368, at *1.[9] Although the AMFU Plaintiffs asserted in their complaint that the LCFS's crude oil provisions are preempted by federal law, they did not address that issue in their motion for summary judgment. *Id.* at n.2.

Like the LCFS's ethanol provisions, the crude oil provisions of the LCFS "regulate[] crude oil through the assignment of carbon intensity values." *Id.* at *5. The AMFU Plaintiffs argued that the crude oil provisions treat crude oil from California more favorably than crude oil from other states in two ways. *Id.* at *7.

> First, Plaintiffs argue that the LCFS discriminates against emerging crude sources of [high carbon intensity crude oil ("HCICO")] by treating them less favorably than HCICO from California. Second, the LCFS requires that all existing crude sources be assigned the same carbon intensity value even though, according to Defendants, HCICO from California has a higher carbon intensity than other low carbon intensity crude oils from Alaska and foreign countries.

*Id.*

First, for the reasons outlined in *Rocky Mountain Ethanol*, the Court rejected Defendants' argument that the crude oil provisions were not subject to a Commerce Clause challenge. *Id.* at *9. Second, the Court found that the crude oil provisions are not facially discriminatory. *Id.* at *12. But the Court found that "the LCFS discriminates against out-of-state and foreign crude oil while giving an economic advantage to in-state crude oil." *Id.* The Court therefore held that the crude oil provisions of

---

[9] The Ninth Circuit refers to the crude oil provisions as the "2011 Provisions." *See RMFU*, 730 F.3d at 1078.

the LCFS impermissibly "discriminate[] against interstate commerce by design and in practical effect." *Id.* at *14. The Court further found that the LCFS's goal could be adequately served by other, nondiscriminatory alternatives. *Id.* at *16. Accordingly, the Court concluded that the crude oil provisions of the LCFS violate the dormant Commerce Clause. *Id.* at *17.

**D.     Summary of the *RMFU* orders.**

The Court summarized the relevant findings and holdings of the *RMFU* orders as follows:

> In the first [of the three *RMFU* orders], this Court, *inter alia*, rejected the defendants' arguments that Section 211(c)(4)(B) of the Clean Air Act authorized the LCFS to remove it from both preemption and Commerce Clause scrutiny. In the second order, this Court, *inter alia*, found that the LCFS violated the dormant Commerce Clause in its treatment of ethanol. In addition, and based on this Court's conclusion that the LCFS violated the dormant Commerce Clause, this Court granted an injunction requested by the [RMFU] Plaintiffs, enjoining defendants from further enforcing the LCFS. In the third order, this Court, *inter alia*, found that the LCFS violates the dormant Commerce Clause in its treatment of crude oils.

*Rocky Mountain Farmers Union v. Goldstene*, Nos. 09-cv-2234, 10-cv-163-LJO-DLB, 2012 WL 217653, at *1 (E.D. Cal. Jan. 23, 2012). The Court entered judgment in the Plaintiffs' favor in *Rocky Mountain Ethanol* and *Rocky Mountain Crude* and certified those judgments for appeal under Fed. R. Civ. P. 54(b). *Id.*

Defendants timely appealed the *RMFU* orders. *Id.* Two weeks later, Defendants "moved to stay the judgments entered against them and to suspend the preliminary injunction pending appeal." *Id.* The Court denied both motions. *Id.* at *3.

**E.     *RMFU***

On appeal, the Ninth Circuit affirmed in part, reversed in part, vacated in part, and remanded the case to this Court. *RMFU*, 730 F.3d at 1107. The Ninth Circuit summarized its holdings as follows:

> The [LCFS's] ethanol provisions are not facially discriminatory, so we reverse that portion of the district court's decision and remand for entry of partial summary judgment in favor of CARB. We also reverse the district court's decision that the [LCFS] is an impermissible extraterritorial regulation and we direct that an order of partial summary judgment be entered in favor of CARB on those grounds. We remand the case for the district court to determine whether the ethanol provisions discriminate in purpose or effect and, if not, to apply the *Pike* balancing test.
>
> We affirm the district court's conclusion that the [LCFS's crude oil provisions] are not facially discriminatory, but we reverse its holding that [they] are discriminatory in purpose and effect, and we direct the district court to enter an order of partial summary judgment in favor of CARB

on those issues. We remand to the district court to apply the *Pike* balancing test to the [LCFS's crude oil provisions]. We affirm the district court's conclusion that Section 211(c)(4)(b) of the Clean Air Act does not insulate California from scrutiny under the dormant Commerce Clause. [Plaintiffs] contend[] that the preliminary injunction should be lifted if CARB prevails on the merits of the dormant Commerce Clause on which the district court based its injunction. We agree and remand to the district court with instructions to vacate the preliminary injunction. We express no opinion on Plaintiffs' claim that the [LCFS] is preempted by the RFS. We also express no opinion on CARB's claim that the savings clause in [EISA] precludes implied preemption by the RFS.

*Id.* at 1107. The Ninth Circuit therefore left unresolved whether (1) the LCFS's ethanol provisions discriminate purposefully or in effect; (2) whether the ethanol provisions or the crude oil provisions unduly burden interstate commerce under *Pike*; (3) whether the LCFS is preempted by the RFS; and (4) whether the LCFS is preempted by EISA. *See id.*; *see also* Doc. 303 at 9.

Plaintiffs unsuccessfully petitioned the Ninth Circuit for a rehearing en banc, and the parties unsuccessfully filed cross-petitions for a writ of certiorari from the U.S. Supreme Court. The case is now on remand before this Court.

**F.      Plaintiffs' Motion to Amend.**

The SAC challenges the original LCFS regulations, which went into effect on January 1, 2011 ("the 2011 provisions"). *See* SAC at ¶ 41; CCR § 95842. The LCFS's crude oil provisions were amended in 2012 ("the 2012 crude amendments")[10] during the pendency of this litigation and remain in effect. *See* CCR § 95486(b)(2)(A); Doc. 314-1 at ¶¶ 80-84. Plaintiffs move to amend the SAC under Fed. R. Civ. P. 15(a)(2) "in light of the amendments to the LCFS, and the proceedings and arguments by Defendants in the Ninth Circuit and Supreme Court." Doc. 314 at 5; *id.* at 2. Plaintiffs' proposed amended complaint makes two primary amendments to the SAC: "First . . . [Plaintiffs'] proposed amended complaint would affirmatively challenge the amended version of the LCFS because those provisions (and the original 2011 LCFS) are discriminatory and impermissibly extraterritorial in violation of the Constitution, including the dormant Commerce Clause." *Id.* at 5-6. Second, the proposed

---

[10] As Defendants point out, the amendments made to the LCFS in 2012 pertain to crude oil only. *See* Doc. 321 at 10; CCR § 95486(b)(2)(A).

10

1   amended complaint "would streamline the [SAC] by omitting its original claims based on '*Pike*

2   balancing' and federal preemption." *Id.* at 5-6.

3          Plaintiffs' proposed amendments to their challenge to the original LCFS would add additional

4   constitutional claims to the original LCFS. *See* Doc. 320 at 3-4. Specifically, Plaintiffs' amendments

5   would "expand the constitutional bases for challenging the LCFS's discrimination and impermissible

6   extraterritorial regulation, including the Import-Export Clause [of the U.S. Constitution] and principles

7   of interstate federalism embodied in the Federal structure of the United States Constitution." *Id.* at 9; *see*

8   *also* Doc. 314-1, Proposed Amended Complaint ("Prop. Compl."), at ¶¶ 4, 6, 96, 99, 104. Plaintiffs

9   assert they should be given leave to amend the SAC because their proposed amendments are made in

10  good faith and without undue delay and will not prejudice Defendants. Doc. 314 at 6.

11         Defendants partially oppose Plaintiffs' motion to amend. Defendants "do not oppose [Plaintiffs']

12  proposed amendments to the extent they concern the 2012 crude oil provisions." Doc. 317 at 12. "Nor

13  do Defendants oppose [Plaintiffs'] proposed amendments to drop their undue burden (*Pike*) and

14  preemption claims." *Id.*[11] "Defendants do, however, oppose leave to amend [Plaintiffs'] discrimination

15  and extraterritoriality claims against the LCFS as originally adopted." *Id.* at 6. Defendants assert that

16  "[t]he Ninth Circuit has already resolved those claims, with finality, and amendments to modify those

17  claims are barred by the doctrines of *res judicata* and law of the case." *Id.* Defendants further assert that

18  any amendments "with respect to the original LCFS regulation have been unduly delayed and would be

19  prejudicial to Defendants." *Id.* at 1. Thus, Defendants argue that Plaintiffs' motion to amend "should be

20  denied in so far as it attempts to amend challenges to provisions other than the 2012 crude oil provisions

21  in [17 CCR §] 95486(b)(2)(A)." *Id.*

22         Plaintiffs maintain that *res judicata* does not apply to the proposed amendments and the law of

23  the case does not bar them. Doc. 318 at 4-6. Plaintiffs further maintain that there is no undue delay and

24  their proposed amendments will not prejudice Defendants. *Id.* at 8.

25  _____

26  [11] Defendants also do not oppose Plaintiffs' proposed amendments to the extent they change certain Defendants. *See* Doc.
    317 at 7, n.8.

1   After the parties submitted their initial briefs on Plaintiffs' motion to amend (Docs. 314, 317,

2   318), the Court requested supplemental briefing on the issue of whether certain of Plaintiffs' proposed

3   amendments are barred by the law of the case doctrine, *see* Doc. 319 at 6, which the parties timely

4   submitted. Docs. 320, 321. Plaintiffs' motion to amend is now ripe for adjudication.

5   ## IV. **STANDARD OF DECISION**

6   Under Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so

7   requires." To determine whether to grant leave to amend, the Court considers five factors: "(1) bad faith;

8   (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the

9   plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003)

10  (citations omitted). "Futility alone can justify the denial of a motion for leave to amend," *id.*, and

11  prejudice to the opposing party "carries the greatest weight." *Eminence Capital LLC v. Aspeon, Inc.*, 316

12  F.3d 1048, 1052 (9th Cir. 2003). Delay alone, however, will not justify denying leave to amend. *DCD*

13  *Progs., Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *see also United States v. Webb*, 655 F.2d

14  977, 980 (9th Cir. 1981) ("The mere fact that an amendment is offered late in the case . . . is not enough

15  to bar it."). All inferences are drawn "in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*,

16  170 F.3d 877, 880 (9th Cir. 1999). "[T]he nonmoving party bears the burden of demonstrating why

17  leave to amend should not be granted." *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D.

18  Cal. 1989).

19  ## V. **DISCUSSION**

20  **A.    Whether *Res Judicata* Applies.**

21  Defendants argue that Plaintiffs' proposed amendments of Plaintiffs' discrimination and

22  extraterritorial claims concerning the original LCFS are barred by *res judicata*. Plaintiffs assert that *res*

23  *judicata* does not apply here for two reasons. First, Plaintiffs maintain that *res judicata* only applies in a

24  second, subsequent lawsuit, not on remand in a single suit. Doc. 318 at 4-5. Second, Plaintiffs claim that

25  *res judicata* applies only where a final judgment exists and there is no final judgment here because the

26  only judgments entered—this Court's judgments in the *RMFU* orders—were reversed on appeal. *Id.* at

5.

The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *In re Schimmels*, 127 F. 3d 875, 881 (9th Cir. 1997). The doctrine includes

> two distinct types of preclusion, claim preclusion and issue preclusion. Claim preclusion treats a judgment, once rendered, as full measure of relief to be accorded between the same parties on the same "claim" or "cause of action" . . . . The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding.

*Robi v. Five Platters, Inc.*, 838 F. 3d 318, 322 (9th Cir. 1988). *Res judicata* "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)

"The elements necessary to establish *res judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties." *Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 1047) (quoting *Tahoe Sierra*, 322 F.3d at 1077). To determine whether an identity of claims exists, the Ninth Circuit assesses:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the *two actions*; (3) whether the *two suits* involve infringement of the same right; and (4) whether the *two suits* arise out of the same transactional nexus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (emphasis added). Thus, "[t]he criteria for the application of *res judicata* . . . are that there be a final judgment, rendered on the merits *in a separate action*." *Valendica-Alvarez v. Gonzales*, 469 F.3d 1319, 1323-24 (9th Cir. 2006) (emphasis added). *Res judicata* therefore "applies in a situation where a *second action* is on the same cause of action and between the same parties as a *first action*." *Hansen & Rowland v. C.F. Lytle Co.*, 167 F.2d 998, 999 (9th Cir. 1948) (emphasis added). But *res judicata* "does not apply where a controversy on appeal had not been concluded and no second action is being brought, but where there has been a reversal and remand for further proceedings in the same litigation." *Id.*

The Court is unaware of—and Defendants do not provide—any authority suggesting that *res*

1 | *judicata* applies here, on remand after an appeal. *See* Doc. 317 at 15. In fact, *Headwaters*, 399 F.3d at

2 | 1052, the primary case on which Defendants rely to support their argument that the first element of *res*

3 | *judicata*—that there be an identity of claims—is satisfied here suggests otherwise. *See* Doc. 317 at 15.

4 | As Defendants point out, the Ninth Circuit held in that case that in assessing whether an identity of

5 | claims exist for *res judicata* purposes, the "'most important' criteria for that analysis" is "whether the

6 | *two suits* arise out of the same transactional nucleus of facts." *Id.* (quoting *Headwaters*, 399 F.3d at

7 | 1052) (emphasis added).

8 |      Because this case is the only one between the parties concerning the facts and issues presented,

9 | Defendants cannot establish that the first element of *res judicata* is satisfied here. Thus, the Court finds

10 | that *res judicata* does not apply. Accordingly, *res judicata* does not bar Plaintiffs' proposed

11 | amendments.

12 | **B.**    **Whether the Law of the Case Bars Plaintiffs' Contested Proposed Amendments.**

13 |      **1.**    **Law of the Case Doctrine.**

14 |      The law of the case doctrine generally precludes a court from "reconsidering an issue that

15 | already has been decided by the same court, or a higher court in the identical case." *United States v.*

16 | *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "The United States Supreme Court and the Ninth Circuit

17 | alike have recognized that an action brought following a reversal and remand for further proceedings in

18 | the same litigation is the same case for purposes of application of the law of the case doctrine." *Ischay v.*

19 | *Barnhart*, 383 F. Supp. 2d 1199, 1218 (C.D. Cal. 2005) (citing *Hartford Life Ins. Co. v. Blincoe*, 255

20 | U.S. 129, 136 (1921); *Hansen & Rowland v. C.F. Lytle Co.*, 167 F.2d 998, 998-99 (9th Cir.1948)).[12]

21 | "For the doctrine to apply, the issue in question must have been decided explicitly or by *necessary*

22 | *implication* in the previous disposition." *United States v. Lumni Nation*, 763 F.3d 1180, 1185 (9th Cir.

23 | 2014) (emphasis in original) (quoting *United States v. Lumni Indian Tribe*, 235 F.3d 443, 452 (9th Cir.

24 | 

25 | [12] The law of the case doctrine has three exceptions that may permit departure from the law of the case when: (1) the original decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial. *Old Person v.*

26 | *Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). No party suggests that any of these exceptions applies here.

1   2000)). "An argument is rejected by necessary implication when the holding stated or result reached is

2   inconsistent with the argument." *United States v. Jingles*, 682 F.3d 811, 819 (9th Cir. 2012) (quoting

3   *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005)).

4           **2.      Plaintiffs' Contested Proposed Amendments.[13]**

5           As discussed, Defendants only oppose Plaintiffs' proposed amendments concerning their claims

6   that the <u>original</u> LCFS impermissibly regulates extraterritorially and impermissibly discriminates against

7   interstate commerce. *See* Doc. 317 at 6, 14. Defendants assert that *RMFU* "resolved those claims, with

8   finality." *Id.* at 6.

9           Plaintiffs' proposed amended complaint alleges two causes of action. The first, entitled

10  "Impermissible Extraterritorial Regulation," alleges that "[t]he LCFS violates the United States

11  Constitution by directly regulating interstate and foreign commerce and purporting to regulate conduct

12  that occurs in other States and countries." Prop. Compl. at 15; *see also id.* at 17, ¶ 86. Plaintiffs assert

13  that the LCFS "directly regulated and continues to directly regulate interstate and foreign commerce and

14  extraterritorial conduct . . . outside of California." *Id.* at ¶ 5.

15          Embedded within the "Impermissible Extraterritorial Regulation" cause of action is Plaintiffs'

16  claim based not on the Commerce Clause but "upon principles of interstate federalism embodied in the

17  Federal structure of the United States Constitution." Plaintiffs allege that "[b]y regulating the 'fuel

18  pathway' of transportation fuels . . . the LCFS impermissibly penalizes producers and importers based

19  upon the manner in which their transportation fuels are produced in other States and countries," as well

20  as "the manner in which they move in interstate and foreign commerce." *Id.* at ¶ 87; *see also id.* at ¶ 41

21  ("By regulating the 'fuel pathway' . . . the LCFS directly regulates interstate commerce and conduct

22  occurring outside of California."). Plaintiffs thus allege that "[t]he LCFS regulates, on its face and in its

23  practical effect, the channels of interstate and foreign commerce and the use of these channels." *Id.* at ¶

24  _____

25  [13] The Court will refer to the claims and their underlying allegations that Defendants opposed as Plaintiffs' "contested proposed amendments." Defendants have not indicated with specificity all of the contested proposed amendments. The Court

26  has attempted to discern each discrete allegation in the proposed amended complaint that Defendants oppose.

1  91. Plaintiffs claim that no part of the LCFS "can be salvaged by severance because the LCFS is

2  designed, as a whole, to regulate interstate commerce directly." *Id.* at ¶ 69. In sum, Plaintiffs' first claim

3  alleges that Defendants are liable to Plaintiffs

4      because the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured
       by the Commerce Clause of the United States Constitution and principles of interstate federalism
5      embodied in the Federal structure of the United States Constitution.

6  *Id.* at ¶ 93. Plaintiffs refer to this claim as their "horizontal federalism claim." *See* Doc. 320 at 4.

7  Although the claim appears to implicate the Commerce Clause, Plaintiffs indicate that the claim is

8  independent from the Commerce Clause. *See* Doc. 320 at 4-5. Plaintiffs explain that "[t]he constitutional

9  prohibition on extraterritorial regulation is rooted in structural 'principles of interstate federalism

10 embodied in the Constitution.'" *Id.* at 4 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

11 286, 293 (1980)). "The basic principle . . . is similar to one recognized under the Commerce Clause: A

12 State may not apply its laws 'to commerce that takes place wholly outside of the State's borders." *Id.* at

13 5 (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)).

14      Plaintiffs' second claim, entitled "Impermissible Discrimination Against Interstate And Foreign

15 Commerce," *id.* at 16, alleges that "[t]he LCFS violates the Commerce Clause and the Import-Export

16 Clause of the United States Constitution by discriminating against interstate and foreign commerce." *Id.*

17 at ¶ 96; *see also id.* at ¶¶ 47-64 (section of allegations concerning "Discrimination Against Out-of-State

18 Fuels"). Plaintiffs assert that "the LCFS as promulgated and amended discriminates both on its face, and

19 as applied, against transportation fuels and fuel feedstocks imported from outside of California." *Id.* at ¶

20 6.

21      Plaintiffs allege that the "LCFS discriminates against fuels and fuel feedstocks produced outside

22 of California by burdening foreign and out-of-state fuels and fuel feedstocks while favoring fuels and

23 fuel feedstocks produced in-state." *Id.* at ¶ 97; *see also id.* at 9. Plaintiffs allege that the LCFS also

24 "burdens interstate and foreign commerce by financially penalizing providers who use these out-of-state

25 fuels and fuel feedstocks." *Id.* at ¶ 98. Plaintiffs claim that "[t]he discrimination inherent in the LCFS

26 was designed to provide a competitive advantage to local economic interest." *Id.* at ¶ 59; *see also id.* at ¶

6. In sum, Plaintiffs' second claim alleges that Defendants are liable to Plaintiffs because the LCFS deprives Plaintiffs' members of the rights, privileges, and immunities secured by the Import-Export Clause of the United States Constitution." *Id.* at ¶ 104.

In sum, although the proposed amended complaint is not entirely clear in its intended reach, Plaintiffs re-assert their claim that the ethanol and crude provisions in the original LCFS impermissibly regulate extraterritorially in violation of the Commerce Clause. Embedded within this claim is Plaintiffs' "horizontal federalism" claim. Plaintiffs also assert a claim that the LCFS impermissibly discriminates against interstate and foreign commerce in violation of the Commerce Clause and the Import-Export Clause.

### 3.   Summary of Plaintiffs' Proposed Amendments.

For clarity's sake, the Court briefly summarizes Plaintiffs' proposed amendments as follows:

#### a.   Plaintiffs Unopposed Proposed Amendments.

Defendants do not oppose the following proposed amendments:

- challenge the 2012 amendments to the LCFS's crude oil provisions;

- drop Plaintiffs' "*Pike* balancing" claim;

- drop Plaintiffs' federal preemption claims; and

- drop and change certain Defendants.[14]

*See* Doc. 317 at 7, n.8.

The Court finds no reason to deny Plaintiffs' request to make these unopposed amendments to the SAC. Accordingly, Plaintiffs' motion to amend is GRANTED to the extent that any further amended complaint contains amendments concerning the 2012 crude oil provisions of the LCFS and omits any claims concerning *Pike* balancing and preemption by federal law.

---

[14] Plaintiffs appear to drop certain Defendants, though they do not address the issue in their briefs. *See* Doc. 317 at 7, n.8. Plaintiffs are granted leave to amend to change and drop Defendants to the extent Defendants do not object. *See id.* Plaintiffs are also granted leave to amend to drop and change parties to the extent Defendants do not oppose any such amendments. *See id.* Defendants may object to any amendments to the parties in any further complaint within fourteen days of its filing.

**b.  Plaintiffs' Contested Proposed Amendments.**

Defendants oppose Plaintiffs' proposed amendments that assert

- the LCFS as originally adopted impermissibly discriminates against foreign and interstate commerce, either on its face or in purpose and effect, in violation of the Commerce Clause and/or the Import-Export Clause; and

- the LCFS as originally adopted impermissibly regulates extraterritorially in violation of the the Commerce Clause and/or principles of interstate federalism.

### 4.  Analysis

Defendants argue that the law of the case doctrine bars Plaintiffs' contested amendments. Doc. 317 at 17. Defendants assert that in *RMFU* the Ninth Circuit "explicitly decided [Plaintiffs'] discrimination and extraterritoriality claims, holding that the LCFS is not 'an impermissible extraterritorial regulation'" and that the "crude oil provisions were not discriminatory." *Id.* (quoting *RMFU*, 730 F.3d at 1107). Defendants thus assert that Plaintiffs' proposed amendments that rely on discrimination and extraterritoriality under the Commerce Clause, even those aspects that expand the bases for their discrimination and extraterritoriality claims, were already decided "by necessary implication" in *RMFU. Id.* at 18.

Plaintiffs do not dispute that the law of the case doctrine applies here, but they assert that it does not bar the contested amendments "because the Ninth Circuit did not decide the claims that [Plaintiffs] seek to add." Doc. 318 at 6. Plaintiffs argue that "[t]he proposed amendments here would add claims that the original LCFS (as well as the amended LCFS) violates 'principles of interstate federalism embodied in the Federal structure of the United States Constitution' and the 'Import-Export Clause' [of the U.S. Constitution]." *Id.* at 6-7 (quoting Prop. Compl. at ¶¶ 93, 104). Plaintiffs emphasize that "the Ninth Circuit considered only claims under the Commerce Clause" and "did not consider, much less decide, claims under any [other] constitutional provision." *Id.* at 7. Plaintiffs further assert that this Court can consider additional claims because *RMFU* "explicitly called for further consideration of other claims, including 'whether the ethanol provisions discriminate in purpose or effect.'" *Id.* (quoting

*RMFU*, 730 F.3d 1107).

### a. Impermissible Extraterritorial Regulation Claim.

The Court does not read *RMFU* as narrowly as Plaintiffs do. Disagreeing with this Court's holding that the LCFS regulates extraterritorial conduct, the Ninth Circuit held that the LCFS "does not base its treatment on a fuel's origin" and "regulates only the California market." *RMFU*, 730 F.3d at 1089, 1101. The Ninth Circuit explained that

> Firms in any location may elect to respond to the incentives provided by the Fuel Standard if they wish to gain market share in California, but no firm must meet a particular carbon intensity standard, and no jurisdiction need adopt a particular regulatory standard for its producers to gain access to California.

*Id.* The Ninth Circuit therefore held that the LCFS "has incidental effects on interstate commerce, but it does not control conduct wholly outside the state." *Id.* at 1106. Simply put, the Ninth Circuit held that the LCFS is not "an impermissible extraterritorial regulation." *Id.* at 1107. With respect to any extraterritoriality claims based upon the Commerce Clause against the original LCFS, such claims would clearly be barred by the law of the case, as the Ninth Circuit unequivocally has resolved the issue. *See id.*

But, Plaintiffs' Impermissible Extraterritorial Regulation cause of action also contains allegations premised on other constitutional principles, specifically, their "horizontal federalism" claim relies on "principles of interstate federalism." *See* Prop. Compl. at ¶¶ 91, 93. Plaintiffs claim that "[t]he basic principle" underlying their horizontal federalism claim "is similar to the one recognized under the Commerce Clause: A State may not apply its laws 'to commerce that takes place wholly outside of the State's borders,' . . . or seek 'to control commerce in other States.'" Doc. 320 at 5 (citations omitted). Simply stated, Plaintiffs' horizontal federalism claim asserts that the LCFS regulates extraterritorially in violation of "principles of interstate federalism." *See id.* at 4-5. Thus, Plaintiffs indicate: "the elements of [their horizontal] federalism claim would be similar to those underlying the claim of extraterritoriality under the Commerce Clause." *Id.* at 5. Plaintiffs assert, however, that their horizontal federalism claim is not barred by the law of the case because "the Ninth Circuit considered extraterritoriality only in the

1    context of the Commerce Clause, and thus did not actually decide a federalism claim." *Id.* at 5.

2        Plaintiffs' horizontal federalism claim nonetheless is premised on Plaintiffs' position that the

3    LCFS impermissibly regulates conduct wholly outside of California. *See, e.g.*, Prop. Compl. at 7 ("The

4    LCFS Regulates Interstate Commerce and Conduct Outside of California"), 15 (first claim for

5    "Impermissible Extraterritorial Regulation"), ¶ 86 ("The LCFS violates the United States Constitution

6    by directly regulating interstate and foreign commerce and purporting to regulate conduct that occurs in

7    other States and countries."); ¶ 88 ("The express purpose and practical effect of the LCFS is to control

8    commerce conducted in other States"); ¶ 89 ("By design and practical effect, the LCFS impermissibly

9    regulates conduct wholly outside of California"). To succeed on their extraterritorial regulation claim,

10   the Court necessarily would have to find that the LCFS regulates conduct outside of California. But the

11   Ninth Circuit explicitly held that the LCFS "regulates *only* the California market," *RMFU*, 730 F.3d at

12   1101 (emphasis added) and "does not control conduct wholly outside the state." *Id.* at 1106; *see also*

13   *Rocky Mountain Farmers Union v. Corey*, 740 F.3d 507, 509 (9th Cir. 2014) (Gould, J., concurring in

14   denial of rehearing en banc) ("[T]he dissent characterizes the LCFS as an extraterritorial regulation, and

15   argues that the majority's position to the contrary contravenes Supreme Court precedent. This is an

16   incorrect view of the law: California is free to regulate commerce *within* its borders even if it has an

17   ancillary goal of influencing the choices of actors in other states.") (emphasis in original) (citation

18   omitted); *id.* at 514 (Smith, J., dissenting from denial of rehearing en banc) ("The majority [in *RMFU*]

19   . . . concluded that the [LCFS] regulations do not have extraterritorial reach because they merely provide

20   incentives to out-of-state firms."). The Ninth Circuit found that because the LCFS "does not control

21   conduct wholly outside the state," it is not "an impermissible extraterritorial regulation." *RMFU*, 730

22   F.3d at 1106-07.

23       Although the Ninth Circuit considered whether the LCFS impermissibly regulates

24   extraterritorially under the Commerce Clause only, the Ninth Circuit's holding in *RMFU* that the LCFS

25   regulates *only* the California market resolves by necessary implication any claim premised on an

26   assertion that the LCFS regulates extraterritorially. That is, *RMFU* forecloses any claim that the LCFS is

an impermissible extraterritorial regulation, regardless of the basis for the claim, because any extraterritorial regulation claim necessarily is contingent on a finding that the LCFS regulates extraterritorially. Plaintiffs' proposed amendments concerning the alleged extraterritorial reach of the LCFS would require this Court to find that the LCFS regulates conduct outside of California, which directly conflicts with *RMFU*'s explicit holdings to the contrary, and this Court's duty to respect the decision of the Ninth Circuit. Accordingly, Plaintiffs' proposed extraterritorial amendments are barred by the law of the case doctrine. *See Lumni Nation*, 763 F.3d at 1185. The Court therefore DENIES Plaintiffs leave to amend to assert that the original LCFS is an impermissible extraterritorial regulation.

### b. <u>Impermissible Discrimination Against Interstate and Foreign Commerce Claim.</u>

The remaining contested claim alleges that the LCFS as originally adopted impermissibly discriminates against foreign and interstate commerce, either on its face or in purpose and effect, in violation of the Commerce Clause and/or the Import-Export Clause.

### (1) Discrimination Claims Premised on the Commerce Clause.

In general terms, Plaintiffs assert that the ethanol and crude oil provisions of the LCFS impermissibly discriminate against interstate commerce. *See* Prop. Compl. at ¶¶ 96, 104. Plaintiffs also assert that the ethanol and crude oil provisions of the LCFS discriminate against interstate commerce on their face and in practical effect. *See id.* at ¶¶ 6, 59, 63; *id.* at 12, 15.

To the extent Plaintiffs assert that the LCFS is facially discriminatory, *RMFU* resolved that issue. The Ninth Circuit explicitly held that the LCFS's "ethanol provisions are not facially discriminatory," and affirmed this Court's determination that the LCFS's crude oil provisions "are not facially discriminatory." *RMFU*, 730 F.3d at 1107. *RMFU* thus forecloses any challenge to the ethanol and crude oil provisions on the ground they are facially discriminatory. Accordingly, Plaintiffs' motion for leave to amend is DENIED to the extent Plaintiffs request leave to allege that the LCFS's ethanol and crude oil provisions are facially discriminatory. Those allegations are barred under the law of the case. *See Lumni Nation*, 763 F.3d at 1185.

*RMFU* resolved another aspect of Plaintiffs' discrimination challenge to the crude oil provisions. Although the Ninth Circuit affirmed this Court's "conclusion that the [crude oil provisions] are not facially discriminatory," the Ninth Circuit reversed this Court's holding that they "are discriminatory in purpose and effect" under the Commerce Clause. 730 F.3d at 1107. Accordingly, Plaintiffs' motion for leave to amend is DENIED to the extent Plaintiffs request leave to allege that the LCFS's crude oil provisions are discriminatory in purpose and effect under the Commerce Clause. Those allegations are barred under the law of the case.[15]

*RMFU*, however, did not resolve Plaintiffs' discrimination claims entirely. The Ninth Circuit did not determine whether the ethanol provisions discriminate in purpose or effect or whether they impermissibly burden interstate commerce under *Pike* because this Court did not reach the issues after finding that the ethanol provisions are facially discriminatory. *Id.*; *see also Rocky Mountain Ethanol*, 843 F. Supp. 2d 1079, n. 2. Accordingly, the Ninth Circuit remanded "the case [for this Court] . . . to determine whether the ethanol provisions discriminate in purpose or effect and, if not, to apply the Pike balancing test." *RMFU*, 730 F.3d at 1107. Thus, as Defendants acknowledge, the "Ninth Circuit . . . remanded for resolution of . . . Plaintiffs' claim that the LCFS discriminates purposefully and in effect against out-of-state ethanol." Doc. 303 at 9. Plaintiffs' claim regarding the alleged discriminatory purpose and effect of the LCFS's ethanol provisions are not barred by the law of the case, as that issue has not been decided by this Court or the Ninth Circuit.[16]

### (2)    Discrimination Claims Premised on the Import-Export Clause.

Plaintiffs' proposed discrimination claim asserts, in part, that the LCFS impermissibly discriminates against and burdens interstate commerce in violation of the Import-Export Clause. *See* Prop. Compl. at ¶¶ 6, 96, 99. Plaintiffs assert that the LCFS violates the Import-Export clause by

---

[15] Although the Ninth Circuit remanded the case to this Court to apply *Pike* balancing to the crude oil provisions, Plaintiffs appear to abandon that claim.

[16] As noted above, Plaintiffs appear to be abandoning their *Pike* challenges to both the crude oil and ethanol provisions of the LCFS. However, if desired, Plaintiffs are granted leave to amend those claims because the Ninth Circuit remanded the case to this Court to assess Plaintiffs' *Pike* challenges, if necessary. *RMFU*, 730 F.3d at 1107.

1  "financially penalizing providers who use . . . out-of-state fuels and fuel feedstocks," *id.* at ¶ 98, which

2  "provide[s] an unfair competitive advantage to local economic interests and . . . promote[s] the use of

3  California fuels in California." *Id.* at ¶ 101. Plaintiffs allege that the LCFS does so by "treat[ing]

4  chemically identical fuels and fuel feedstocks differently based, in part, on where they are produced

5  . . .[b]y assigning lower carbon intensities to California fuels and fuel feedstocks, and higher carbon

6  intensities to fuels and fuel feedstocks from outside California." *Id.* at ¶ 100.

7       Defendants argue that Plaintiffs' Import-Export Clause claim is barred for three primary reasons.

8  *See* Doc. 321 at 4-6. First, Defendants assert that the Import-Export Clause does not apply to the LCFS

9  because the LCFS is not an impermissible "exaction" under the Clause. *Id.* at 4-5. Second, Defendants

10  argue that Plaintiffs' Import-Export Clause claim is foreclosed by *RMFU*'s holdings, including its

11  holdings that LCFS "regulates only the California market," 730 F.3d at 1101, "does not discriminate

12  against out-of-state commerce," *id.* at 1093, and "does not base its treatment on a fuel's origin." *Id.* at

13  1089. Third, Defendants claim that the Import-Export Clause is not implicated by Plaintiffs' Import-

14  Export Clause claim to the extent it asserts the LCFS's regulation of Midwest ethanol violates the

15  Clause because (1) the Clause pertains only to foreign commerce, not interstate commerce and (2)

16  Plaintiffs previously argued that their "discrimination and extraterritorial claims do not turn on whether

17  or not the Midwest ethanol industry will suffer economic harm." Doc. 321 at 6-7.

18       **a.**     **Import-Export Clause Standards.**

19       The Import-Export Clause, U.S. Const., Art. I, § 10, cl. 2, reads in relevant part: "No State shall,

20  without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports." "The founding

21  fathers sought to limit state power to tax foreign commerce by the absolute proscription announced in

22  [the Import-Export Clause]." *Western Oil & Gas Ass'n v. Cory*, 726 F.2d 1340, 1345 (9th Cir. 1984),

23  *aff'd*, 471 U.S. 81 (1985) (per curiam); *see also Farmers' Rice Coop. v. Cnty. of Yolo*, 14 Cal.3d 616,

24  620 (1975) ("The export-import clause imposes on all states an absolute prohibition against taxing

25  exports without the consent of Congress.").

26       Accordingly, the focus of an Import-Export Clause challenge is whether "the tax sought to be

imposed is an "Impost or Duty" as contemplated by the Clause. *Limbach v. Hooven & Allison Co.*, 466 U.S. 353, 360 (1983) (citations omitted). "The term 'Impost or Duty' [in the Import-Export Clause] is not self-defining, however, and not every state assessment that burdens foreign commerce is prohibited by the Clause." *Western Oil*, 726 F.2d at 1345; Imposts and duties, however, "are essentially taxes on the commercial privilege of bringing goods into a country." *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 287 (1976); *see also Auto Cargo, Inc. v. Miami Dade Cnty.*, 237 F.3d 1289, 1292 (11th Cir. 2001) ("[D]uties and imposts are indisputably taxes"); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 640 (1997) (Thomas, J., dissenting) ("*See, e.g.*, The Federalist No. 12 (A. Hamilton) (distinguishing direct taxes, such as property taxes, from indirect taxes, such as imposts, duties, and excises"). Thus, "[t]he Import-Export Clause clearly prohibits state taxation based on the foreign origin of the imported goods." *Michelin*, 423 U.S. at 287; *see also Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 900 (7th Cir. 2009) ("Article I, § 10, cl. 2 of the Constitution forbids a state to tax imports or exports").

As such, Import-Export Clause challenges generally have been brought against State taxes. *See, e.g.*, *Dep't of Revenue of State of Wash. v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 751 (1978) ("In *Michelin* . . . [t]he Court surveyed the history and purposes of the Import-Export Clause to determine, for the first time, which *taxes* fell within the absolute ban on 'Impost or Duties.'") (emphasis added). "Although duties and imposts are indisputably taxes, the Supreme Court has interpreted the Import–Export Clause to permit states to impose 'generally applicable, nondiscriminatory taxes even if those taxes fall on imports or exports.'" *Auto Cargo*, 237 F.3d at 1293 (quoting *United States v. Int'l Bus. Mach. Corp.*, 517 U.S. 843, 852 (1996) ("*IBM*")); *see also IBM*, 517 U.S. at 857 ("[W]e also recognized that the Import-Export Clause is not written in terms of a broad prohibition on every 'tax,' and that impost and duty are narrower terms than tax.") (quotation marks omitted). A state regulation, though not designated as a "tax," nonetheless may violate the Import-Export Clause because it constitutes an impermissible "exaction." *See, e.g.*, *Western Oil*, 726 F.2d at 1345-46 (holding California law imposing an "annual rental" fee for state-owned land violates Import-Export Clause as

24

1   impermissible "exaction");

2   **b.     Whether the Import-Export Clause Applies to the LCFS.**

3   Plaintiffs do not allege that the LCFS imposes any taxes, but nonetheless argue that the LCFS is

4   an impermissible "exaction" under the Import-Export Clause. *See generally* Prop. Compl. at ¶¶ 95-104;

5   *see also* Doc. 320 at 10 ("that the LCFS does not impose an express 'tax' on regulated parties does not

6   remove it from the prohibitions of the Import-Export Clause"). Plaintiffs assert that the LCFS "regulates

7   foreign commerce" by "imposing burdens on the import of foreign oil" and "discourag[ing] imports of

8   foreign oil and discriminat[ing] against foreign and out-of-state crude oils." Doc. 320 at 8-9; *see also*

9   Prop. Compl. at ¶ 96 ("The LCFS . . . burden[s] foreign and out-of-state fuels and fuel feedstocks").

10   Defendants assert, among other things, that the Import-Export Clause does not apply to the LCFS

11   because it does not impose an "exaction" on imports or exports. *See* Doc. 321 at 5. Defendants indicate

12   that Plaintiffs "cite[] no case, and Defendants are aware of none, applying the Import-Export Clause to

13   *optional* payments to *private parties*. Nor do[] [Plaintiffs] cite a single case treating the cost of

14   compliance [with a regulation, such as the LCFS] . . . as though such costs were taxes, duties, or

15   imposts." *Id.* (emphasis in original).

16   The Court cannot agree with Plaintiffs that it "should make no difference" that the alleged costs

17   imposed by the LCFS are paid to another party and not the State of California. Doc. 320 at 10. Every

18   Import-Export Clause case of which the Court is aware concerns a state-imposed, revenue-generating

19   tax.[17] This makes sense given the plain language of the Import-Export Clause, which provides that "the

---

[17] *See, e.g., Auto Cargo*, 237 F.3d at 1293 ("*R.J. Reynolds Tobacco Co. v. Durham County, North Carolina*, 479 U.S. 130, 152-55 (1986) (upholding the validity under the Import–Export Clause of North Carolina's ad valorem tax on imported tobacco); *Limbach v. Hooven & Allison Co.*, 466 U.S. 353 (1984) (upholding the constitutionality of an Ohio ad valorem personal property tax on imported fibers still in their original packages); *Itel Containers Int'l Corp. v. Huddleston*, 507 U.S. 60, 76–78 (1993) (upholding Tennessee's imposition of sales tax on the lease of cargo containers within the state for use in international shipping); *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.*, 900 F.2d 816, 819-21 (5th Cir.1990) (applying the Michelin policy analysis and striking down a direct state tax on jet fuel sold for export as violative of the Import–Export Clause)."); *see also Western Oil*, 726 F.2d at 1345-46 (holding that the challenged regulations, though not designated as a tax, "are a disguised revenue raising measure" that "exact a transit fee from the goods in question"); *IBM*, 517 U.S. at 858 (" . . . the assessment at issue in this case, which, by all accounts, remains a 'Tax'"); *id.* at 861 ("*Michelin* involved a tax on goods . . . . The tax in *Washington Stevedoring* burdened imports and exports"); *PTI, Inc. v. Philip Morris, Inc.*, 100 F. Supp. 2d 1179, 1203 (C.D. Cal. May 25, 2000); *JDS Realty Corp. v. Gov't of Virgin Islands*, 593 F. Supp. 199 (D.V.I. Aug. 24, 1984) (holding that an "excise tax" was "functionally an import duty [that] violates the Import/Export

net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States." U.S. Const., art. I, § 10, cl. 2. That provision of the Import-Export Clause contemplates that "Impost or Duties" result in revenue production; it would be meaningless if applied to a state regulation that results in no revenue for that state. The Court cannot find—and Plaintiffs do not provide—any authority that suggests that the Import-Export Clause is implicated by a state's regulatory scheme like the LCFS that does not exact any fee that results in revenue production for that state.[18]

As discussed, the LCFS does not impose any fees, costs, or taxes that the State of California collects. In the absence of any LCFS provision that could reasonably be construed as a tax, the Court finds as a matter of law that the LCFS does not implicate the Import-Export Clause. As such, Plaintiffs cannot state a claim predicated on their assertion that the LCFS, in either its original or amended form, violates the Import-Export Clause. Accordingly, the Court DENIES Plaintiffs' request for leave to amend to assert their Import-Export Clause claim because any such amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011) (affirming denial of motion for leave to amend because "leave to amend would be futile because the plaintiffs cannot state a plausible basis for relief").

## VI. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Plaintiffs' motion to amend their amended complaint (Doc. 313) is GRANTED IN PART and DENIED IN PART. The Court ORDERS that

1.     Plaintiffs' motion for leave to amend is DENIED to the extent Plaintiffs request leave to allege that the LCFS's ethanol and crude oil provisions are facially discriminatory;

2.     Plaintiffs' motion for leave to amend is DENIED to the extent any further complaint

---

Clause"), *vacated on other grounds*, 108 S.Ct. 687 (1988); *Sea-Land Servs., Inc. v. Municipality of San Juan*, 505 F. Supp. 533 (D.P.R. Sept. 18, 1980) (rejecting Import-Export Clause challenge to municipal license taxes).

[18] Plaintiffs' reference to *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994) is unavailing. As Plaintiffs note, the challenged state regulation in *Healy* imposed an "assessment" on out-of-state goods that were then placed into a fund and distributed to in-state dairy producers. 512 U.S. at 193-94; Doc. 320 at 10. Further, *Healy* concerned only a Commerce Clause challenge to that state regulation.

asserts that the LCFS is an impermissible extraterritorial regulation;

**3.**     Plaintiffs' motion for leave to amend is DENIED to the extent Plaintiffs request leave to allege that the LCFS's crude oil provisions are discriminatory in purpose and effect under the Commerce Clause;

**4.**     Plaintiffs' motion for leave to amend to add their Import-Export Clause claim is DENIED;

**5.**     Plaintiffs' motion for leave to amend to add their horizontal federalism claim is DENIED;

**6.**     Plaintiffs are granted leave to amend to add their uncontested proposed amendments[19];

**7.**     Plaintiffs shall file any further amended complaint on or before January 9, 2015.[20]

IT IS SO ORDERED.

Dated:   __**December 10, 2014**__           ____**/s/ Lawrence J. O'Neill**____
                                                                UNITED STATES DISTRICT JUDGE

---

[19] Although not entirely clear, the Court does not construe Defendants' arguments concerning undue delay and prejudice as applying to Plaintiffs' claims that the ethanol provisions of the LCFS discriminate in purpose or effect and are impermissible under *Pike*. *See* Doc. 317 at 6 ("[Plaintiffs] also seek[] leave to amend [their] complaint in order to expand the bases for its discrimination and extraterritoriality claims."); *but see* Doc. 321 at 2 ("The Ninth Circuit has already decided the issues that underlie [Plaintiffs'] extraterritoriality and discrimination claims, expanded or otherwise."). In any event, neither this Court nor the Ninth Circuit expressed any view on Plaintiffs' claims that the ethanol provisions of the LCFS impermissibly discriminate against interstate commerce and are invalid under *Pike*. As such, those claims have remained operative and Plaintiffs do not need leave to amend to continue to assert them.

[20] Due to the Court's finding that Plaintiffs' contested proposed amendments are barred, the Court need not address Defendants' argument that permitting those amendments would constitute undue delay and would prejudice Defendants. *See* Doc. 317 at 6.