KAMALA D. HARRIS
Attorney General of California
GAVIN G. MCCABE, State Bar No. 130864
Supervising Deputy Attorney General
MELINDA PILLING, STATE BAR NO. 274929
JONATHAN WIENER, State Bar No. 265006
M. ELAINE MECKENSTOCK, State Bar No. 268861
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0299
 Fax:  (510) 622-2272
 E-mail:  Elaine.Meckenstock@doj.ca.gov
*Attorneys for Defendants*
*Richard W. Corey, et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ROCKY MOUNTAIN FARMERS UNION,** *et al.,* | LEAD CASE NO.<br> 1:09-cv-02234-LJO-BAM |
| Plaintiffs, | *Consolidated With* Case No.<br> 1:10-cv-00163-LJO-BAM |
| v. | **DEFENDANTS' AND DEFENDANT-INTERVENORS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS RMFU PLAINTIFFS' THIRD AMENDED COMPLAINT (DOC. 374)** |
| **RICHARD W. COREY, in his official capacity as Executive Officer of the CALIFORNIA AIR RESOURCES BOARD,** *et al.,* | |
| Defendants**.** | Judge:        The Honorable Lawrence J. O'Neill<br>Hearing:     February 24, 2017, 8:30 AM<br>Courtroom:  Four |
| **and Related Consolidated Action** | Action Filed:  December 23, 2009 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................................... 2

      A.     The LCFS Regulations ................................................................................ 2

      B.     Summary of this Litigation to Date ........................................................... 3

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

    I.     RMFU'S PREEMPTION CLAIM (COUNTS I AND II) SHOULD BE DISMISSED .................................................................................................... 5

      A.     RMFU's Preemption Claim Fails as a Matter Of Statutory Construction ............................................................................................... 7

      B.     RMFU's Conflict Preemption Claim Fails Because EPA Sees No Conflict between EISA and State LCFS programs ................................... 12

      C.     Plaintiffs Have Not Alleged, and Cannot Allege, Facts that Could Support their Preemption Claim .............................................................. 13

          1.     RMFU's Allegations that EISA Guarantees a Market to Exempted Corn Ethanol Facilities Cannot Be Accepted as True ............................................................................................. 13

          2.     RMFU Has Not Alleged Any Facts to Support Its Claim that the LCFS Excludes Exempted Ethanol from California ............... 15

          3.     RMFU's Other Allegations Also Fail to Support a Claim upon which Relief Could Be Granted ........................................... 16

      D.     RMFU's Preemption Claim Also Fails Under the *Salerno* Rule For Facial Challenges .................................................................................... 18

    II.    RMFU'S DORMANT COMMERCE CLAUSE CLAIM (COUNTS III AND IV) SHOULD BE DISMISSED ..................................................... 20

      A.     RMFU's Claim of Extraterritorial Regulation Fails ............................... 20

      B.     Plaintiffs' Claim of Facial Discrimination Fails .................................... 21

      C.     RMFU's Claim of Purposeful Discrimination Fails ............................... 22

      D.     RMFU's Claim of Discriminatory Effects Fails ..................................... 23

      E.     RMFU's Claim of Undue Burdens under *Pike* Fails .............................. 24

    III.    RMFU'S "AS APPLIED" DORMANT COMMERCE CLAUSE CLAIMS (COUNT IV) SHOULD BE DISMISSED ................................................. 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AFPM v. O'Keeffe*
134 F. Supp. 3d 1270 (D. Or. 2015) ............................................................................... *passim*

*Am. Petroleum Inst. v. Jorling*
710 F. Supp. 421 (N.D. N.Y. 1989) ....................................................................................8

*Beaver v. Tarsadia Hotels*
816 F.3d 1170 (9th Cir. 2016)...........................................................................................10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...........................................................................................................13

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs*.
727 F.3d 917 (9th Cir. 2013).............................................................................................15

*California v. ARC Am. Corp.*
490 U.S. 93 (1989)...............................................................................................................9

*Center for Competitive Politics v. Harris*
784 F.3d 1307 (9th Cir. 2015)...........................................................................................19

*Cipollone v. Liggett Group, Inc.*
505 U.S. 504 (1992)...........................................................................................................10

*Compton v. Countrywide Fin. Corp.*
761 F.3d 1046 (9th Cir. 2014).............................................................................................5

*Engine Manufacturers Ass'n v. South Coast Air Quality Management District*
498 F.3d 1031 (9th Cir. 2007)...........................................................................................18

*English v. Gen. Elec. Co.*
469 U.S. 72 (1990).............................................................................................................11

*Exxon Mobil Corp. v. U.S. EPA*
217 F.3d 1246 (9th Cir. 2000).....................................................................................6, 9, 10

*Geier v. Am. Honda Motor Co.*
529 U.S. 861 (2000).............................................................................................................13

i

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Gilead Sciences Securities Litigation*
 536 F.3d. 1049 (9th Cir. 2008)......................................................................................5

*John Doe No. 1 v. Reed*
 561 U.S. 186 (2010).................................................................................................19, 20

*Ledezma-Galicia v. Holder*
 636 F.3d 1059 (9th Cir. 2010).....................................................................................11

*McClellan v. I-Flow Corp.*
 776 F.3d 1035 (9th Cir. 2015)......................................................................................7

*Minn. Auto. Dealers Ass'n v. Stine*
 2016 WL 5660420 (D. Minn. Sept. 29, 2016) .............................................................7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y. State Dept. of Env. Conservation*
 79 F.3d 1298 (2nd Cir. 1996).......................................................................................8

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
 682 F.3d 1144 (9th Cir. 2012)....................................................................................24

*Oxygenated Fuels Ass'n Inc. v. Davis*
 331 F.3d 665 ..............................................................................................................10

*Pike v. Bruce Church, Inc.*
 397 U.S. 137 (1970)..............................................................................................24, 25

*POET, LLC v. Cal. Air Resources Board*
 218 Cal. App. 4th 681 (2013)........................................................................................2

*Puente Arizona v. Arpaio*
 821 F.3d 1098 (9th Cir. 2016)................................................................................18, 19

*Rocky Mountain Farmers Union v. Corey*
 730 F.3d 1070 (9th Cir. 2013)............................................................................. *passim*

*Rocky Mountain Farmers Union v. Goldstene*
 2011 WL 6936368 (E.D. Cal. December 29, 2011)......................................................4

*Rocky Mountain Farmers Union v. Goldstene*
 843 F. Supp. 2d 1071 (E.D. Cal. 2011)....................................................................4, 19

*Sam Francis Foundation v. Christies, Inc.*
 784 F.3d 1320 (9th Cir. 2015).................................................................................20, 25

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Serv. Eng. Co. v. Emery*
  100 F.3d 659 (9th Cir. 1996)..................................................................................9

*United States v. Lummi Indian Tribe,*
  235 F.3d 443 (9th Cir. 2000)..................................................................................5

*United States v. Salerno*
  481 U.S. 739 (1987)........................................................................................7, 18

*Walgreen Co. v. Rullan*
  405 F.3d 50 (1st Cir. 2005) ...................................................................................25

*Williamson v. Mazda Motor of Am., Inc.*
  562 U.S. 323.................................................................................................10, 13

*Wyeth v. Levine*
  555 U.S. 555 (2009).........................................................................................6, 8

**STATUTES**

United States Code, title 42
  § 7416........................................................................................................9
  § 7543(a) ...................................................................................................10
  § 7545(c)(4)(B) .........................................................................................7, 9
  § 7545(o)(1) .......................................................................................6, 7, 8, 14, 17
  § 7545(o)(1)(H).............................................................................................3
  § 7545(o)(2)(A)(i) ......................................................................................6, 8
  § 7545(o)(2)(B) ...................................................................................5, 6, 13, 14
  § 7545(o)(12) ..............................................................................................10

California Health and Safety Code § 38501(a) ............................................................2

Pub. L. No. 110-140, § 204(b), 121 Stat. 1492 (2007) ................................................9

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................5

**OTHER AUTHORITIES**

153 Cong. Rec. E2631 (Dec. 18, 2007) ....................................................................14

153 Cong. Rec. E2665 (Dec. 28, 2007) ....................................................................14

153 Cong. Rec. H14430 (Dec. 6, 2007) .....................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

153 Cong. Rec. H14439 (Dec. 6, 2007)..................................................................................................14

153 Cong. Rec. H16651 (Dec. 18, 2007)...............................................................................................14

80 Fed. Reg. 33,100, 33,101 (June 10, 2015) .............................................................................13, 14, 15

California Code of Regulations, title 17
   § 95480.............................................................................................................................................2, 23
   § 95481(a)(20)......................................................................................................................................3
   § 95481(a)(49)......................................................................................................................................3
   § 95482(a) ...........................................................................................................................................18
   § 95484.............................................................................................................................................3, 16
   § 95484(b)............................................................................................................................................3
   § 95484(c)............................................................................................................................................3
   § 95485.................................................................................................................................................3
   § 95486(a)(1)........................................................................................................................................3
   § 95487(a) ............................................................................................................................................3

Defendants' & Defendant-Intervenors' Memorandum of Ps & As In Support Of Their Motion To Dismiss RMFU's
Amended Complaint (Doc. 374) (1:09-cv-02234-LJO-BAM)

**INTRODUCTION**

On June 24, 2016, Plaintiffs Rocky Mountain Farmers Union, et al. (collectively, "RMFU"), filed a Third Amended Complaint ("TAC") asserting four counts against the Low Carbon Fuel Standard ("LCFS") adopted by the California Air Resources Board ("ARB") in 2015. Doc. 374.[1] The first two counts allege that the LCFS is preempted by the Energy Independence and Security Act of 2007 ("EISA") and purport to assert "facial" (Count I) and "as-applied" (Count II) forms of this claim. *Id.* at ¶¶ 63-83. The third and fourth counts allege violations of the dormant Commerce Clause also in purportedly "facial" (Count III) and "as-applied" (Count IV) forms. *Id.* at ¶¶ 84-101. All of these claims should be dismissed.

RMFU's preemption claim fails as a matter of law. The EISA provision on which RMFU relies does nothing more than grant certain biofuel facilities an exemption from a requirement of a federal program. It says nothing about state law. And, elsewhere in EISA, Congress expressly indicated it did not intend to limit state regulatory efforts, including those undertaken under the Clean Air Act. The Ninth Circuit affirmed this Court's determination that the LCFS fits within the ambit of section 211(c)(4)(B) of the Clean Air Act, which expressly provides that California may adopt fuel-related emissions regulations "at any time." RMFU's preemption claim fails because the implicit exemption RMFU relies on does not override either EISA's savings clause or section 211(c)(4)(B)'s express recognition of California's authority to adopt an LCFS regulation.

RMFU's preemption claim also fails because it conflicts directly with the expert conclusion of the U.S. Environmental Protection Agency ("EPA")—the agency tasked with implementing EISA. EPA sees no conflict between its EISA program and state low carbon fuel standards and, indeed, views these programs as compatible. EPA's conclusion is entitled to deference, and RMFU has alleged no facts upon which this Court could conclude EPA was incorrect.

Indeed, RMFU has alleged no facts upon which this Court could reasonably draw the inferences RMFU posits—namely that EISA was intended to guarantee a market for corn ethanol produced by certain facilities and that the LCFS excludes those same corn ethanols from

---

[1] Citations to "Doc." refer to the ECF docket numbers for the lead case (1:09-cv-02234).

California's market.  Further, RMFU cannot plead that the LCFS is unconstitutional in all of its applications.  RMFU's preemption claim (Counts I and II) should be dismissed.

RMFU's dormant Commerce Clause claims (Counts III and IV) also fail.  Two of these claims—of extraterritorial regulation and facial discrimination—have already been resolved against RMFU by the Ninth Circuit, and Plaintiffs allege no facts that could produce a different result.  RMFU's claims of undue burden and of discrimination in purpose and effects also fail because RMFU's allegations do not distinguish these claims from ones the Ninth Circuit rejected.  RMFU's "as applied" dormant Commerce Clause claim (Count IV) fails for the additional reason that plaintiffs challenge no particular applications or subrules of the LCFS.

RMFU's Third Amended Complaint should be dismissed in its entirety and with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The LCFS Regulations

The LCFS is designed to reduce the average carbon intensity of transportation fuels used in California and to diversify California's fuels market with lower-carbon alternatives to petroleum-based fuels.  *See* Cal. Code Regs., tit. 17, § 95480.  The LCFS is a key part of California's efforts to reduce the greenhouse gas emissions that threaten California's "economic well-being, public health, natural resources, and … environment."  *See* Cal. Health & Saf. Code § 38501(a).

California's original LCFS regulation, adopted in 2009 and 2010, went into full effect in 2011 and was amended, primarily with respect to its crude oil provisions, in 2012.  The original LCFS (as amended in 2012) was repealed in 2015, in compliance with a determination by a California Court of Appeal that ARB made procedural errors in adopting it.  *See POET, LLC v. Cal. Air Resources Board*, 218 Cal. App. 4th 681 (2013); *see also* Defendants' Request for Judicial Notice ("RJN"), Exh. A at 4.  The new LCFS regulation, which is the subject of RMFU's third amended complaint, was adopted in 2015 and went into effect with 2016.  RJN, Exhs. A at 5. B.  Defendants refer to the now-repealed LCFS as "the original LCFS" and to the currently operative LCFS as either "the new LCFS" or, simply, "the LCFS."

The LCFS sets a declining, annual standard—called a carbon intensity standard—that transportation fuels sold for use in California must meet, on an average basis, each year.  Cal.

2

Code Regs., tit. 17, § 95484(b),(c).  The LCFS requires smaller reductions in the early years and greater reductions in later years, providing time for new, lower-carbon fuels to be developed and brought to market and, ultimately, reducing average carbon intensity by ten percent.  *See id.*

Under the LCFS, the carbon intensities of fuels are determined through a lifecycle analysis of greenhouse gas emissions—a scientific method that accounts for emissions from every stage in the "life" of a fuel, including its production, distribution and ultimate use in a vehicle.  Cal. Code Regs., tit. 17, § 95481(a)(20),(49) (definitions); *see also Rocky Mountain Farmers Union v. Corey* ("*RMFU*"), 730 F.3d 1070, 1081 (9th Cir. 2013).  Lifecycle analysis is the well-established method for accurately measuring and comparing the greenhouse gas emissions associated with various transportation fuels.  *See RMFU*, 730 F.3d at 1081-82; 42 U.S.C. § 7545(o)(1)(H).

When sold for use in California, fuels generate deficits or credits, respectively, depending on whether the fuel's carbon-intensity value is higher or lower than the standard for the year.  Cal. Code Regs., tit. 17, § 95486(b)(3).  Regulated parties—primarily refiners and fuel blenders—comply with the LCFS by having a zero or positive credit balance for each compliance period.  *Id.* § 95485(a),(b).  This system of credits and deficits, which also allows for banking and trading of credits, enforces the carbon intensity standard for each year on an average basis.  *Id.* §§ 95486(a)(1), (b); 95487(a).  Because the standard is enforced on this average, aggregate basis, the LCFS neither requires nor prohibits the sale of any particular fuel.  *See id.* § 95484.

**B.    Summary of this Litigation to Date**

Two cases challenging the original LCFS were filed in this Court.  Case No. 1:09-cv-02234 was filed by RMFU in December of 2009.  Case No. 1:10-cv-00163 was filed by the American Fuel and Petrochemical Manufacturers ("AFPM") Plaintiffs in February 2010.  Both sets of Plaintiffs alleged that the original LCFS discriminated against out-of-state fuels, regulated extraterritorially, and unduly burdened interstate commerce.  Both sets of Plaintiffs also alleged that the LCFS is preempted by EISA.  This Court consolidated the cases for purposes other than judgment and appeal.  Doc. 106.  The Conservation Law Foundation, Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club intervened in support of Defendants.

In November 2010, both sets of Plaintiffs moved for early, pre-discovery summary judgment. RMFU moved on all of its claims and also simultaneously moved for a preliminary injunction. AFPM moved for summary judgment on a subset of its claims, omitting its undue burden (*Pike*) claim under the dormant Commerce Clause and its preemption claim. Defendants cross-moved on a subset of Plaintiffs' claims. This Court concluded that the original LCFS did not facially discriminate against out-of-state crude oils but held that the original LCFS 1) facially discriminated against out-of-state ethanols; 2) regulated extraterritorially; and 3) discriminated in design and effect against out-of-state crude oils. *RMFU v. Goldstene*, 843 F. Supp. 2d 1071, 1089, 1093 (E.D. Cal. 2011); *RMFU v. Goldstene*, 2011 WL 6936368 at *12 (E.D. Cal. December 29, 2011). This Court did not reach Plaintiffs' other claims. Defendants appealed.

The Ninth Circuit affirmed this Court's conclusion that the original LCFS did not facially discriminate against out-of-state crude oils but reversed on Plaintiffs' other claims. *RMFU*, 730 F.3d at 1107. The Ninth Circuit also affirmed this court's determination that the LCFS is a control on fuel carbon within the meaning of section 211(c)(4)(B) of the Clean Air Act. *Id.* at 1106. Both sets of Plaintiffs filed petitions for rehearing en banc. Those petitions were denied. Both sets of Plaintiffs filed petitions for certiorari in the U.S. Supreme Court, and Defendants cross-petitioned. Those petitions were also denied. The cases were then remanded to this Court.

In September 2014, AFPM moved for leave to amend its complaint in order, *inter alia*, to challenge the 2012 amendments to the LCFS's crude oil provisions. Doc. 313. This Court granted that motion in part and denied it in part. Doc. 322. After AFPM filed its amended complaint, Doc. 324, Defendants moved for the entry of summary judgment as to some of AFPM's claims and to dismiss the remaining claims, Doc. 326. This Court granted Defendants' motion in part and denied it in part. Doc. 343.

Meanwhile, ARB began a rulemaking in December 2014 to adopt a new LCFS regulation. ARB completed that rulemaking in October 2015, and California's Office of Administrative Law approved the new regulation in November 2015. RJN, Exhs. A, B. The original LCFS (as amended in 2012) was repealed. The new LCFS took effect at the start of 2016. RJN, Exhs. A, B.

4

Both sets of Plaintiffs sought leave to amend their complaints to challenge the new LCFS regulation. Docs. 355, 358. On June 15, 2016, this Court granted both motions, except that it held that Growth Energy is the only RMFU Plaintiff with standing to bring as-applied challenges. Doc. 370 at 10:7-9. Both sets of Plaintiffs filed their amended complaints on June 24, 2016.

Defendants now move to dismiss RMFU's Third Amended Complaint.[2]

**LEGAL STANDARD**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Compton v. Countrywide Fin. Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, the court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (internal quotations omitted).

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case" whether "the issue in question" was "decided explicitly or by necessary implication." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

**ARGUMENT**

**I.    RMFU'S PREEMPTION CLAIM (COUNTS I AND II) SHOULD BE DISMISSED**

RMFU alleges that the LCFS regulation is preempted by EISA. TAC at ¶¶ 66-75. EISA revised the federal Renewable Fuel Standard ("RFS"), a program administered by EPA. EISA and the RFS program recognize four categories of renewable fuel and set minimum volumes that must be sold each year. 42 U.S.C. § 7545(o)(2)(B). The volume mandates for the specific categories—"advanced biofuel," "cellulosic biofuel," and "biomass-based diesel"—are nested within the overall volume mandate for the more general category of "renewable fuel," meaning

---

[2] Defendants also move for judgment on the pleadings and to dismiss AFPM's complaint.

that if a fuel counts toward the mandate for a specific category, it automatically counts toward the general "renewable fuel" mandate as well. *See id.* § 7545(o)(2)(B)(i)(II),(III),(IV).

A renewable fuel qualifies for one or more of the categories based, in large part, on how much the fuel reduces lifecycle greenhouse gas emissions. *Id.* § 7545(o)(1)(B),(C),(D),(E). For example, to qualify for the general "renewable fuel" category, a fuel must "achieve[] at least a 20 percent reduction in lifecycle greenhouse gas emissions." *Id.* § 7545(o)(2)(A)(i). The three specific categories—"advanced biofuel," "cellulosic biofuel," and "biomass-based diesel"— require greater reductions. *See id.* § 7545(o)(1)(B),(D),(E).

To qualify for the RFS program at all, then, a fuel must achieve at least a 20 percent reduction in lifecycle greenhouse gas emissions. However, this requirement applies only to "renewable fuel produced from new facilities that commence construction after December 19, 2007." *Id.* § 7545(o)(2)(A)(i). Accordingly, renewable fuel facilities that were already built or under construction on December 19, 2007 are exempt from the 20 percent reduction requirement. This exemption applies only as to the general "renewable fuel" category. *See id.* To qualify for the other, specific categories, a fuel would have to, among other things, meet more stringent emission reduction requirements. *See id.*

RMFU claims that EISA's exemption for already-built or under-construction facilities preempts any and all state regulations concerning "the sale of ethanol products based on the[ir] level of GHG emissions." TAC at ¶ 69. This claim must be analyzed against the backdrop of the presumption against preemption. "In all pre-emption cases, and particularly in those in which Congress has legislated … in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation omitted). Air pollution regulation is a field which States have traditionally occupied, and the presumption against preemption is inarguably applicable here. *See Exxon Mobil Corp. v. U.S. EPA*, 217 F.3d 1246, 1255 (9th Cir. 2000); *see also RMFU*, 730 F.3d at 1079 (viewing LCFS as continuing California's "tradition of leadership" in this field).

6

"This presumption against preemption applies … to conflict preemption" claims, of the kind RMFU brings here.[3] *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015).

As discussed below, RMFU's preemption claim fails as a matter of law because it is inconsistent with the relevant statutory text and because the agency tasked with implementing EISA has expressly found no conflict between its program and state low carbon fuel standards. Notably, district courts in Oregon and Minnesota have recently dismissed similar claims that EISA and RFS preempt state law, including a claim virtually identical to the one here. *See AFPM v. O'Keeffe*, 134 F. Supp. 3d 1270, 1287-89 (D. Or. 2015); *Minn. Auto. Dealers Ass'n v. Stine*, 2016 WL 5660420 (No. CV 15-2045) (D. Minn. Sept. 29, 2016). Further, RMFU's factual allegations are insufficient to state a claim upon which relief could be granted. RMFU's "facial" claim fails for the additional reason that RMFU has not alleged, and cannot allege, that *all* applications of the LCFS are preempted. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

**A.   RMFU's Preemption Claim Fails as a Matter of Statutory Construction**

RMFU's preemption claim—in both its purported "facial" and "as applied" forms—fails as a matter of law. As this Court and the Ninth Circuit held, the original LCFS regulation was "a control respecting a fuel or fuel additive and was enacted for the purpose of emissions control." *RMFU,* 730 F.3d at 1106 (internal quotation omitted). It thus fell "within [the preemption] exemption" established in section 211(c)(4)(B) of the Clean Air Act. *Id.* That section provides that California "may at any time prescribe and enforce, for the purpose of motor vehicle emission control, a control or prohibition respecting any fuel or fuel additive." 42 U.S.C. § 7545(c)(4)(B). In other words, the original LCFS regulation was the very kind of regulation Congress intended California to be able to adopt "at any time."

This conclusion is equally applicable to the new LCFS. RMFU claims the new LCFS is simply an "amended" version of the original (TAC at ¶ 37) and attempts to rely on materials from the original LCFS's rulemaking to challenge the new regulation (*e.g.,* TAC at ¶¶ 52, 53). RMFU has alleged no basis—and, indeed, there is none—on which to differentiate the two regulations

---

[3] RMFU's complaint does not remotely suggest express or field preemption.

7

for section 211(c)(4)(B) purposes.  Both the original and new LCFS regulations set average carbon-intensity standards for transportation fuels sold for use in California.  Both regulations set those standards, and determine the carbon intensities of individual fuels, using lifecycle analysis.  Both are "control[s] respecting a fuel or fuel additive and [were] enacted for the purpose of emissions control." *RMFU*, 730 F.3d at 1106.  Accordingly, both are the kind of regulations Congress contemplated in section 211(c)(4)(B)—the kind California may adopt "at any time."

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth*, 555 U.S. at 565 (internal quotation omitted).  Congress' intent in section 211(c)(4)(B) could not be clearer.  Congress's use of capacious phrases like "at any time" and the absence of any limits on the types of pollution California could control or on the types of controls California could adopt conveys the intent that California remain free to regulate fuel-related vehicle emissions. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y. State Dept. of Env. Conservation*, 79 F.3d 1298, 1302 (2nd Cir. 1996) ("California is exempt from federal preemption [with regard to] fuel standards…."); *Am. Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 425 (N.D. N.Y. 1989) (describing section 211(c)(4)(B) as "grant[ing] California a special waiver").

For RMFU to prevail on its preemption claim, then, it would have to demonstrate that Congress intended EISA's exemption for already-built and under-construction facilities to override not only California's core police power to protect its citizens (and the presumption against preemption that accompanies it) but also Congress' express recognition of California's authority to "prescribe and enforce" a control like the LCFS "at any time." *See* 42 U.S.C. § 7545(c)(4)(B).  RMFU cannot establish this for several reasons.

For one thing, the provision on which RMFU relies—42 U.S.C. § 7545(o)(2)(A)(i)—says nothing about state regulations or preemption.  It provides only that "renewable fuel produced from new facilities that commence construction after December 19, 2007" must "achieve[] at least a 20 percent reduction in lifecycle greenhouse gas emissions compared to baseline lifecycle greenhouse gas emissions."  This language imposes a requirement—a 20 percent reduction of lifecycle emissions—that must be met in order to qualify for the program Congress was revising—the RFS.  This language also implicitly grants an exemption to already-built or under-

8

construction facilities.  That is all this language does—establish a requirement and then an implicit exemption from that requirement for a particular federal program.  A provision establishing federal program requirements (and exemptions) does not preempt state law, even where the state law implicates the same general subject matter.  *See California v. ARC Am. Corp.*, 490 U.S. 93, 103 (1989) (federal anti-trust statute precluding certain individuals from recovery did not preempt state anti-trust statute permitting recovery for same individuals)*; Serv. Eng. Co. v. Emery*, 100 F.3d 659, 661 (9th Cir. 1996) (holding that provision terminating rights under federal program, given specified conditions, did not terminate rights under related state program).

For another, in three statutory provisions, Congress expressly indicated its intent to preserve the very type of state action California took when it adopted the LCFS.  First, EISA contains a savings clause that it does <u>not</u> "supersed[e], or limit[], any more environmentally protective requirement under the Clean Air Act, or under any other provision of State or Federal law…." EISA, Pub. L. No. 110-140, § 204(b), 121 Stat. 1492 (2007).  By its reference to state law, this protection of regulatory authority expressly includes state authority, and the legislative history confirms this.  153 Cong. Rec. H14430 (Dec. 6, 2007) (see RJN Exh H) (Rep. Waxman remarks that the EISA "won't seize authority from the States to act on global warming.").  Subsection 211(o)(2)(A)(i) cannot, therefore, be read as superseding a more environmentally protective regulation adopted by California pursuant to two of the very authorities Congress expressly indicated it was not superseding or limiting—namely, the Clean Air Act and state law.

Second, the Clean Air Act's savings clause expressly provides that "nothing in this chapter [which includes the relevant portion of EISA] shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce … any standard or limitation respecting emissions of any air pollutants…."  42 U.S.C. § 7416 ("Retention of State Authority").[4]  This savings clause, and the one discussed above from EISA itself, reflect the care Congress has repeatedly taken <u>not</u> to preempt state authority in the regulation of air pollution.  *See Exxon Mobil Corp.*, 217 F.3d at 1254 (Clean Air Act "makes clear that the states retain the leading role in

---

[4] The limitations on the authority preserved by this savings clause are inapplicable here.

9

regulating matters of health and air quality"); *Oxygenated Fuels Ass'n Inc. v. Davis*, 331 F.3d 665, 670 ("The Clean Air Act generally seeks to preserve state authority.").  Indeed, the general intent not to preempt state authority over air pollution is underscored by the explicit and limited language Congress has used, in that Act, when it intended to preempt.  *See, e.g.,* 42 U.S.C. § 7543(a) ("No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part.").  Nothing in subsection 211(o)(2)(A)(i) indicates any intention to preempt or to override the savings clauses in the Clean Air Act and in EISA.  "'Just as courts may not find measures pre-empted in the absence of clear evidence that Congress so intended, so must they give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme.'"  *Exxon Mobil Corp v. EPA.*, 217 F.3d 1246, 1254 (9th Cir. 2000) (quoting *California v. Fed. Energy Reg. Comm'n*, 495 U.S. 490, 497 (1990)); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992).

Third, section 211(o)(12) provides that nothing in subsection (o) (the renewable fuels part of EISA) "shall affect or be construed … to expand or limit regulatory authority regarding carbon dioxide or any other greenhouse gas, for purposes of other provisions … of this chapter."  42 U.S.C. § 7545(o)(12).  Here, Congress expressly preserved the "regulatory authority regarding carbon dioxide or any other greenhouse gas" that is found in other provisions of the Clean Air Act ("this chapter"), including in section 211(c)(4)(B).  RMFU's preemption claim fails because Congress has expressly precluded RMFU's reading of subsection 211(o)(2)(A)(i) as preempting regulatory authority over greenhouse gas emissions established in other sections.

The express savings clauses discussed above establish consistent congressional intent to preserve California's authority to adopt an LCFS under its police power and under section 211(c)(4)(B).  "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them."  *Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) (internal quotation omitted); *see also Williamson v. Mazda Motor of Am., Inc.,* 562 U.S. 323, 335 ("We cannot reconcile

10

[conflict preemption] with a statutory saving clause that foresees the likelihood of a continued meaningful role for state … law."). Here, Congress has done more than expressly agree to tolerate tension; it has encouraged regulations like the LCFS.

Indeed, because the LCFS qualifies as a 211(c)(4)(B) regulation, RMFU's preemption claim boils down to an argument that Congress impliedly repealed section 211(c)(4)(B), at least with respect to lifecycle greenhouse gas emissions, when it adopted EISA. Setting aside that the savings clauses demonstrate that Congress did <u>not</u> intend to alter the special leadership role it assigned California under section 211(c)(4)(B), RMFU's implied repeal argument fails because "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1069 (9th Cir. 2010) (internal quotation omitted). "[W]hen two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Id.* (internal quotation omitted).

Here, there is no "clear and manifest" intent to repeal; indeed, the savings clauses indicate precisely the opposite. And the statutes here are plainly capable of co-existence. Section 211(c)(4)(B) speaks to California controls on fuel-related emissions. In contrast, subsection 211(o)(2)(A)(i) speaks solely to qualifications for fuels under the federal RFS program. There is no conflict in Congress granting an exemption from requirements <u>for a federal program,</u> while California retains its pre-existing authority, expressly recognized and exempted from federal preemption by section 211(c)(4)(B), to design state-law regulatory solutions to air pollution problems. "[T]he mere existence of a federal regulatory or enforcement scheme … does not by itself imply pre-emption." *English v. Gen. Elec. Co.*, 469 U.S. 72, 87 (1990). Indeed, the expert agency implementing EISA views RFS and state LCFSes as compatible (*see, infra*, Sec I.B), and such regulations have, in fact, co-existed since 2011. Notably, RMFU alleges no facts indicating an actual conflict has arisen. "The Court has observed repeatedly that pre-emption is ordinarily not to be implied absent an actual conflict." *English*, 496 U.S. at 90.

The LCFS is precisely the kind of regulation Congress intended California to be able to adopt, and nothing in EISA suggests any intent to change that. RMFU's preemption claim (Counts I and II) should be dismissed with prejudice.

11

**B.**     **RMFU's Conflict Preemption Claim Fails Because EPA Sees No Conflict Between EISA and State LCFS Programs**

The absence of any conflict here—let alone the kind of irreconcilable conflict necessary to find implied repeal—is underscored by EPA's express indications that it sees no conflict between EISA and state low carbon fuel standards.  Indeed, EPA views these programs as complementary.

In 2010, EPA was finalizing its adoption of the second version of the RFS program (sometimes called RFS2) in response to EISA.  During that rulemaking, a commenter asked that EPA "preempt state programs designed to address carbon content and lifecycle analysis of fuels." RJN, Exh. C at 13-14.  In response, EPA indicated that "[i]ssues associated with State LCFS programs … are not germane to the final RFS program" and that "where possible we have attempted to structure the RFS2 program so as to be compatible with existing State LCS [sic] programs…." *Id.* at 13-15.  In other words, EPA—the expert agency Congress tasked with implementing EISA—views its federal program and state LCFS programs as so independent of one another that the latter were not relevant to EPA's RFS2 rulemaking (undertaken in direct response to EISA).  EPA also views its own RFS2 program as "compatible with" state LCFSes.

When it made these statements, EPA fully understood the functional differences between the RFS2 program it was adopting and state low carbon fuel standards—namely that RFS2 mandates the sale of specified volumes of particular categories of fuels, whereas low carbon fuel standards establish carbon-intensity standards that apply across whatever volumes of fuel are sold. *Id.* at 7-1. ("While these [RFS2] thresholds do not constitute a specific control on greenhouse gases for transportation fuels (such as a low carbon fuel standard), they do require that the volume mandates be met ….").  EPA rejected any need to preempt state low carbon fuel standards with a thorough and expert understanding of the nature of the differences in the regulatory regimes.  To prevail in its claim of conflict, then, RMFU would need to show that EPA was wrong.  RMFU has not so alleged, and cannot so allege.

In fact, EPA recently confirmed that state programs, like the LCFS, are complementary to its RFS2 program.  In 2015, as part of its proposal of fuel volumes, EPA noted that the renewable fuels development has been lagging behind the goals Congress established in EISA (80 Fed. Reg,

12

33,100, 33,101, 33,102, 33,108 (June 10, 2015); and that "myriad efforts and initiatives at the regional and local level…" "complement[] and support[]" the federal government's efforts to encourage that development (*id.* at 33,103). In other words, complementary programs, like the LCFS, that share EISA's objective of encouraging the development of low-carbon alternative fuels may actually be necessary to the achievement of Congress' goals.

EPA unquestionably has "a thorough understanding of its own [RFS2 program] and its objectives," and, thus, is "uniquely qualified to comprehend the likely impact of state requirements." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (internal quotation omitted); *see also Williamson*, 562 U.S at 336 (rejecting conflict preemption theory where agency's "consistently held interpretive views" indicated no conflict); *Oxygenated Fuels*, 331 F.3d at 673 (recognizing "deference to the agency's determination"). EPA's conclusions are entitled to deference here, and RMFU's preemption claim fails because it directly conflicts with those conclusions. *See also O'Keeffe*, 134 F. Supp. 3d at 1288 (rejecting identical claim).

### C. Plaintiffs Have Not Alleged, and Cannot Allege, Facts that Could Support their Preemption Claim

As discussed above, RMFU's preemption claim fails as a matter of statutory construction and cannot be reconciled with the conclusions of the expert agency tasked with implementing EISA. In addition, RMFU's allegations fail to state a claim upon which relief could be granted.

#### 1. RMFU's Allegations that EISA Guarantees a Market to Exempted Corn Ethanol Facilities Cannot Be Accepted as True

RMFU alleges that conflict arises here because, in EISA, Congress intended to "guarantee[] a market for ethanol from then-existing facilities." TAC at ¶ 70. This conclusory statement is not a factual allegation and, thus, need not be accepted as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, RMFU's contention about congressional intent is entirely contradicted by EISA's plain text and legislative history, as well as by EPA's expert conclusions.

EISA establishes minimum volume mandates for fuels that qualify for one or more of the three specific categories—cellulosic biofuels, biomass-based diesels, and advanced biofuels. 42 U.S.C. § 7545(o)(2)(B)(II),(III),(IV). There is also an overall volume mandate for "renewable

13

fuels." *Id.* § 7545(o)(2)(B)(I). However, fuels that qualify for the three specific categories also count toward the general "renewable fuels" mandate. *Id.* § 7545(o)(2)(B)(II),(III),(IV); *see also* 80 Fed. Reg. 33,100, 33,103 (June 10, 2015) ("The cellulosic biofuel and [biodiesel] categories are nested within the advanced biofuel category, which is itself nested within the total renewable fuel category."). Thus," the entire "renewable fuel" mandate could be met by fuels that qualify for the specific categories, and, in fact, the only volume mandate for general "renewable fuels" is whatever volume might be leftover after accounting for the specific-category fuels. On its face, then, the statute does not guarantee a market for general "renewable fuels," as RMFU alleges.

Notably, corn ethanol was excluded by Congress from the three specific categories—the ones for which it established actual volume mandates. Corn ethanol, by definition, is not biodiesel and is not "derived from any cellulose, hemicellulose, or lignin," so corn ethanol cannot qualify as biomass-based diesel or cellulosic biofuel. 42 U.S.C. § 7545(o)(1)(D),(E). And Congress expressly excluded "ethanol derived from corn starch" from the definition of advanced biofuel. 42 U.S.C. § 7545(o)(1)(B). There is, thus, no volume mandate for corn ethanol, generally, let alone for corn ethanol from exempted facilities.

EISA's legislative history confirms this. Congress identified concerns about corn ethanol being "our primary renewable fuel." 153 Cong. Rec. E2665 (Dec. 28, 2007) (RJN, Exh. I) (statement of Rep. Dingell); *see also* 153 Cong. Rec. H16655 (Dec. 18, 2007) (RJN, Exh. J) (statement of Rep. Green) ("There is no shortage of literature detailing the negative environmental impacts of corn based ethanol, its questionable greenhouse gas reductions, its reduced fuel efficiency, and its effect on food and energy prices.") Accordingly, Congress viewed "[p]lacing a limit on the amount of corn ethanol eligible to be applied in meeting the RFS [as] a necessary step." 153 Cong. Rec. E2631 (Dec. 18, 2007) (RJN, Exh. K) (statement of Rep. Davis). As one member put it, "I am troubled that we are continuing to subsidize and ratchet up corn-based ethanol production." 153 Cong. Rec. H14439 (Dec. 6, 2007) (Exh. L) (statement of Rep. Stark). Thus, "this bill … directs future production toward advanced bio-fuels." *Id.*

EPA has also noted that "Congress envisioned the majority of growth over time to come from advanced biofuels," not conventional biofuels such as corn ethanol. 80 Fed. Reg. 33,100,

14

33,101 (June 10, 2015).  Put another way, again in EPA's words, "the purpose of the statute [is] to significantly increase the amount of renewable fuel used as transportation fuel over time, *particularly renewable fuels with the lowest lifecycle GHG emissions*."  *Id.* at 33,102.

There simply is no EISA-guaranteed market for corn ethanol, generally, let alone a guaranteed market for corn ethanol specifically produced by exempted facilities.  A conclusory allegation to the contrary, TAC ¶ 70, cannot be accepted as true and is insufficient to support RMFU's claim.  *See, e.g., Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013).

For these reasons, an Oregon district court rejected an identical claim about EISA—that it "'was enacted to ensure a continued market for ethanol from existing ethanol plants.'"  *O'Keeffe*, 134 F. Supp. 3d at 1287 (quoting plaintiffs' brief).  "Because section 211(o)(2)(A)(i) makes no mention of ensuring a market for then-existing facilities, the fact that Congress elected to exempt such facilities from the requirement that certain fuels achieve a 20% reduction in lifecycle GHG emissions does not confer upon them a preferred or dominant status."  *Id.* at 1288.

This court should likewise decline to accept RMFU's conclusory allegation that EISA "guarantee[d] a market for ethanol from then-existing facilities."  *See* TAC at ¶ 70.  Plaintiffs' preemption claim cannot stand without that conclusory and unsupported allegation.  Accordingly, Plaintiffs here, like the plaintiffs in the Oregon case, have failed to state a claim upon which relief could be granted, and their preemption claim (Counts I and II) should be dismissed.

**2.    RMFU Has Not Alleged Any Facts to Support its Claim that the LCFS Excludes Exempted Ethanol from California**

RMFU's other primary contention—that "[t]he LCFS … effectively excludes ethanol production facilities operated by the members of Growth Energy from participating in [California's] market for ethanol" (TAC at ¶ 68)— cannot support the preemption claim either.  This is not even an allegation that <u>exempted</u> ethanol is excluded from California, and, even if some exempted ethanol were excluded, it would not follow that the federal and state programs conflict because Congress certainly did not guarantee <u>each and every</u> exempted producer a market in California.  In addition, this allegation is entirely conclusory and cannot support the claim.

15

Significantly, RMFU fails to identify any exempted ethanol plants in their complaint and fails to provide any information about the carbon intensity values of ethanols produced by such plants. This is a crucial failing. *See O'Keeffe*, 134 F. Supp. 3d at 1289 (faulting plaintiffs' complaint for silence "as to the carbon intensities of the ethanols generated from these unspecified, exempted plants"). As noted by the Ninth Circuit, numerous corn ethanols achieved low carbon-intensity values under the original LCFS. *See RMFU*, 730 F.3d at 1082-84. RMFU pleads no facts suggesting this would be different under the new LCFS.[5] To survive a motion to dismiss, then, plaintiffs must plead facts, like specific carbon intensity values, that could, if true, show that relevant ethanols are excluded. RMFU has not done so. And, judicially noticeable facts illustrate that at least some exempted plants produce the very kind of low-carbon intensity ethanol that generates valuable credits under the LCFS. For example, an ethanol plant in Kansas that completed construction in 2001 has a carbon-intensity value of 56.56 (which would plainly generate credits under the carbon intensity standard for 2016 which is 96.50). RJN at ¶¶ 6, 7; Cal. Code Regs., tit. 17, § 95484. In addition, numerous exempted facilities have obtained "Efficient Producer" status under RFS, meaning they can demonstrate compliance with EISA's 20 percent reduction requirement. RJN at Exh. G. RMFU's conclusory allegations, which fail to identify specific plants or carbon-intensity values, cannot support a reasonable inference that exempted ethanols are excluded from California (which would not, regardless, establish conflict).

### 3. RMFU's Other Allegations Also Fail to Support a Claim upon which Relief Could Be Granted

In addition, RMFU's allegation that the LCFS "create[s] a different and conflicting set of incentives for ethanol producers from those adopted by Congress in the EISA" is flatly contradicted by the statutory text, legislative history, and EPA's expert conclusions. As discussed above, Congress intended to incentivize the development and production of renewable fuels with lower lifecycle greenhouse gas emissions. That is why Congress defined three specific categories of renewable fuel based on their ability to reduce lifecycle greenhouse gas emissions by at least

---

[5] ARB has been re-calculating individualized values obtained under the original regulation for re-certification and use under the new one. *See* RJN, Exh. E.

16

50 percent. *See, e.g.,* 42. U.S.C. § 7545(o)(1)(D). That is also why Congress created minimum volume mandates only for those three categories,[6] and allowed renewable fuels that could, generally, show at least a 20 percent reduction in emissions to fill only that part of the overall mandate <u>not</u> filled by the specific categories with lower emissions. *See, supra*, Sec. I.C.1. The LCFS has the same objective—to encourage the development and production of alternative fuels with lower lifecycle greenhouse gas emissions. *See, e.g.,* RJN, Exh. D at ES-2; *see also RMFU*, 730 F.3d at 1080 ("[T]he Fuel Standard is intended to spur the development and production of low-carbon fuels."). RMFU has alleged no facts that, if proven, could establish conflicting objectives here, and its conclusory assertion of that conflict is insufficient to support its claim.[7]

Further, RMFU's allegation that "federal regulations may not 'restrict' geographic areas in which renewable fuels including ethanol from exempt production facilities may be used" is irrelevant to a preemption claim. *See* TAC at ¶ 74. As RMFU itself alleges, these are limitations on <u>federal</u> regulations and have no bearing on the LCFS. *See O'Keeffe*, 134 F. Supp. 3d at 1288 ("The Oregon Program is also not an EPA regulation, such that the anti-geographic restriction provision embodied in section 211(o)(2)(A)(iii) is not implicated."). Section 211(o)(2)(A)(iii) "speak[s] only to EPA's ability to issue regulations" and has no bearing on state authority. *Id.* (internal quotation omitted).

Finally, RMFU's allegations that the LCFS "interferes with the EPA's discretion under EISA to adjust the percent reductions in lifecycle greenhouse gas emissions standards…, as well as the EPA's discretion to waive such requirements altogether…." also cannot be presumed to be true. As discussed above, EPA itself has found no conflict between its program and state low carbon fuel standards. *See, supra*, Sec. I.B. RMFU's conclusory allegations to the contrary do not overcome EPA's expert and consistent conclusions. Further, if EPA decides in the future to

---

[6] One of the main, recognized "advanced biofuels" is sugarcane ethanol, a fuel primarily produced in Brazil. *See* 42 U.S.C. § 7545(o)(1)(B)(ii). This flatly contradicts the conflict Plaintiffs' allege over "importation of foreign feedstocks." *See* TAC at ¶ 75.

[7] Plaintiffs' allegations regarding "the previous version of the LCFS" (TAC at ¶ 71) are irrelevant here because Plaintiffs challenge only the new LCFS (TAC at ¶ 37). In any event, these allegations suggest that LCFS regulations are designed to "help spur innovation" in alternative fuels, an objective entirely consistent with Congress's intent in EISA.

17

exercise the discretion RMFU asserts it has over the RFS program, the LCFS will pose no obstacle to EPA action. The RFS2 program that EPA administers is a separate and distinct (if compatible) program from the LCFS, as EPA itself has recognized.

RMFU has failed to allege any actual facts that could, if true, support its preemption claim, and RMFU's conclusory allegations are directly controverted by the statute itself as well as by judicially noticeable facts. For this reason, and because RMFU's claim fails as a matter of statutory construction and expert agency interpretation (as discussed in sections I.A and I.B), RMFU's preemption claim (Counts I and II) should be dismissed with prejudice.

**D.      RMFU's Preemption Claim Also Fails Under the *Salerno* Rule for Facial Challenges**

Even if RMFU could state a claim upon which relief might be granted, its preemption claim fails for the additional reason that RMFU has not alleged, and cannot allege, that all applications of the LCFS, or one of its provisions, are preempted. *United States v. Salerno*, 481 U.S. at 746, "instructs that to succeed on a facial challenge the plaintiff must show that no set of circumstances exists under which the Act would be valid." This rule applies to preemption claims, including conflict preemption claims. *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016). In its preemption claim, RMFU challenges only the application of the LCFS to EISA-exempted corn ethanol plants. TAC at ¶ 67. But the LCFS applies to all transportation fuels sold in California, including non-exempt corn ethanols, petroleum-based gasoline and diesel, biodiesel, renewable diesel, and more. Cal. Code Regs., tit. 17, § 95482(a). Thus, there are many, many applications of the LCFS that are not preempted, even if RMFU's preemption theory were correct (and it is not, as discussed above). Accordingly, RMFU's "facial" preemption claim fails.

RMFU may argue that *Engine Manufacturers Association v. South Coast Air Quality Management District*, 498 F.3d 1031 (9th Cir. 2007) requires a different result. That case indicates that "*Salerno* does not require a plaintiff to show that every provision within a particular multifaceted enactment is invalid." *Id.* at 1049. But that application of *Salerno* is only triggered where plaintiffs challenge a particular provision. *Id.* Under those circumstances, "*Salerno* requires the plaintiff to show that there can be no valid application of [the] particular challenged

18

provision." *Id.* Here, RMFU does not identify a particular provision of the LCFS it claims is preempted. Rather, RMFU challenges the use of lifecycle analysis and the establishment of average, lifecycle-based carbon intensity standards. *See* TAC at ¶¶ 63-76. These aspects of the LCFS are not localized to a single regulatory provision, unlike the Fleet Rules considered in *Engine Manufacturers Association*.[8] *See Engine Mfrs. Ass'n*, 498 F.3d at 1049 ("Each Fleet Rule contains multiple provisions, placing restrictions of specific lists of public or private entities."). Notably, RMFU does not allege there are severable provisions of the LCFS that are preempted. TAC at ¶ 77. Because RMFU does not challenge a particular provision of the LCFS, the standard *Salerno* rule applies. And RMFU's "facial" preemption claim fails because, even if Plaintiffs were correct about ethanols produced by exempted facilities, the LCFS has numerous other, constitutional applications. *See Puente Arizona*, 821 F.3d at 1101.

The *Salerno* rule also bars RMFU's "as applied" preemption claim (Count II). RMFU must satisfy the *Salerno* rule for that claim, despite its "as applied" label, because the "claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). RMFU alleges that the "portions of the LCFS regulation that are preempted by federal law on an as-applied basis are not severable" and seeks to enjoin ARB "from implementing or enforcing the LCFS regulation" in its entirety—a remedy that would extend well beyond Plaintiffs. *See* TAC at ¶ 82, p. 21:24-26. Further, even if RMFU sought an injunction limited to exempted ethanol facilities, that relief would still extend beyond these Plaintiffs because Growth Energy does not allege that all exempted facilities are members. RMFU "must therefore satisfy our standards for a facial challenge…." *John Doe No. 1*, 561 U.S. at 194; *see also Center for Competitive Politics v. Harris*, 784 F.3d 1307, 1314 (9th Cir. 2015).

In sum, RMFU's preemption claim fails as a matter of statutory construction and is flatly contradicted by the expert judgment of the agency implementing the statute, as well as by

---

[8] For this reason, this Court need not "first determine whether the LCFS is a regulation made up of multiple provisions or whether it is a single, unseverable provision." *RMFU v. Goldstene,* 843 F. Supp. 2d at 1067. Rather, the Court must ascertain whether Plaintiffs challenge a particular provision, and they do not. Accordingly, this Court should follow *Puente Arizona* and dismiss Plaintiffs' claim because the LCFS is "not preempted in all applications." *Puente Arizona*, 821 F.3d at 1101.

19

judicially noticeable facts.  RMFU has also failed to allege any actual facts which could support this claim.  And, finally, RMFU's preemption claim cannot satisfy the *Salerno* rule.  RMFU's preemption claim (Counts I and II) should be dismissed with prejudice.

## II.   RMFU's Dormant Commerce Clause Claim (Counts III and IV) Should Be Dismissed

RMFU alleges that the LCFS violates the dormant Commerce Clause by regulating extraterritorially (TAC at ¶ 90), by discriminating against Midwest corn ethanol (*id.* at ¶ 87), and by unduly burdening "interstate commerce in corn ethanol (*id.* at ¶ 92).  RMFU has failed to state a claim upon which relief could be granted, under any dormant Commerce Clause theory.

### A.   RMFU's Claim of Extraterritorial Regulation Fails

Although RMFU now challenges the operative LCFS regulation—the new one adopted by ARB in 2015, its claim that the LCFS regulates extraterritorially is identical to that claim as rejected by the Ninth Circuit in *RMFU*.  RMFU's claim fails under both law of the case and binding precedent.

RMFU asserts, as it did before, that the LCFS regulates extraterritorially through its "approach to GHG emissions (*i.e.*, considering the lifecycle of a fuel from 'seed-to-wheel,'…)." TAC at ¶ 53; *see also id.* at ¶¶ 88, 90.  RMFU itself asserts that "[n]othing in the amended LCFS [the new regulation adopted in 2015] changes this underlying reality."  *Id.* at ¶ 53.  In other words, RMFU has not altered their allegations concerning extraterritoriality since the Ninth Circuit rejected this claim, holding that the LCFS does not control out-of-state conduct simply by distinguishing fuels "based on lifecycle emissions," including emissions resulting from the manner of transport and production.  *RMFU*, 730 F.3d at 1101; *see also id.* at 1103 ("California does not control these factors—directly or in practical effect—simply because it factors them into the lifecycle analysis."); *id.* at 1101 ("The Fuel Standard regulates only the California market.").  The Ninth Circuit has since reaffirmed its holding in *RMFU*, noting that the LCFS permissibly "regulated *in-state conduct* with allegedly significant out-of-state practical effects." *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th Cir. 2015).

20

As this Court has already recognized, in ruling on previous motions concerning AFPM's restated extraterritoriality claim, a favorable ruling for RMFU here "would require this Court to find that the LCFS regulates conduct outside of California, which directly conflicts with [the Ninth Circuit's] explicit holdings to the contrary." Doc. 322 at 21:3-5. RMFU's extraterritoriality claim—whether styled as "facial" or "as applied"—is barred by law of the case and precluded by binding precedent. This claim (in Counts III and IV) should be dismissed with prejudice.

### B.    Plaintiffs' Claim of Facial Discrimination Fails

Like their extraterritorial regulation claim, RMFU's facial discrimination claim fails because it was already rejected in *RMFU* and because, as the Ninth Circuit held, it is inconsistent with binding precedent. *See RMFU*, 730 F.3d at 1093-97. RMFU has alleged no relevant facts to differentiate the new LCFS from the one the Ninth Circuit held did not facially discriminate against out-of-state ethanol. Indeed, the allegations in their amended complaint are virtually identical to those in the original. *Compare* TAC at ¶ 87 *with* Second Amended Compl. at ¶ 85.

Specifically, the Ninth Circuit rejected RMFU's legal theory—maintained in the Third Amended Complaint—that only ethanols using "substantially the same production methods" should be compared when analyzing a discrimination claim. *See* TAC at ¶ 87; *RMFU*, 730 F.3d at 1088-89. The Court also held that the use of lifecycle analysis, including the factors RMFU objects to as intertwined with geography, "does not discriminate against out-of-state commerce." *RMFU*, 730 F.3d at 1093. Rather, the scientifically-determined lifecycle factors "reflect the reality of assessing and attempting to limit GHG emissions…." *Id.* And the Court upheld ARB's use of regional categories and its "decision to draw one of the regional categories along [California's] boundary" against RMFU's facial discrimination challenge. *Id.* at 1094. Indeed, the Court found ARB's "investigation in setting the bounds of the Fuel Standard's regional categories was more rigorous and that those categories are less burdensome to interstate commerce" than other regulations drawing geographic boundaries that were upheld as non-discriminatory. *Id.* at 1095.

21

RMFU has alleged no new facts about the new LCFS regulation that could alter the analysis or decision as to facial discrimination. This claim (in both Counts III and IV) should be dismissed with prejudice.

### C.   RMFU's Claim of Purposeful Discrimination Fails

RMFU also fails to state a claim of purposeful discrimination against out-of-state ethanol. The Ninth Circuit did not decide this claim because it was not presented on appeal. *RMFU*, 730 F.3d at 1107. However, the Ninth Circuit did reject the AFPM Plaintffs' claim that the original LCFS purposefully discriminated against out-of-state crude oils. *Id.* at 1100 ("There was no protectionist purpose, no aim to insulate California firms from out-of-state competition."). The Ninth Circuit also rejected the claim that the lifecycle analysis produced discriminatory carbon intensity values. *Id.* at 1092-93. At a minimum, then, RMFU must allege facts significantly different from those underlying either of these rejected claims. RMFU has failed to do so.

Notably, RMFU relies, for this claim, on statements that are strikingly similar—and in one case identical—to the statements the Ninth Circuit considered in rejecting the AFPM Plaintiffs' purpose claim. In fact, as RMFU concedes, the statements on which it relies come from the rulemaking for the original LCFS. TAC at ¶¶ 51, 91. These statements have no relevance to the purpose of the new regulation, adopted on a different record and by a Board comprised of different members. In any event, none of these statements suffices to state a claim of discriminatory purpose.

RMFU alleges, first, that ARB "expected 'decreasing volumes of Midwestern corn ethanol'"[9] and, second, that ARB "admitted" the LCFS would "keep more money in the State," purportedly showing its "protectionist intentions." TAC at ¶¶ 51, 91. The Ninth Circuit has already held that regulations like the LCFS do not "isolate California and protect its producers

---

[9] It is particularly striking that Plaintiffs rely on the rulemaking proceedings for the original LCFS as support for this allegation. Presumably, if there were any facts to support that the original LCFS (which was in effect from 2011 through 2015) had actually decreased California's use of Midwestern ethanol, Plaintiffs would allege such facts instead of referring to statements ARB made in 2009. In any event, ARB is entitled to reassess likely effects, based on a new regulation and new facts before it, so any statements it made about the possible impacts of the original regulation are irrelevant here.

from competition," at least in part because "[t]o date, the lowest ethanol carbon intensity values, providing the most beneficial market position, have been for pathways from the Midwest and Brazil." *RMFU*, 730 F.3d at 1090. RMFU alleges no facts that could support a reasonable inference of decreasing volumes of Midwestern ethanol in California's market. As to RMFU's second allegation, the AFPM Plaintiffs' relied heavily, in their Ninth Circuit briefing, on the same "keep more money in the State" quote RMFU now uses in its complaint. *See* Doc. 347 at 44. The Ninth Circuit rejected such statements as establishing a discriminatory purpose, holding that such statements are "easily understood, in context, as economic defense of a [regulation] genuinely proposed for environmental reasons." *RMFU*, 730 F.3d at 1100 n.13 (internal quotation omitted); *see also O'Keeffe*, 134 F. Supp. 3d at 1282.

The purpose of the LCFS is the one stated in the regulation itself: "to implement a low carbon fuel standard, which will reduce the full fuel-cycle, carbon intensity of the transportation fuel pool used in California, pursuant to the California Global Warming Solutions Act of 2006." Cal. Code Regs., tit. 17, § 95480; *see also* RJN, Exh. D at ES-2.

RMFU has failed to state a purposeful discrimination claim upon which relief could be granted. This claim (in both Counts III and IV) should be dismissed with prejudice.

### D. RMFU's Claim of Discriminatory Effects Fails

RMFU also fails to state a discriminatory effects claim upon which relief could be granted. Most notably, RMFU continues to allege, in a variety of ways, that the LCFS will exclude Midwestern ethanol from California's ethanol market. *E.g.,* TAC at ¶ 91. But, as noted above, RMFU has failed to allege any facts that could support this inference, especially in light of the low carbon-intensity values obtained by Midwestern ethanols under both the original and new LCFS regulations. Further, as also noted above, in describing only Midwestern ethanol, Plaintiffs also maintain the improper analytical framework rejected by the Ninth Circuit. All out-of-state ethanols, including those from other countries, would be relevant to a discriminatory effects claim. *RMFU*, 730 F.3d at 1088-89.

RMFU relies on an allegation that ARB "forecast (with regards to the earlier version of the regulation) that it expects 'decreasing volumes of Midwestern corn ethanol.'" TAC at ¶ 91

23

(emphasis added).  Notably, RMFU makes no such allegation regarding the regulation—the new LCFS—it seeks to enjoin.  In any event, speculation about future effects that may or may not occur is not a basis for a plausible discriminatory effects claim.  *RMFU*, 730 F.3d at 1100 (citing *Black Star Farms, LLC v. Oliver*, 600 F.3d 1225. 1232 (9th Cir. 2010)).  RMFU must allege actual facts that could support a plausible claim, and it has failed to do so.  Indeed, the "facts" RMFU alleges—that Midwestern ethanols consistently receive higher carbon-intensity values— are contradicted by the face of the regulation and judicially noticeable facts.  RMFU's discriminatory effects claim (in Count III and IV) should be dismissed with prejudice.

### E.    RMFU's Claim of Undue Burdens under *Pike* Fails

RMFU has also failed to state a claim under the *Pike* test for analyzing purportedly undue burdens on interstate commerce.  Under this test, courts uphold state laws "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  But before courts reach the benefits side of the equation, plaintiffs must show a significant burden on interstate commerce.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1156 (9th Cir. 2012) ("[W]e need not examine the benefits of the challenged laws because [they] do not impose a significant burden on interstate commerce.").  "Where … a regulation does not regulate activities that inherently require a uniform system of regulation and does not otherwise impair the free flow of materials and products across state borders, there is not a significant burden on interstate commerce." *Id.* at 1154.  RMFU does not allege that the LCFS regulates activities requiring a uniform system of regulation.  While RMFU does allege—in conclusory terms—that the LCFS will restrict the flow of Midwestern ethanol into California, those allegations cannot be accepted as true in light of the Ninth Circuit's decision and the carbon-intensity values obtained by Midwestern ethanols.  Further, even if the LCFS precludes some Midwestern ethanols from flowing into California, there is no reason to conclude that other out-of-state ethanols will not take their place. *See Harris*, 682 F.3d at 1153 (citing *Exxon Corp. v. Maryland*, 437 U.S. 117, 128 (1978)).

RMFU has failed to state a claim under *Pike*, and this claim should be dismissed with prejudice (from Counts III and IV).

24

### III. RMFU'S "AS APPLIED" DORMANT COMMERCE CLAUSE CLAIMS (COUNT IV) SHOULD BE DISMISSED

Finally, Count IV, which RMFU styles as an "as applied" dormant Commerce Clause claim, should also be dismissed, with prejudice, because it is not an "as applied" challenge. Unlike some as-applied dormant Commerce Clause challenges, here RMFU identifies no particular applications or subrules of the LCFS they claim are unconstitutional and, further, alleges no facts concerning particular applications. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 143-44 (1970) (invalidating application of law to particular facility), *Sam Francis Found.*, 784 F.3d at 1323 (invalidating application of law to "out-of-state sales by California residents"); *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005) (invalidating application of law to pharmacies but not to other regulated entities). Further, RMFU seeks to enjoin the entire regulation and claims all parts of it are not severable. TAC at 21. This is not an "as applied" challenge and should be dismissed for failure to state a claim.

### CONCLUSION

RMFU's preemption claim, in both "facial" and "as applied" forms, fails because it is entirely inconsistent with congressional intent expressed in the statute and with the expert conclusions of the federal agency tasked with implementing the federal program. That claim also fails because RMFU's factual allegations are insufficient to support it and because RMFU cannot satisfy *Salerno*'s requirement for facial challenges. RMFU's dormant Commerce Clause claims fail as a matter of law under the Ninth Circuit's decision in *RMFU* (as well as other precedent) and because RMFU's factual allegations cannot support these claims. Defendants respectfully request that the Third Amended Complaint be dismissed with prejudice.

Defendants' & Defendant-Intervenors' Memorandum of Ps & As In Support Of Their Motion To Dismiss RMFU's Third Amended Complaint (Doc. 374) (1:09-cv-02234-LJO-BAM)

Dated:  October 14, 2016

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
GAVIN G. MCCABE
Supervising Deputy Attorney General


*/s/ M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
Deputy Attorney General
*Attorneys for Defendants*
*Richard W. Corey, et al.*

*/s/ Sean H. Donahue*
SEAN H. DONAHUE
*Attorney for Defendant-Intervenors*
*Environmental Defense Fund; Natural*
*Resources Defense Council; Sierra Club;*
*Conservation Law Foundation*

SF2010400011
90658058.doc

26